TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Martha E. Martir
John C. Gallego

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity as*
*the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
|  |  |
|---|---|
| In re: | : |
|  | : |
| PEGGY NESTOR, | : Case No. 23-10627 (MEW) |
|  | : |
| Debtor. | : |
|  | : |

------------------------------------------------------------------ x
|  |  |
|---|---|
| ALBERT TOGUT, Not Individually But Solely in | : |
| His Capacity as Chapter 11 Trustee, | : |
|  | : |
| Plaintiff, | : Adv. Pro. No. 24-_____ (MEW) |
|  | : |
| v. | : |
|  | : |
| BUTTERFLY BEACH HOUSE, LLC and | : |
| BRENDA NESTOR, | : |
|  | : |
| Defendants. | : |

------------------------------------------------------------------ x

## **COMPLAINT**

Albert Togut, not individually but solely in his capacity as Chapter 11

trustee ("Plaintiff" or the "Trustee") of the estate (the "Estate") of Peggy Nestor

(the "Debtor") in the above-captioned bankruptcy case (the "Chapter 11 Case"), by and

through his attorneys, Togut, Segal & Segal LLP, hereby makes this complaint

(the "Complaint") against the Butterfly Beach House, LLC ("Butterfly") and Brenda

Nestor ("Brenda" and together with Butterfly, the "Defendants"), and in support thereof respectfully alleges upon information and belief:

## SUMMARY OF THE ACTION[1]

1.      During January 2023, within two years prior to the Petition Date, the Debtor conveyed the entirety of her interests in Butterfly and the real property located at 21 Point Road, Norwalk, Connecticut 06854 (the "Connecticut Property") to, and for the benefit of, her sister Brenda in exchange for $1 (the "Butterfly Property Transfer").

2.      The Debtor purchased the Connecticut Property in her name for $3,495,000 in an all-cash transaction less than five months prior to the Butterfly Property Transfer to Brenda.  The market value of the Connecticut Property is now not less than $5.5 million.

3.      At all relevant times, Butterfly was an insider of the Debtor because either the Debtor or Brenda, also an insider of the Debtor, have been the sole members of Butterfly.  Consequently, the Debtor's transfer of her sole membership in Butterfly to Brenda (the "Butterfly Interest Transfer" and together with the Butterfly Property Transfer, the "Avoidable Transfers") was a transfer to an insider in exchange for which the Debtor did not receive fair or reasonably equivalent value.

4.      Even more egregious, the Debtor made the Avoidable Transfers while she was a defendant in the Surrogate's Turnover Proceeding and the Townhouse Foreclosure Action, which together seek to recover more than $20 million from the

---

[1]    Capitalized terms used but not defined in this section shall have the meaning ascribed to such terms in subsequent sections of this Complaint.

Debtor, and after the 2020 Attachment Order, in the amount of $2,594,813.42, had been entered against the Debtor.

5.      Brenda facilitated and received the Butterfly Interest Transfer when she was an insider of the Debtor and with knowledge of the Debtor's insolvency and status as a judgment debtor.

6.      Neither Avoidable Transfer provided any benefit to the Debtor, and those transfers are tainted by multiple badges of fraud.

7.      For the benefit of the Estate, the Trustee commences this Adversary Proceeding to avoid the Avoidable Transfers and recover the Connecticut Property and/or its value as actual and constructively fraudulent conveyances.

## **THE PARTIES**

8.      Plaintiff is the Chapter 11 Trustee of the Debtor.

9.      Peggy Nestor is a natural person and, upon information and belief, she resides at the Connecticut Property.

10.      The Debtor is also known as "Margaret Nestor."

11.      Defendant Butterfly is a Connecticut limited liability company with a principal place of business located at 340 Royal Poinciana Way 317-416, Palm Beach, Florida.

12.      Defendant Brenda, the Debtor's sister, is a natural person and resides at 340 Royal Poinciana Way 317-416, Palm Beach, Florida.

13.      At the time of the Butterfly Property Transfer, the Debtor was the sole member of Butterfly.

14.      As a result of the Butterfly Interest Transfer, Brenda became the sole member of Butterfly.

15.      At all times relevant to this Complaint, Butterfly and Brenda were

3

"insiders" to the Debtor pursuant to sections 101(31)(A) and (B) of title 11 of the United
States Code (the "<u>Bankruptcy Code</u>") and section 270(h) of the New York Uniform
Voidable Transactions Act (the "<u>NYUVTA</u>").

<u>**JURISDICTION AND VENUE**</u>

16.     The United States Bankruptcy Court for the Southern District of
New York (the "<u>Court</u>") has jurisdiction over this adversary proceeding
(the "<u>Adversary Proceeding</u>") pursuant to 28 U.S.C. §§ 157 and 1334 and the United
States District Court for the Southern District of New York's *Amended Standing Order of
Reference, M-431* dated January 31, 2012, which refers such proceedings to this Court.

17.     This Adversary Proceeding is commenced pursuant to sections
544(b), 548 and 550 of the Bankruptcy Code, Rules 3007, 6009, and 7001 of the Federal
Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and sections 271-74 of the
NYUVTA.

18.     This Adversary Proceeding is a core proceeding pursuant to
28 U.S.C. § 157(b)(2)(A), (H), and (O) and this Court has jurisdiction to hear and
determine this Adversary Proceeding, and to enter final orders and judgments granting
the relief sought herein.  In the event that this Court or any other court finds any part of
this Adversary Proceeding to be "non-core," this Court has non-core concurrent
jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein
relates to the Chapter 11 Case and will have a material impact on the administration of
the Estate.

19.     Plaintiff consents to the entry of final orders and judgments by this
Court in the Adversary Proceeding pursuant to Bankruptcy Rule 7008.  Plaintiff also
consents to the entry of final orders or judgments by this Court if it is determined that

this Court, absent consent of the parties, cannot enter final orders on judgments consistent with Article III of the United States Constitution.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the Adversary Proceeding arises in, and is related to, the Chapter 11 Case.

## FACTUAL ALLEGATIONS

### I.     The Chapter 11 Case

21.     On April 25, 2023 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

22.     On May 12, 2023, the Debtor filed her Schedules of Assets and Liabilities and Statement of Financial Affairs, as amended [Docket Nos. 21, 38] (the "Schedules").

23.     In her amended Schedules, the Debtor disclosed that within two years of the Petition Date, she transferred the Connecticut Property to Butterfly, and she described Butterfly as an "LLC with family." [Docket No. 38].

24.     On August 23, 2023, the Debtor filed a disclosure statement related to her proposed Chapter 11 plan [Docket No. 63] (the "Disclosure Statement").

25.     In the Disclosure Statement, the Debtor represented that "the Debtor transferred her ownership interest in real property in Norwalk Connecticut to a family-held LLC prior to the Chapter 11 filing", that she "does not believe that the transfer is avoidable" and that she "does not believe that any fraudulent conveyances existed prior to the [Petition Date]."  Disclosure Statement at 16.

26.     No order has been entered to approve the Disclosure Statement.

27.     On August 14, 2023, the Debtor testified during the continued section 341 meeting of creditors in the Chapter 11 Case (the "341 Meeting") concerning,

5

among other things, the Avoidable Transfers.  The Debtor testified under oath that she received $1 in exchange for the Avoidable Transfers.

28.    Another valuable asset in this Chapter 11 Case is the townhouse located at 15 East 63rd Street, New York, New York 10065 (the "NYC Townhouse").

29.    During the 341 Meeting, the Debtor testified that prior to the Petition Date she could not meet her obligations related to the NYC Townhouse, and that her only material pre-petition income was Social Security.

30.    On March 22, 2024, the Court entered an order and approved the Plaintiff's appointment as Trustee in the Chapter 11 Case [Docket No. 112].  The Trustee has since duly qualified and is acting as the Chapter 11 Trustee of the Estate [Docket No. 114].

## II.    The Avoidable Transfers

31.    On December 2, 2021, the Debtor purchased the Connecticut Property for $3,495,000.  The Warranty Deed for that purchase, a copy of which is attached hereto as **Exhibit 1**, identifies the Debtor as the sole grantee, and it was recorded with the clerk for the City of Norwalk, Connecticut on December 7, 2021 (Volume 9383, Page 338).

32.    On February 14, 2022, the Debtor formed Butterfly, a Connecticut limited liability company.

33.    On March 10, 2022, Butterfly filed its Certificate of Organization with the Secretary of the State of Connecticut (Filing No. 0010504500).  Butterfly's Certificate of Organization lists "Margaret" Nestor as the sole managing member and registered agent of Butterfly and the Connecticut Property was listed as Butterfly's business address and the address for Butterfly's registered.

34.    The Debtor subsequently recorded a Name Affidavit with the City

6

of Norwalk, which she stated that "Peggy Nestor is one and the same person as Margaret Nestor." (Volume 9734, Page 89).

35.     Butterfly's Operating Agreement, dated March 17, 2022, states that "Margaret" Nestor was the sole managing member at that time.

36.     On April 18, 2022, the Debtor made the Butterfly Property Transfer, in exchange for $1 of consideration.  A copy of the deed conveying the Debtor's interest in the Connecticut Property to Butterfly is attached hereto as **Exhibit 2** (the "Butterfly Deed").

37.     The Butterfly Deed was recorded with the clerk for the City of Norwalk, Connecticut on April 27, 2022 (Volume 9460, Page 99), which the Debtor signed under the name "Margaret" Nestor.

38.     At the time of the Butterfly Property Transfer, the Debtor was the sole managing member of Butterfly.

39.     The Debtor confirmed under oath in her Schedules, in the Disclosure Statement, and in her sworn 341 Meeting testimony that she transferred the Connecticut Property to Butterfly.

40.     On January 23, 2023, Butterfly's operating agreement was amended, and Brenda replaced the Debtor as the sole managing member of Butterfly in exchange for $1.  A copy of Butterfly's amended operating agreement is attached hereto as **Exhibit 3**.

41.     On March 15, 2024, Butterfly filed its Annual Report for 2024 (Filing No. 0012310728), which, among other things, removed the Debtor as its managing member and added Brenda Nestor as a member.  The "residence address" provided for Brenda Nestor is the NYC Townhouse.

42.     On May 13, 2024, Butterfly filed an Interim Notice (Filing No.

0012637456) with the Secretary of the State of Connecticut which listed Brenda as the new managing member of Butterfly.

### III.    <u>Liens Against the Connecticut Property</u>

#### A.    **City of Norwalk Tax Lien**

43.    Records maintained by the City of Norwalk identify the Debtor as the taxpayer associated with the Connecticut Property.

44.    On April 3, 2024, the City of Norwalk filed a property tax lien against the Connecticut Property for unpaid property taxes totaling $83,402.75 (the "<u>Norwalk Tax Lien</u>") (Volume 9718, Page 215).

#### B.    **Secure Bridge Mortgage and Foreclosure Action**

45.    On May 9, 2022, after the Debtor purchased the Connecticut Property and transferred the Connecticut Property to Butterfly, Butterfly executed a mortgage in favor of Secure Bridge Fund 1, LLC ("<u>Secure Bridge</u>") to secure a loan to Butterfly in the amount of $1,850,000  (the "<u>Connecticut Property Mortgage</u>") (Volume 9466, Page 54).

46.    The Debtor signed the Connecticut Property Mortgage on behalf of Butterfly, as its sole member and manager, and she executed a guaranty agreement for Butterfly's obligations to Secure Bridge.

47.    Butterfly and the Debtor failed to timely satisfy their obligations pursuant to the Connecticut Property Mortgage.

48.    On March 11, 2024, Secure Bridge commenced a foreclosure action against Butterfly and the Debtor in the Superior Court of Connecticut, Judicial District of Stamford (the "<u>Foreclosure Action</u>").

49.    On March 13, 2024, Secure Bridge recorded a *lis pendens* with the City of Norwalk.

50.    On April 9, 2024, Secure Bridge withdrew the Foreclosure Action and released its *lis pendens* (Volume 9720, Page 283).

51.    Amounts owed to Secure Bridge remain outstanding under the Connecticut Mortgage and are accruing interest as of the date of this Complaint.

52.    On April 30, 2024, the Trustee recorded the *Notice of Lis Pendens Against Butterfly Beach House, LLC on the Property Located at 21 Point Road, Norwalk, Connecticut 06854* with the City of Norwalk (Volume 9728, Page 179) because the Estate has an interest in the Connecticut Property.

### IV.    The Debtor Made the Avoidable Transfers With Intent to Defraud, Hinder, or Delay Her Creditors

53.    The Debtor made the Avoidable Transfers with the intent to defraud, hinder, or delay her creditors.

54.    The circumstances surrounding the Avoidable Transfers demonstrate that the Debtor had both the motive and opportunity to defraud, hinder, or delay her creditors.

55.    Multiple of the "badges" of fraud of a transferor's intent to defraud, hinder, or delay her creditors are present in connection with the Avoidable Transfers and they are described below.

56.    The Debtor did not receive fair or reasonably equivalent value in exchange for each Avoidable Transfers:   she purchased the Connecticut Property months earlier for more than $3.4 million,[2] and she received $1 in exchange for transferring it to and for the benefit of Brenda.

---

[2]    As of the filing of this Complaint, the value of the Connecticut Property is estimated to be approximately $5.5 million.  *See* https://www.zillow.com/homes/21-Point-Rd-Norwalk,-CT-06854_rb/58818652_zpid/.

57.     The Debtor was the sole managing member of Butterfly at the time the Butterfly Property Transfer was made.

58.     Brenda was the Debtor's sister at the time the Butterfly Interest Transfer was made.

59.     Upon information and belief, the Debtor continued to reside at the Connecticut Property after the Avoidable Transfers and until after the Petition Date.

60.     The Debtor made the Avoidable Transfers while she was a defendant in a foreclosure action against the NYC Townhouse pending since June 14, 2019 in the Supreme Court of the State of New York, New York County, Index No. 85019/2019 (the "Townhouse Foreclosure Action").

61.     Lynx Asset Services, LLC ("Lynx"), the plaintiff in the Townhouse Foreclosure Action, seeks a judgment against the Debtor for more than $21 million on account of a mortgage note and guaranty that the Debtor signed.

62.     In her declaration pursuant to Bankruptcy Rule 1007-2, the Debtor represented that she commenced the Chapter 11 Case "on an emergency basis to stay the foreclosure of [the NYC Townhouse]."  Docket No. 2 ¶ 3.

63.     The Debtor made the Avoidable Transfers while she was also a defendant in an action commenced in 2018 in the New York State Surrogate's Court in Nassau County (the "Surrogate's Court"), File No. 343100/AC, by the receiver and public administrator (the "Surrogate's Court Plaintiffs") for the estate and related business operations of the late fashioner designer and the Debtor's brother-in-law, Oleg Cassini (the "Probate Turnover Action").

64.     In June 2020, the Surrogate's Court entered an *ex parte* order of attachment (the "2020 Attachment Order") concerning the Debtor's interest in the NYC Townhouse to secure the claims against the Debtor in the amount of $2,594,813.42.  On

December 7, 2021, the Surrogate's Court confirmed the 2020 Attachment Order.

65.     The Debtor lacked good faith when she made the Avoidable Transfers because Defendants were insiders of the Debtor when the Avoidable Transfers were made, and the Avoidable Transfers were made when the Debtor could not meet her financial obligations.

66.     Brenda was aware of the Debtor's insolvency and her status as a judgment debtor when the Avoidable Transfers were made.

67.     The Debtor did not initially disclose the Connecticut Property or the Avoidable Transfers in her Schedules [Docket No. 21].

**V.     The Debtor Was Insolvent, Had an Unreasonably Small
Capital Base, and Incurred, and Intended to Incur, Debts Beyond
the Debtor's Ability to Repay the During the Relevant Time Period**

68.     The Debtor did not receive fair consideration or reasonably equivalent value in exchange for the Avoidable Transfers.

69.     The Debtor is presumed to have been insolvent at the times of the Avoidable Transfers.

70.     The Debtor's income was insufficient to meet her obligations before and after each of the Avoidable Transfers.

71.     At the times of the Avoidable Transfers, the Debtor knew that she was incurring debts beyond her ability to pay them, including, but not limited to, the 2020 Attachment Order.

72.     On the Petition Date, the Debtor owed unpaid prepetition tax obligations to the Internal Revenue Service (the "IRS") and New York State Department of Taxation and Finance (the "NYS Tax Dept.") for the tax year ending December 31, 2017.

73.     On the Petition Date, the Debtor owed more than $100,000 to ConEd for utility services provided to the Townhouse that went unpaid from at least 2018.

74.     The IRS and the NYS Tax Dept. each timely filed proofs of claim in the Chapter 11 Case, which are allowable pursuant to section 502 of the Bankruptcy Code.  *See* Proof of Claim Nos. 1 and 2.

75.     The IRS, the NYS Tax Dept., Lynx, ConEd and other claimants are predicate creditors within the meaning of section 544(b) of the Bankruptcy Code.

**VI.     The Butterfly Interest Transfer Was A Preferential Transfer**

76.     During the one-year period before and including the Petition Date, *i.e.*, from April 25, 2022 to and including April 25, 2023 (the "Preference Period"), the Debtor continued to manage and/or operate her affairs, including the transfers of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to certain entities, including the Defendants.

77.     During the Preference Period, the Debtor made the Butterfly Interest Transfer.

## COUNT I

**AVOIDANCE AND RECOVERY OF
ACTUAL FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 544(b),
548(a)(1)(a), 550(a) and 551;  and NYUVTA §§ 273(a)(1), 273(b) and 276**

78.     Plaintiff repeats and re-alleges the paragraphs set forth above as though set forth herein.

79.     Within two years of the Petition Date, the Debtor made the Avoidable Transfers, as set forth in **Exhibit 2** and **Exhibit 3** attached hereto, with actual intent to hinder, delay, or defraud one or more present and/or future creditors of the Debtor.

12

80. The Debtor retained possession and use of the Connecticut Property as her residence until after the Petition Date.

81. The Avoidable Transfers were intended to benefit Defendants, who were the initial, immediate, and/or mediate transferees of the Avoidable Transfers.

82. The Avoidable Transfers were made to, and for the benefit of, Defendants, each an "insider" of the Debtor on the dates of each of the Avoidable Transfers, to the detriment of the Debtor's present and/or future creditors.

83. Pursuant to sections 544(b), 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and sections 273(a)(1) and 276 of the NYUVTA, Plaintiff is entitled to a judgment against Defendants: (i) avoiding the Avoidable Transfers; (ii) recovering the Connecticut Property and/or its value from the Defendants; (iii) awarding attorneys' fees and costs from Defendants; and (iv) awarding any other relief that the Court deems just and proper.

## COUNT II

**AVOIDANCE AND RECOVERY OF
CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO
11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a) AND 551; AND NYUVTA §§ 273(a)(2) AND 274**

84. Plaintiff repeats and re-alleges the paragraphs set forth above as though set forth herein.

85. The Debtor did not receive reasonably equivalent value or fair consideration in exchange for the Avoidable Transfers.

86. The Debtor made the Avoidable Transfers to and for the benefit of Defendants, each an "insider" of the Debtor on the dates of each of the Avoidable Transfers, to the detriment of the Debtor's present and/or future creditors.

87. The Debtor was insolvent when the Avoidable Transfers were made.

13

88.    The Debtor made the Avoidable Transfers when the Debtor's reported income was insufficient to meet her expenses and financial obligations, including, but not limited to, those related to the NYC Townhouse that precipitated the commencement of the Chapter 11 Case, and other claims asserted against the Debtor which seek monetary recoveries.

89.    The Debtor made the Avoidable Transfers when the Debtor intended to incur, believed that it would incur, or reasonably should have believed that she would incur debts beyond its ability to pay them as they matured and/or became due.

90.    The Debtor remained unable to pay her debts as they matured and/or became due after the Avoidable Transfers and until the Petition Date.

91.    Pursuant to section 544(b), 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, and sections 273(a)(2) and 274 of the NYUVTA, Plaintiff is entitled to a judgment against Defendants:  (i) avoiding the Avoidable Transfers;  (ii) recovering the Connecticut Property and/or its value from Defendants;  (iii) awarding attorneys' fees and costs from Defendants;  (iv) awarding any other relief that the Court deems just and proper.

## COUNT III

### AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547(b) AND 550(a)

92.    Plaintiff repeats and re-alleges the paragraphs set forth above as though set forth herein.

93.    During the Preference Period, the Debtor made the Butterfly Interest Transfer to, and/or for the benefit of, Brenda, as set forth on **Exhibit 3** attached hereto.

94.     The Butterfly Interest Transfer was made on or within one-year prior to and including the Petition Date.

95.     Subject to Defendant's responses and proof, during the Preference Period, Brenda was a creditor of the Debtor within the meanings of sections 101(5) and (10) and 547(b)(1) of the Bankruptcy Code at the time of the Butterfly Interest Transfer.

96.     The Butterfly Interest Transfer was a transfer of interests of the Debtor in property.

97.     The Butterfly Interest Transfer was made to, and/or for the benefit of, Brenda because the Butterfly Interest Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to Brenda.

98.     The Butterfly Interest Transfer was made for, or on account of, antecedent debts owed by the Debtor described above.

99.     The Butterfly Interest Transfer was made while the Debtor was insolvent.

100.    Further, as evidenced by, among other things: (i) the Debtor's Chapter 11 petition; (ii) the Schedules; and (iii) the proofs of claim that have been filed against the Estate, the Debtor's liabilities exceeded the value of its assets during the Preference Period.

101.    Plaintiff estimates that the general unsecured creditors of the Debtor will receive less than full value on account of their allowed claims against the Estate.

102.    The Butterfly Interest Transfer enabled Brenda to receive more than she would have received if (a) Brenda's then existing claims were paid under Chapter 7 of the Bankruptcy Code, (b) the Butterfly Interest Transfers had not been made, and

15

(c) Brenda received payment of such debt(s) to the extent provided by the provisions of the Bankruptcy Code.

103.    Brenda was either the initial transferee of the Butterfly Interest Transfer, the party for whose benefit the transfer was made, or was the immediate or mediate transferee of the initial transferee receiving the Butterfly Interest Transfer.

104.    By reason of the foregoing, the Butterfly Interest Transfer should be avoided and set aside as a preferential transfer pursuant to section 547(b) of the Bankruptcy Code.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter a judgment:

(i)      avoiding the Avoidable Transfers pursuant to section 544(b), 547(b) and 548(a) of the Bankruptcy Code;  and sections 273 and 274 of the NYUVTA;

(ii)     pursuant to section 550(a) of the Bankruptcy Code, directing Defendants to convey the Connecticut Property to Plaintiff for the benefit of the Debtor's estate, or directing Defendants to pay Plaintiff an amount to be determined at trial that is not less than the market value of the Connecticut Property;

(iii)    preserving all avoided transfers and liens for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code;

(iv)     awarding pre-judgment interest at the maximum legal rate running from the date of the Plaintiff's first demand to Defendants to return the Connecticut Property to the date of judgment with respect to this Complaint (the "Judgment") herein;

(v)      awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full, plus costs;

16

(vi)   requiring Defendants to pay forthwith the amount of the Judgment;  and

(vii)  granting such other and further relief as the Court deems just and proper.

DATED:  August 30, 2024
        New York, New York

ALBERT TOGUT, not individually but solely
in his capacity as Chapter 11 Trustee,
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Neil Berger*
NEIL BERGER
MARTHA E. MARTIR
JOHN C. GALLEGO
One Penn Plaza
New York, New York 10119
(212) 594-5000

## EXHIBIT 1

**Warranty Deed**

*RECORD & RETURN TO:*

*Joel Kaye, Esq*
*165 W. Putnam Ave*
*Greenwich, CT 06830*

INSTR # 2021016384
**VOL  9383  PG  338**
RECORDED 12/07/2021  08:47:35 AM
RICHARD A. MCQUAID
TOWN CLERK  NORWALK CT
TOWN CONVEYANCE TAX   $17,475.00
STATE CONVEYANCE TAX $49,637.50

### WARRANTY DEED - STATUTORY FORM

TO ALL PERSONS TO WHOM THESE PRESENTS SHALL COME, KNOW YE THAT **HELVETICA**

**CAPITAL FUNDING II, LLC** of (5927 BALFOUR COURT, SUITE 208, CARLSBAD CA 92008), for

consideration of THREE MILLION FOUR HUNDRED NINETY-FIVE THOUSAND, DOLLARS

($3,495,000.00), grants **Peggy Nestor,** of the 15 East 63rd Street, New York NY 10065 with WARRANTY

COVENANTS all that certain real property known as **21 POINT ROAD, NORWALK, CONNECTICUT**, being

more particularly described in the SCHEDULE A attached hereto and made a part hereof:

Said Premises are conveyed subject to:

1. Any and all provisions of any municipal, ordinance or regulation or public or private law with special
   reference to the provisions of any zoning regulations and regulations governing the said Premises.

2. Real property taxes on the current Grand List and any municipal liens or assessments becoming due and
   payable on or after the delivery of this Deed.

3. Further restrictions as noted on the Schedule A attached hereto and made a part hereof.

**IN WITNESS WHEREOF,** the Grantor has caused these presents to be executed on this ___ day of
DECEMBER 2021

Signed, sealed and delivered in the
presence of or attested by:

Witness: _____

_____
**HELVETICA CAPITAL FUNDING II,
LLC, by CHAD MESTLER,** its
**MANAGER** Grantor

Witness: _____

STATE OF ___CA___                                    }
                                                     } ss.(town)
COUNTY OF ___San Diego___                            }
Personally appeared **HELVETICA CAPITAL FUNDING II, LLC , by CHAD MESTLER,** its
**MANAGER,** Grantor, signer and sealer of the foregoing instrument, known to me to be the person whose name
is subscribed to the within instrument and acknowledged that she executed the same as his free act and deed and
the free act and deed of Said Helvetica Capital Funding II, LLC for the purposes therein contained in the capacity
therein stated, before me, on this ___ day of **December, 2021.**

_____
Notary Public

W. DARLING
COMM. #2290075
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
MY COMM. EXPIRES JUNE 22, 2023

Book9383/Page339

## EXHIBIT 2

**Butterfly Deed**

Record and Return To:
Mary Jo L. Whelan, Esq.
7 Benedict Place
Greenwich CT  06830

INSTR # 2022004947  VOL 9460 PG 99 RECD 04/27/2022  10:39:15 AM
RICHARD A. MCQUAID TOWN CLERK NORWALK CT
NO CONVEYANCE TAX

## WARRANTY DEED

### TO ALL PEOPLE TO WHOM THESE PRESENTS SHALL COME, GREETING:

**KNOW YE THAT** Know Ye, that **Margaret Nestor, of 21 Point Road, Norwalk, Connecticut  06854**, herein designated as the **Grantor**, for the consideration of One and 00/100 ($1.00) Dollar, and other good and valuable consideration, received to **Grantor's** full satisfaction from **Butterfly Beach House, LLC, with offices at 21 Point Road, Norwalk, Connecticut  06854**, herein designated as the **Grantee**, does by these presents give, grant, bargain, sell and convey to the **Grantee** certain real property in the **City of Norwalk, County of Fairfield and State of Connecticut** more fully described as follows:

All those certain tracts or parcels of land, together with the buildings and improvements thereon, situated in the City of Norwalk, County of Fairfield and State of Connecticut, known and designated as Lot Nos. 520, 521, 522 and 523, on a certain map entitled, "Wilson's Point Situated At Norwalk, Fairfield County, Connecticut, Harris-Vought & Co. Inc., Agents 6 East 46th St., New York City, Map of Section 5, May 1922, Scale 1" = 60', The Samuel W. Hoyt, Jr., Co., Inc., Civil Engineers," which map is on file in the Office of the Town Clerk of said Norwalk as Map No. 496.

Together with the right to use "The Common" so-called at Wilson's Point in accordance with the terms and subject to the conditions and provisions of that certain trust deed from The Wilson Point Company, Incorporated, to Duncan G. Harris, Franklin D. Vought and Reed G. Haviland, Trustees, dated June 29, 1920 and recorded in Volume 163 at Page 491 of the Norwalk Land Records, as such terms and conditions and provisions may have been amended or extended by a deed from said Trustees to Wilson Point Beach, Incorporated, dated September 25, 1933 and recorded in Volume 248 at Page 292 of said Owner's Association, Incorporated, the said Trustees, and the Wilson Point Company, Incorporated, and recorded in Volume 342 at Page 7 of the Norwalk Land Records.

The tract or parcel of land described is the land improved by the residence now owned and occupied by the seller, comprising approximately 1.53 acres.

Said premises are also known as 21 Point Road, Norwalk, Connecticut.

1.  Real Estate taxes to the Town of Norwalk on the List of October 1, 2021 and thereafter.

2.  Possible unpaid homeowners association fees or assessments.

3.  Possible unpaid private road maintenance fees or assessments.

4.  Terms and conditions as set forth in a deed from The Wilson Point Company, Incorporated, to Duncan G. Harris, Franklin D. Vought and Reed G. Haviland, Trustees, dated June 29, 1920 and recorded in Volume 163 at Page 491 of the Norwalk Land Records, as amended by an instrument dated November 29, 1939 and recorded in Volume 281 at Page 464 of the Norwalk Land Records and as further amended by a deed from said Trustees to Wilson Point Beach, Incorporated, dated September 25, 1933 and recorded in Volume 248 at Page 292 of the Norwalk Land Records, and as recorded in an agreement in Volume 342 at Page 7 of the Norwalk Land Records.

5.  Restrictions as set forth in a deed from Wilson Point Company to Eugene I. Cowell and Leanore H. Cowell dated September 12, 1933 and recorded on September 15, 1933 in Volume 248 at Page 270 of the Norwalk Land Records.

6.  Existing rights of The Wilson Point Property Owners Association, Incorporated, to levy assessments for the upkeep policing the territory by virtue of the deed of said roads from The Wilson Point Company, Incorporated to said Association, dated August 4, 1930 and recorded on September 26, 1933 in Volume 248 at Page 289, and by virtue of an agreement dated January 1, 1934 and recorded in Volume 257 at Page 358, all of the Norwalk Land Records.

7. Certificate of Variance from the City of Norwalk Zoning Board of Appeals dated March 19, 1998 and recorded on May 26, 1998 in Volume 3521 at Page 98 of the Norwalk Land Records.

8. Certificate of Variance from the City of Norwalk Zoning Board of Appeals dated May 21, 1998 and recorded on July 1, 1998 in Volume 3542 at Page 129 of the Norwalk Land Records.

9. Order in favor of John P. Love, et al, against Julie Dillon Ripley Miller, stopping her from using her residence as a two-family flat or apartment house, dated November 14, 2011 and recorded on November 17, 2011 in Volume 7487 at Page 233 of the Norwalk Land Records.

10. Notes, conditions, easements and building setback lines as shown on Map No. 496 of the Norwalk Land Records

    **TO HAVE AND TO HOLD** the premises hereby conveyed with the appurtenances thereof, unto the Grantee, its successors and assigns forever, to their proper use and behoof, and the Grantor does for herself, her heirs, successors and assigns, covenant with the Grantee, its successors and assigns, that the Grantor is well seized of the premises as a good indefeasible estate in FEE SIMPLE; and has good right to grant and convey the same in manner and form as is herein written and the same are free from all encumbrances whatsoever, except as herein stated.

    **AND FURTHERMORE**, the said Grantor does by these presents bind herself and her heirs, successors and assigns forever to WARRANT AND DEFEND the premises hereby conveyed to the Grantee, its successors and assigns, against all claims and demands whatsoever, except as herein stated.

    **IN WITNESS WHEREOF**, the **Grantor** has signed and sealed this instrument, or if a corporation, it has caused these presents to be signed by its corporate officers and its corporate seal to be hereto affixed this _18th_ day of ~~March~~, 2022.
    April

Signed, Sealed and Delivered
in the presence of or Attested
by

_____
**Mary Jo L. Whelan**

_____
**Christopher J. LeRose**

_____
**Margaret Nestor**

State of Connecticut  )
                ) ss: Greenwich
County of Fairfield    )

    Personally appeared, Margaret Nestor, signer and sealer of the foregoing instrument, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained before me this 18th day of ~~March~~, 2022.
April

_____
**Mary Jo L. Whelan**
**Commissioner of the Superior Court**

## EXHIBIT 3

**Amended Operating Agreement**

### FIRST AMENDMENT
### TO
### OPERATING AGREEMENT
### OF
### BUTTERFLY BEACH HOUSE, LLC

The undersigned, being all of the Members of Butterfly Beach House, LLC (the "LLC"), hereby consent to amendment of the Operating Agreement dated March 17, 2022 to reflect the transfer of One Hundred (100%) Percent of Margaret Nestor's Membership Interest to Brenda Nestor. Accordingly, Section 1.1 of the Operating Agreement is amended, so as amended, said Section 1.1 reads as follows:

"Distribution Percentage" means, for each Member, the percentage set forth opposite such Member's name, as follows:

| Member | Distribution Percentage |
|---|---|
| Brenda Nestor | 100% |

Except as herein amended, the Operating Agreement shall remain in the same full force and effect as originally written.

Dated as of January 1, 2023

_____ L.S.
Margaret Nestor

_____ L.S.
Brenda Nestor