UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

PEGGY NESTOR,                                    Lead Case No.

     Debtor.                                    23-10627-mew

- - - - - - - - - - - - - - - - - - - - - - -x

ALBERT TOGUT, NOT INDIVIDUALLY BUT SOLELY IN HIS CAPACITY AS

CHAPTER 11 TRUSTEE,

     Plaintiff,                                 Adv. Proc. No.

v.                                               24-04023-mew

BUTTERFLY BEACH HOUSE, LLC, ET AL.,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - -x

       United States Bankruptcy Court

       One Bowling Green

       New York, New York


       February 13, 2025

       11:03 AM

B E F O R E:

HON. MICHAEL WILES

U.S. BANKRUPTCY JUDGE

ECRO:  K. HARRIS

2

Motion to retain Brown Harris Stevens Residential Sales, LLC Broker for the Chapter 11 Trustee Pursuant to Sections 327(a) and 328 of the Bankruptcy Code. Objection filed.

Motion to Allow Claims / Lynx Asset Services, LLCs Motion and Notice of Hearing Pursuant to 11 U.S.C. 56 and Fed. R. Bankruptcy P. 3012 for Entry of an Order Fixing and Allowing the Amount of its Secured Claim

Adversary proceeding: 24-04023-mew Albert Togut, Not Individually But Solely in His C v. Butterfly Beach House, LLC et al

Conference re: proposed confidentiality stipulation

STIPULATION SIGNED AND ENTERED AS DOCUMENT 33 ON 2/11/2025

Transcribed by:  Sharona Shapiro

eScribers, LLC

7227 North 16th Street, Suite #207

Phoenix, AZ 85020

(800) 257-0885

operations@escribers.net

3

A P P E A R A N C E S :


TOGUT, SEGAL & SEGAL LLP

Attorneys for Chapter 11 Trustee

One Penn Plaza

New York, NY 10119


BY:   NEIL M. BERGER, ESQ.

MARTHA MARTIR, ESQ. (TELEPHONICALLY)



MCGRAIL & BENSINGER LLP

Attorneys for Lynx Asset Services, LLC

888-C 8th Avenue

Suite 107

New York, NY 10019


BY:   ILANA VOLKOV, ESQ.

4

WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN, LLP

     Attorneys for Rosalia Baiamonte, Esq. as receiver

     1201 RXR Plaza

     Uniondale, NY 11556

BY:   WILLIAM C. HEUER, ESQ.

FARRELL FRITZ, P.C.

     Attorneys for John Barnosky and Alexandre Cassini Belmont

     400 RXR Plaza

     Uniondale, NY 11556

BY:   PATRICK COLLINS, ESQ.

MAHON, MAHON, KERINS & O'BRIEN

     Attorneys for Nassau County Public Administrator

     254 Nassau Boulevard

     Garden City South, NY 11530

BY:   HEATHER CALLAGHAN, ESQ.

5

UNITED STATES DEPARTMENT OF JUSTICE

Office of the United States Trustee

Alexander Hamilton Custom House

One Bowling Green

Suite 739

New York, NY 10004


BY:   DANIEL RUDEWICZ, ESQ.




ALSO PRESENT:

MARIANNE NESTOR CASSINI

MICHAEL ALFIERI, Lynx Asset Services (Telephonically)

**PEGGY NESTOR**

6

P R O C E E D I N G S

THE COURT:  All right.  Please be seated.  Peggy Nestor case.

MR. BERGER:  Good morning, Judge.  Neil Berger, Togut, Segal & Segal, for Albert Togut, Chapter 11 trustee.  I believe my colleague, Martha Martir, is participating by phone.

THE COURT:  Good morning.

MS. NESTOR:  Hi.  Good morning, Your Honor.  Nice to see you.  This is Marianne Nestor.  And I'm not a party to -- I'm not under your jurisdiction, as you've said many, many times.  But I'm here because of other reasons.

THE COURT:  Okay.

MS. NESTOR:  Thank you.

MR. HEUER:  Good morning, Your Honor.  William Heuer, of Westerman Ball, for Rosalia Baiamonte as receiver.

MS. CALLAGHAN:  Good morning, Your Honor.

MR. COLLINS:  Good morning.

MS. CALLAGHAN:  Oh, go ahead, Pat.

MR. COLLINS:  Good morning.  Patrick Collins, Farrell Fritz, on behalf of John Barnosky and Alexandre Cassini Belmont.  They are the executors of the estate of Christina Cassini and successor administrators of the estate of Daria Cassini.

MS. VOLKOV:  Good morning, Your Honor.

MS. CALLAGHAN:  Good morning, Your Honor.

7

MS. VOLKOV: Hello? Hi. Good morning. It's Ilana Volkov, McGrail & Bensinger, LLP, on behalf of Lynx Asset Services, LLC. And on the phone is Michael Alfieri, who is the principal of my client. Thank you.

MS. CALLAGHAN: Good morning, Your Honor. Heather Callaghan, Mahon, Mahon, Kerins & O'Brien, attorneys for the Nassau County Public Administrator, as administrator CPA of the estate of Oleg Cassini.

MR. RUDEWICZ: Good morning, Your Honor. Daniel Rudewicz on behalf of the United States Trustee.

THE COURT: Good morning, everybody. Okay.

MR. BERGER: Good morning, Judge. It's Neil Berger for the Chapter 11 trustee.

There are two active matters on this morning's calendar. The third matter was the proposed confidentiality stipulation that you so ordered. I have a brief comment about that at the end of this morning's calendar.

First, Your Honor, we did file the trustee's statement regarding the status of the sale efforts for the townhouse. And in connection with the sale of the townhouse, the trustee filed his application at docket 493 for entry of an order authorizing the trustee to retain Brown Harris Stevens Residential Sales as his new real estate broker under an exclusive listing agreement.

You may recall that Ms. Nestor and the debtor retained

**PEGGY NESTOR**

8

Sotheby's as the exclusive listing agent. The trustee, extended that listing agreement to give them an opportunity to try to bring an offer. None was made. The trustee, and I, and Mr. Alfieri, who is participating by phone today, interviewed a number of broker candidates.

The trustee determined to retain Brown Harris Stevens. Lynx did not oppose that. The application, and the attached listing agreement, and the declaration describe the extensive competence and experience of Brown Harris Stevens, the compensation that's proposed for Brown Harris, which is more favorable than the compensation that was in place for Sotheby's -- particularly there's a seventy-five basis point reduction in the sole broker compensation. That's a meaningful reduction. And under Sotheby's, the total commission was capped at 4.25 percent and here it's four percent.

We received only one response to the application. That was filed by Marianne Nestor who's here today. There are no challenges, in that response, to the competence or disinterested status of Brown Harris Stevens, the compensation that's proposed. And I should state that U.S. Trustee reviewed the application, the listing agreement, and countersigned the proposed order.

The only challenges that Ms. Nestor raises are the Court's jurisdiction. We've addressed that. You've addressed that. She challenges the trustee's ability to sell the

townhouse.  Your Honor entered an order on the same day you entered a decision directing the United States Trustee to appoint a trustee.  And Your Honor's order, in the adversary proceeding commenced by the debtor for free and clear title, directed the sale under Section 363(h).  We certainly have the express authority to do that.  We certainly have the express authority, under 363(f)(4), to do that as well.

All of those issues you have heard before, written about, spoken about on the record.  Ms. Nestor complains that the listing agreement is some sort of -- and I'm quoting -- secret agreement.  There's no secret here, Your Honor.  It's standard operating procedures.  You addressed that notion when we filed the motion to extend the Sotheby's agreement.  The trustee enters into the listing agreement, and the agreement specifically expressly says that it is subject to Your Honor's review and approval.  So there's no secret there.

She complains about the listing price.  Your Honor directed the appointment of a trustee to be primarily responsible for the sale of the townhouse.  The trustee is exercising his considered and very careful business judgment.  We've consulted with Brown Harris Stevens.  We've consulted with Lynx.  We've opened a dialogue with Lynx concerning the milestones, meaning the milestones under the procedures for the sale of the townhouse.  And the market will speak.  It's simply within the trustee's business judgment and the parameters that

**PEGGY NESTOR**

10

Your Honor set forth in the order and decision directing the appointment of a trustee.

There's some also discussion in the response about fixtures. They're simply not before the Court. Now, Your Honor, the trustee did file a motion, you'll consider later in the month, concerning the disposition of personal property in the townhouse. And we can address those later.

So in sum, Your Honor, the trustee doesn't consider anything in the response that Ms. Nestor filed to seriously challenge the trustee's business judgment, the competence of Brown Harris, and the benefit to the estate by approval of this retention.

I'll pause for a moment, Your Honor.

THE COURT: All right. You introduced yourself this morning as Marianne Nestor, but I thought at a prior hearing you asked me to refer to you as Mrs. Cassini. Which --

MS. NESTOR: Whatever gives you pleasure is fine with me.

THE COURT: I would prefer to do whatever you prefer in that regard.

MS. NESTOR: That's very kind of you. Thank you. Thank you, Your Honor.

THE COURT: So what is your preference, then?

MS. NESTOR: I'll come up in front of you.

THE COURT: What is your preference as to how you

would like me to address you? As Marianne Nestor? As Mrs. Cassini?

MS. NESTOR: Your Honor, the property was purchased by Peggy Nestor and Marianne Nestor. So I think it's better to use the owner's name of the property, Marianne Nestor.

THE COURT: Okay.

MS. NESTOR: Okay. This is regarding -- I want to give you some of the background on this first. First of all, I'm fifty-percent undivided owner since the purchase of 2/23/ 1984. Peggy and I purchased it in our own names with our own money. I am not under the jurisdiction of Your Honor's court. And I appreciate your listening to me.

THE COURT: Okay. Let me just note for the record, as I've said on many prior hearings, I'm not going to relitigate this issue. You filed papers twice, at least, in this Court, saying you had no ownership interest in the property.

MS. NESTOR: I do have ownership since 1984, Your Honor.

THE COURT: Don't interrupt me, please. I previously ruled that you're estopped from changing your position in that regard. And in any event, even if you are a co-owner, the debtor filed a lawsuit against you seeking a declaration that the property could be sold, under Section 363(h) of the Bankruptcy Code, which permits me to sell, not only the debtor's interest, but an entire property --

MS. NESTOR:  It's kind of hard to hear you, Your Honor.

THE COURT:  -- an entire property, even if it's co-owned.  And I entered a judgment -- because you didn't oppose that relief, I entered a judgment against you, which is final, as I understand it.  So anyway --

MS. NESTOR:  Okay.  I will speak.  The building was purchased by my sister and myself in 1984, 2/23/1984.  The building is under Rent Stabilization Law of 1969.  There are seven apartments.  It's not a townhouse; it's an apartment building.  It's even listed that way on the Rapid Examiners, where they filed papers, where they had Veronique Irvine (ph.) filed papers for Togut, which I would say is a conflict of interest on the Rapid Examiners.

I am the registered agent manager, since 1988, after JH Taylor Management.  The broker was the agent -- Brenda Nestor was the agent, along with LBK LE Jordan (ph.), for the closing of the property purchased from Katherine Browne, the wife of Darren McGavin, the actor, who famously said to the owner of the art gallery, where I was on the board of directors, that he found two suckers to buy it, which I thought was kind of funny.

Brenda agreed to forego broker commissions, but would be the broker, if we would ever wish to sell the property, as well as her two sons -- three sons lived there when they went

13

to college.  The twin girls went to the French Institute and lived there as well, making their joint debut as debutantes there.

Everything on the fifth and sixth floor belongs to Brenda Nestor.  Some furniture was moved to the third floor as her daughters were being repainted.  Prior to the purchase of the real property -- and I said this before several times, but nobody seemed to hear me -- I bought the personalty separate and apart.

I used an appraiser, who did work for the Metropolitan Museum of Art and the IRS, who appraised the items in the town -- in the apartment building whose estimates were used with the IRS regarding taxes.

THE COURT:  Was Brenda Nestor subject of her own bankruptcy case?

MS. NESTOR:  Pardon me, sir?

THE COURT:  Was Brenda Nestor -- did Brenda Nestor file her own bankruptcy case at some point?

MS. NESTOR:  I wasn't involved in any of that.

THE COURT:  Did --

MS. NESTOR:  I would advise anybody -- probably not.

THE COURT:  The property you say was hers on the fifth and sixth floors, was that subject to her bankruptcy case?

MS. NESTOR:  That's her furniture that's there, and whatever art, and so forth.  Some pieces were moved down to the

**PEGGY NESTOR**

14

third floor because we were painting the room of her daughter, her bedroom, in the back.

THE COURT:  Go ahead.

MS. NESTOR:  Okay.  The items that I purchased, the museum appraiser was named Anton Ruderd (ph.).  And some of his files or documents were stolen from my apartment, at 15 E. 63rd Street, by Mr. Berger on July 11th.  And I think he reported to the Court that he went in and took out twenty-four boxes of documents in my apartment, in my sole fifty-percent ownership of the building, which would be theft.  And I would say that's a felony.

He went into the apartment and took out the papers.  They have not been returned.  I don't even know what happened to them.  But I think it was wrong.  And he advised Your Honor, on the 29th of July, after he had done it eighteen days before.

To continue, the appraiser that we used for the -- was from the -- worked for the Metropolitan Museum and the IRS.  He appraised the items, and the estimates were used with the IRS regarding taxes.  This was to keep the taxes in line with New York City, so the price didn't go up.  Actually, people said that it was kind of a brilliant idea, so I take credit.  The items being:  fourteen fireplaces, the carved wood fifteenth century oval room, the main entrance, two large front doors, including the inner front door.  That's three doors.

Mr. Berger has given -- as per the 7/24/2024 NYPD

**PEGGY NESTOR**

15

securing the building and the shipping boxes, has apparently moved many things, including my circa 1760 export Chinese porcelain plates.  The name of the moving company is on the boxes.  They have not come back.  And I believe Your Honor did say here in the Court, on the 20th of June, to give her back her plates.  Did you not say that, Your Honor?

THE COURT:  I think I said that, if he knew where the plates were, he should tell you.

MS. NESTOR:  You did say that, I believe.  You did say that.  I think it was the 20th of June, when the forged documents by Mr. Berger came up, when he forged my name on stationery, where he advised the insurance broker to put the beneficiary in the name of Al Togut, which is another felony.

MR. BERGER:  Judge, Neil Berger for the trustee.

You did ask us to look for the plates.  We spent considerable time and effort looking.  We found them.  They are plastic-wrapped, boxed safe inside--

MS. NESTOR:  Can he bring them to the court?

MR. BERGER:  -- inside the townhouse, as we previously reported.

MS. NESTOR:  It's an apartment building, Your Honor.  That's the way it's listed on the deed that's filed in New York City at 66 John Street.

THE COURT:  Okay.

MS. NESTOR:  Let me -- please let me finish.

**PEGGY NESTOR**

16

THE COURT:  I'm never going to get anywhere if all I do in these hearings is hear a reiteration of things that I've already ruled on.

MS. NESTOR:  I can't hear you, Your Honor.

THE COURT:  I'm never going to get anywhere if all we do at these hearings is reiterate things that I've already ruled on and gripes that I've already addressed in prior hearings.  I've already addressed and entered judgment and final orders, of many kinds, about the trustee's right to sell the property.

MS. NESTOR:  But Your Honor --

THE COURT:  Even if -- even if --

MS. NESTOR:  -- I am not under his jurisdiction, nor yours, and I own fifty percent of it, so --

THE COURT:  I've already -- I've already ruled on that.

MS. NESTOR:  That I'm under your jurisdiction?  I don't think so.

THE COURT:  I have ruled on that issue more times than I can count.

MS. NESTOR:  No, I am not.  I'm not under your jurisdiction, Your Honor.  I have not filed for bankruptcy.

THE COURT:  Okay.

MS. NESTOR:  And Peggy's case was filed.

THE COURT:  You -- you are --

**PEGGY NESTOR**

17

MS. NESTOR:  It was a business case.

THE COURT:  You are estopped from claiming that you --

MS. NESTOR:  I don't accept that.

THE COURT:  Well, you may not.  You obviously don't, but that's my ruling.  And even if you were a half owner, I entered judgment saying the property can be sold under Section 363(h).  And you may not want to believe that the Bankruptcy Code allows this, but it does.

It says that, if the debtor is a co-owner of property, I can sell the property exclusive of the interests of the co-owner, and decide later how to divide up the proceeds.  That's an authority that the Bankruptcy Code provides.

MS. NESTOR:  Well, that's --

THE COURT:  I entered a judgment saying, because you didn't oppose the relief, that that's what's going to happen.  So you're wrong on two counts, and I'm not going to --

MS. NESTOR:  I don't agree.

THE COURT:  I'm not going to -- that's fine.  But I'm not going to discuss the issue anymore --

MS. NESTOR:  That's fine, Your Honor.

THE COURT:  -- because it's just -- it's over and done with.

MS. NESTOR:  Your Honor, you told me to take it to appeal to the district court, which was done.  And in fact, most of these things that Mr. Berger has done have gone to the

**PEGGY NESTOR**

18

district court.  I even came here because there was supposed to be a meeting here December 26th in your chambers.  I came here, I showed up, nobody else was here -- about hiring some kind of a construction company for 20,000 dollars, to say what was worth what, which I think is a ridiculous waste of money, because I am the co-owner, and I don't want to put liens on my property just for him to get paid.  I think that's totally wrong.  And I think that's against what your real good wishes are, Your Honor.  I don't think that's correct.

May I finish what I wanted to say anyway?

THE COURT:  Go ahead.

MS. NESTOR:  Okay.  The items that belong to me are the fourteen fireplaces, carved wood, fifteenth century oval room, main entrance, two large front doors, including the inner front doors.  So the fourteen fireplaces belong to me, et cetera, et cetera.

Mr. Berger has, per the 7/24/2024 NYPD securing the building and the shipping boxes, apparently moved many things, including my Chinese porcelain plates that you told him, here in the Court on June 20th, to return to me, which he has not done.  The name of the moving company is on the boxes, so we should probably send them a subpoena.

The building was appraised for fifty-five million dollars in September 9th of 2022.  The arbitrary drop of price by Mr. Berger, without any advice or knowledge to my sister or

**PEGGY NESTOR**

19

sister myself, is similar to other incorrect actions done by Mr. Berger.

In my opinion, he has committed three felonies: forging stationery with my name to a fully-paid insurance policy; have the beneficiary changed to his law partner, Mr. Berger -- Mr. Togut, rather; moving LT court application of illegal eviction.

The only place in New York that anything is done for landlord-tenant is the civil court. That's the correct place. And RPAPL 853 requires treble damages. I have been -- in my opinion, since I own fifty percent of it, I was illegally evicted. I don't blame it on Your Honor. I think it's Neil Berger because he has a certain way of doing --

THE COURT: You filed a signed affidavit, within ten days prior to that eviction, saying that you never resided at the property.

MS. NESTOR: I didn't until my property was sold by these people in Long Island. My property --

THE COURT: You filed --

MS. NESTOR: That was filed --

THE COURT: -- an affidavit just --

MS. NESTOR: -- by Anne Penachio.

THE COURT: -- just prior to your removal --

MS. NESTOR: No.

THE COURT: -- saying you did not reside at the

property.

MS. NESTOR:  I wasn't, because I was living in my other house at the time.  My property in Oyster Bay Cove was sold for nine million dollars.

THE COURT:  When?

MS. NESTOR:  They're now resell -- two years ago.

THE COURT:  Okay.  But --

MS. NESTOR:  Or three years ago.

THE COURT:  No, you filed --

MS. NESTOR:  They're now reselling it --

THE COURT:  You filed an affidavit.

MS. NESTOR:  No, but I have another property too in downtown.

THE COURT:  Enough.

MS. NESTOR:  Let me finish, please, Your Honor.  Anyway, RPAPL is -- the treble damages definitely applies here.  And you told me to refile it.  I did refile it.  I think it went to the district court as well.  But the correct place, according to the paperwork there, is the civil court, where everything with landlord and tenant is done.  It's not done in bankruptcy court because I'm not in bankruptcy.  It's done in the civil court.

Now, it moves, apparently, to a district court, which is crazy.  Maybe I should refile it again in the civil court, because that's where everything with landlord-tenant is done,

PEGGY NESTOR

21

Your Honor. Believe me; I'm an expert. And that's where anything, with a rent-stabilized building where you cannot evict anybody if they're over a certain age, applies. And that's the law of 1969 rent stabilization. It's now called something else, rental apartments in New York. But it's basically rent stabilization of 1969. He offered, arbitrarily, my fifty percent undivided --

THE COURT: Ms. --

MS. NESTOR: -- ownership --

THE COURT: Ms. Nestor --

MS. NESTOR: -- for all --

THE COURT: Ms. Nestor, none of this has anything to do with Brown Harris.

MS. NESTOR: It does.

THE COURT: No.

MS. NESTOR: I'm coming to it.

THE COURT: No, it does not.

MS. NESTOR: This is the background.

THE COURT: This is all --

MS. NESTOR: It's really --

THE COURT: -- all stuff you want to relitigate that I have already ruled upon. Your state court action was removed to this court, and I dismissed it.

MS. NESTOR: Okay. Brown Harris Stevens has no right to sell my property and to offer it for fifteen million dollars

22

less than the value that it was in September 2022.  And you even said that it was valued at that.  There was an appraisal September 22nd.  You said that's a good appraisal.  You did say it in one of these court hearings with Anne Penachio, when she was only on the telephone, and nobody could talk with her.

She misfiled this case.  It was a business -- it was a business reorganization, because I'm owed -- Peggy's owed a lot of money, thirty-four million dollars, for use and occupancy, for nineteen years, for the offices and showroom at 15 E. 63rd Street.  She needs to be paid, Peggy.  And it's her thing.  And the company, Oleg Cassini, belongs to me.  According to the Internal Revenue Service in Covington, Kentucky, the trust and estates, that had senior paralegal -- no matter what the people in Long Island say, that's a bunch of baloney.

I will just finish.  The contract with Sotheby's of August 2024; Sotheby's was found by Peggy Nestor when she was selling Mrs. Mellon's (ph.) house on 70th Street.  She was not to use the name of my husband, Oleg Cassini, and wrote that she would not do that in any manner.  Apparently, an interview was given to the New York Post.

Out of the blue, Mr. Berger, without advising anybody, Peggy, me, or anybody, hires an unknown person called Mr. Sami Hassoumi, who doesn't even have a picture on the internet of who he is or what he looks like.

Lynx -- Mr. Michael Alfieri is a -- that's part of the

other thing.  He's a lender in New Jersey who's not licensed to loan in New York State.  And neither is Brian Floss (ph.), who he acquired the four mortgages from.  He's not licensed to -- according to 590, he's not licensed to lend in New York State.  And Mrs. Penachio never advised of any meetings or did anything else.

We were -- Mr. Al Togut secretly signed papers approving the drop in price from fifty-five million dollars in the appraisal, reducing the price by fifteen million dollars.  That makes me lose fifteen million dollars in value.  I can't go and sell it with anybody else and say, it's now worth thirty-nine, but it was a mistake.

That was wrong.  He put it right away on the internet.  And the only way I found out about it was by accident.  Somebody called me and said, your house is on the internet for sale for thirty-nine million dollars.  Why did the price drop?

Everything was misfiled by her, and also the lady that filed the papers for the -- for Lynx Asset here today, she also files papers for Togut.  She did the papers at the Rapid Examiner.  She filed the papers also for the people out there in Long Island.  I think she has a conflict of interest.  I think both of these things tie together.

I object completely to Sami Hassoumi, who is an unknown person.  He has keys to my house, and my property is inside.  He can go through anything he wants.  I can't even get

**PEGGY NESTOR**

24

into my own house.  This is really wrong, Your Honor.  That is illegal eviction.

And my sister, Brenda, she was evicted too.  And anybody else living there, there are seven apartments that are rent stabilized, you're not allowed to evict people like that and put them on the street.  That's against the New York State law for rent stabilization, and against New York law also.  It's different than it is in any other part of the country.

So I object seriously to Mr. Hassoumi, and I don't want him in my house.  And I want keys to my house.  And I can't almost take it anymore.  It's just too much.  This is supposed to be the United States of America.  I really feel like I've been abused terribly here.  And it's really wrong.  And he is terrible about it.

This is -- it was a business loan with a corporate identity and not personal.  It's not a commercial loan.  The loan is invalid.  Everything done with Mr. Alfieri, if it was not done through Gemeaux Ltd., it's invalid.  And nobody owes anybody anything.  And that's it.

What we'd like to do is finish with Mr. Alfieri.  The loan belongs to Gemeaux, not Peggy.  She comes out of this horrible thing that she's been involved in because of Anne Penachio filing papers incorrectly.  And we finish, and that's it.

We're wasting a lot of time and money.  He's just

building it up, building it up, suing, subpoenaing everybody, including Google.  What the heck do I got to do with Google?  I mean, crazy.  He's just trying to run hours to make legal fees. In fact, that's what the lawyer for the Emigrant Savings Bank said.

THE COURT:  That's --

MS. NESTOR:  He's just trying to get legal fees.

THE COURT:  That's enough.

MS. NESTOR:  Now here's the --

THE COURT:  That's enough.

MS. NESTOR:  The other thing that's coming right up, it's almost -- they're kind of, like, joined at the hip.  590, if it's not as a business, as a personal, it's illegal.

THE COURT:  We'll talk about that when we get to the Lynx motion.  We're talking about Brown Harris at the moment. And --

MS. NESTOR:  Brown Harris I do not want in my house. And Sami Hassoumi is a awful person.  Don't want him any place near it.  He doesn't even have his picture, what he looks like, on the internet.  He should have advised me.  He should have advised Peggy, don't you think, Your Honor?

THE COURT:  He's an awful person because he doesn't have his picture?

MS. NESTOR:  I've heard about that from other people that are in the business, in the real estate business.  Several

people called me about it and said how could you possibly allow that to happen?  How did I even know?  I would never have known it, in a hundred million years, except that I got --

THE COURT:  That's not --

MS. NESTOR:  -- a call from somebody.

THE COURT:  That's not evidence that he's an awful person.  It's pure hearsay.

MS. NESTOR:  That's their opinion.

THE COURT:  Okay.

MS. NESTOR:  I clearly object to it.  I have filed an appeal and everything else, but he's already in.  He's got it on every social media, every place under the sun, at a lower price.  He's cost me fifteen million dollars in value, which is a fact, because of what he did.  I'm not advised.  I hear about it from somebody on the street.  I think that's very, very wrong.  I don't think that's the way you want things to be done, Your Honor.

THE COURT:  Okay.  All right.  Any response, Mr. Berger?

MR. BERGER:  Quickly, Your Honor.  One, just so that the record is clear, perhaps I misunderstood you when you were referring to Bankruptcy Code Section 363(h) and used the word exclusive.  I think you meant to -- maybe I misunderstood -- it's inclusive.  363(h) provides that, "Notwithstanding subsection (f), the trustee may sell both the estate's

interest, under subsection (b) or (c) of this section, and the interest of a co-owner".  And that's what, Your Honor, 363(h) --

THE COURT:  That's what I thought I said, and that's what I said in my judgment, yes.

MR. BERGER:  Yes.  I'm sorry if I misunderstood.  I just wanted the record to be clear.

Your Honor, clearly, the trustee has the strongest incentive to sell this property at the highest price possible. We're hoping that there will be competitive bidding, but certainly the market is going to speak.  The trustee has extraordinary experience selling real estate in bankruptcy cases.  He consults regularly with Lynx about the sale process. He consults regularly, previously with Sotheby's, and now with Brown Harris Stevens.

And nothing that Ms. Marianne Nestor has said undermines anything in the trustee's application.  I have to defend Mr. Hassoumi.  I've dealt with him on the phone.  He is a straight shooter, and he's doing his best to help the trustee and the estate.

And in response to one of the inquiries Your Honor made, Brenda Nestor, who Ms. Marianne Nestor just mentioned, was a Chapter 11 debtor recently in a case in Miami.  She proved herself to be dishonest.  A Chapter 11 trustee was appointed in her case.  We've spoken with counsel for that

**PEGGY NESTOR**

28

Chapter 11 trustee.  The case is now closed.  We did read her petition and schedule.

THE COURT:  Did you say not or now closed?  Did you say the case is not closed or now closed?

MR. BERGER:  It is now closed.

THE COURT:  Now closed.

MR. BERGER:  It has been closed for a while.  But we were able to review Brenda Nestor's schedules, her statement of financial affairs, other pleadings she filed.  There is not a single mention of an interest in property in the townhouse in this case.  But again, Your Honor, we have a motion scheduled to be considered on the 27th for procedures for parties to come forward and assert interests.

That's all, Your Honor.  One last thing as I circle back, and I simply have to say so.  Ms. Nestor just mentioned, potentially, a new lawsuit against the trustee, perhaps me, perhaps my firm, back in the New York State court.  Your Honor, did enter an order that prohibits that from happening.  And Ms. Nestor ought to read that order carefully.

And presuming, for the moment -- not to be too presumptuous -- that Mr. Hassoumi and Brown Harris is authorized by Your Honor's order, by an order that Your Honor enters, he will be a professional retained by the trustee, also protected by the Barton Doctrine, we think, well within the scope of Your Honor's litigation bar.

**PEGGY NESTOR**

29

Ms. Nestor has contacted Brown Harris Stevens and Mr. Hassoumi, made a number of unfounded claims.  She attached our email, my email exchange with her, to her response.  I'll leave it at that, that Brown Harris Stevens, once retained, and Mr. Hassoumi, as part of Brown Harris Stevens, will fall under the trustee umbrella.  And we would hope that neither Ms. Nestor, the debtor, or anyone else seeks to undermine the sale process that Your Honor ordered.

MS. NESTOR:  Your Honor, he is defaming my sister, Brenda Nestor.  I think what he said is defamatory, and you should sanction him for it.  He has no right to say that about her.  He's defamed her reputation.

MR. BERGER:  Your Honor, I read the record.  I read the documents.

MS. NESTOR:  Mr. Berger is a liar.

MR. BERGER:  I read the motion for the appointment of a trustee.  I spoke to the trustee's counsel.  I'll retract my prior statement to say the bankruptcy court in Miami found that Brenda Nestor was not a reliable steward for her estate and appointed an independent Chapter 11 trustee.

MS. NESTOR:  The conversation I had with Mr. Berger on January 24th, he called me out of the blue, because I had called this Sami Hassoumi telling him, why are you trying to offer my property for sale?  I'm a fifty percent undivided owner.  You can go down to 66 John Street and look up the

30

records; it's Marianne Peggy Nestor. That's the deed that came up after the claims of Mr. --

THE COURT: Stop.

MS. NESTOR: No, the --

THE COURT: Just stop.

MS. NESTOR: Judge Saunders --

THE COURT: Just stop. Stop, stop, stop.

MS. NESTOR: I think you should hear me, Your Honor.

THE COURT: Stop. Stop. I do not need to hear you say, for the 10,000th time --

MS. NESTOR: No, it's not 10,000th.

THE COURT: -- that you disagree --

MS. NESTOR: It may be fifty.

THE COURT: -- with my prior decision about whether you can claim a half ownership interest --

MS. NESTOR: I do, I do.

THE COURT: -- in the house.

MS. NESTOR: I wanted to read --

THE COURT: I've ruled on that. I'm not doing it again.

MS. NESTOR: Okay. It's on appeal, Your Honor. He mentioned a conversation that we had. Out of the blue, I called this Sami, and I said you have no right to sell my property, and you're reducing the price. You're costing me fifteen million dollars. That's actionable. That's actionable

31

in the -- actually in the Department of where they -- the licensing department in Albany.  And it's also --

THE COURT:  If he offers the property upon retention by the --

MS. NESTOR:  Your Honor, you can't sell something you don't own.

THE COURT:  Let me finish.  Stop interrupting me.

MS. NESTOR:  Apology.

THE COURT:  If I authorize his retention, and he offers the property, he is immune from suit by you.  And if you sue him anywhere, I will hold you in contempt and jail you.  Do you understand me?

MS. NESTOR:  No, I don't.

THE COURT:  Well, you --

MS. NESTOR:  I don't understand, Your Honor.

THE COURT:  What don't you understand?

MS. NESTOR:  I don't understand why I, as a citizen of this country, have my rights taken away.

THE COURT:  You can't sue --

MS. NESTOR:  Even Anne Penachio said --

THE COURT:  -- the trustee --

MS. NESTOR:  -- it's only a --

THE COURT:  -- or you can't sue --

MS. NESTOR:  -- filed deed that counts.  Even if I --

THE COURT:  Okay.  Sit --

32

MS. NESTOR:  -- put something in --

THE COURT:  Sit down.  Sit down now.

MS. NESTOR:  Okay.

THE COURT:  I'm going to authorize the retention of Brown Harris.

MS. NESTOR:  You're wrong.

THE COURT:  The objections are without merit.  The trustee has the authority to sell, both because this particular objector is estopped from claiming a half ownership interest in the house, as I have previously ruled on many occasions, and because the trustee has the authority to sell, under Section 363(h), per a judgment that I entered almost a year ago to that effect.

The objections as to the price are without merit.  The property has been on the market for more than a year.  It has not gotten any offers.  I'm going to rely on the business judgment of the trustee and Brown Harris as to what listing price should be.

If there is a buyer, and if there is an objection at that time to the price, and the sufficiency of the price, that would be the appropriate time at which such an objection could be made.  But it is not a reason for me to deny the retention of Brown Harris.

The other issues that have been raised I have dealt with on many prior occasions.  They're essentially a rehash

33

and, in many respects, issues that are not relevant to what's before me today.  And I'll approve the retention.

MR. BERGER:  Thank you, Judge.  We'll submit an order that reflects the filing of the response in today's hearing.

MS. NESTOR:  Your Honor, I feel that you're very biased against me, and I don't know why.  Here is the civil court papers that are there available.  This is not filled in by me.  This is available to any citizen of New York that has property in New York City.

THE COURT:  And I told you, when you sued the trustee before, that you're not allowed to do that.  And I ordered you not to do it again.

MS. NESTOR:  No, I did not -- as we've said, and you have agreed, I am not under your jurisdiction.  And this is an apartment building --

THE COURT:  I have not agreed to that.  You cannot sue.

MS. NESTOR:  You agreed that --

THE COURT:  You cannot --

MS. NESTOR:  Okay.

THE COURT:  -- sue --

MS. NESTOR:  But who then do I sue, the United States of America?

THE COURT:  -- a trustee who has been appointed by me unless you get my permission.  That's the law.

**PEGGY NESTOR**

34

MS. NESTOR:  Okay.  Will you give me your permission?

THE COURT:  No.

MS. NESTOR:  Okay.  Then who do I sue, the United States of America?

THE COURT:  If you want to complain about him, you come here.  You don't go to another court.

MS. NESTOR:  But I'm not under your jurisdiction, Your Honor.  I don't want to be either.

THE COURT:  The trustee is -- if you're complaining about what the trustee is doing, your complaint is here.

MS. NESTOR:  I'm complaining because I was illegally evicted out of a building that I've owned fifty percent of since 1984.  I don't think you seem to understand what I'm saying.  Only a filed deed counts in New York State.  And that's even what Anne Penachio said, a filed deed.  The only deed filed is the one from 1984, because Judge Verna Saunders removed the attachments that were put on by a Kenneth Lehman (ph.).

THE COURT:  You and your sister lied to me --

MS. NESTOR:  That's not true.

THE COURT:  -- and said that she was the sole owner, and you filed --

MS. NESTOR:  That's not true.

THE COURT:  -- sworn papers saying you had no ownership interest.

**PEGGY NESTOR**

35

MS. NESTOR: That is not true, Your Honor.

THE COURT: I am not going to listen to this anymore.

MS. NESTOR: You're wrong. You're absolutely wrong. Here's the conversation with Mr. Berger if you're interested in reading it.

THE COURT: Okay. Let's move on. Stop. We're done with Brown Harris.

MS. NESTOR: Well, I --

THE COURT: We're moving on --

MS. NESTOR: It's wrong --

THE COURT: -- to the next motion.

MS. NESTOR: -- and I'm going to follow it up with the other agencies.

THE COURT: You go ahead.

MS. NESTOR: I will. And I have.

MR. BERGER: Thank you, Your Honor. Neil Berger for the trustee. The next matter on the calendar is the motion by Lynx Asset Services. Ms. Volkov can present that to Your Honor.

MS. VOLKOV: Good morning, Your Honor. For the record, Ilana Volkov, McGrail & Bensinger LLP, for Lynx Asset Services, LLC.

This is the return date for the hearing on my client's motion to fix and allow a secured claim. This motion is being filed in connection with the sale procedures order, as

36

extended, that Your Honor previously entered.

We filed a motion on January 23rd, 2025, at docket number 491, in support of the motion.  We filed a declaration of Michael Alfieri, the principal of Lynx, at docket number 492.  And all documents that are in support of the motion are attached to Mr. Alfieri's declaration.

Mr. Alfieri is in court today, as well, to the extent anybody has any questions regarding the documents or the facts set forth in his declaration.  At docket number 494, we filed a certificate of service with respect to the motion.

Your Honor, I'm not going to belabor the record, but the order that we're asking the Court to enter, the revised version of which was emailed to Ms. Echevarria this morning, has been negotiated among the parties that have an interest in the property and otherwise in this case.

Initially, we had sought to include the second drawer, the three-million-dollar -- I should say, the contemplated three-million-dollar second drawer under the DIP in the amount of our claim.  And following emails and discussions with the various counsel, again, who are here in court today, it was agreed that that amount should not be included in our claim. And so that's hopefully what Your Honor has seen in the revised form of order as the revised amount.

Additionally, Your Honor, in the past week or so, we have been emailing regarding the post-judgment interest

**PEGGY NESTOR**

37

calculation that my client was using in order to calculate its claim. Excuse me. And it was brought to our attention that the post-judgment interest was being calculated on a 360-day calendar year, as opposed to a 365 and 366 calendar year. So those numbers have been updated, and again, reflected in the revised form of order that I submitted this morning.

The claim stems both from the pre-petition judgment and foreclosure that we obtained against the debtor and her sister, and Ms. Marianne Nestor, as well as the post-petition financing that has been extended to the trustee in the amount of 400,000 dollars. And again, all of the supporting calculations are included in Mr. Alfieri's declaration and subject to the two clarifications that I just made on the record and reflected in --

THE COURT: The interest --

MS. VOLKOV: -- the revised form of order.

THE COURT: The interest calculations, since the date of the judgment, have all been at nine percent simple interest; is that correct?

MS. VOLKOV: Yes, they have been at the statutory judgment rate, Your Honor.

THE COURT: Okay. And part of what you listed as your claim was attorney's fees. I didn't see an objection to that, but I also didn't see any backup for it. Did you submit the invoices to Mr. Berger or to anybody else?

38

MS. VOLKOV: We have not. We did send invoices, in connection with the DIP loan, to the trustee, because those were reimbursed to us from the proceeds of the DIP loan. But we have not sent -- nobody has asked us for invoices for the legal fees.

THE COURT: But your claim amount includes legal fees and expenses, through December 31 of 2024, in the amount of $22,222.50. Is there a support for that?

MS. VOLKOV: Well, since the petition date, our attorney fees are higher than that. I would say that our attorney fees, through the judgment date, are included in the judgment. We do have invoices for the nonpost-petition financing services that we rendered. But those, again, have not been submitted to anybody because no one has asked us for them.

THE COURT: Well, we have a prior order and agreement as to what the debt was as of June 30th of 2024. If you want to add legal fees --

MS. VOLKOV: We do.

THE COURT: -- and expenses since then, you really should file some evidence of it, right?

MS. VOLKOV: Okay. I mean, we can certainly do that, Your Honor. That's not a problem. And if you would like, we can reflect -- we can further revise the order to that effect.

THE COURT: Okay. Well, either I can exclude the

39

legal fees for the moment, or you can file the evidence of it and I'll do the order after that.  What do you want to do?

MS. VOLKOV:  Are you saying file the invoices or submit them to counsel?

THE COURT:  File them.

MS. VOLKOV:  Since June 30th of 2024 that relate to the non-DIP financing?

THE COURT:  Whatever legal expenses you have included in the amount that you seek which, according to the motion, was $22,222.50.

MS. VOLKOV:  Okay.  Your Honor, what I would prefer to do is to have the order entered without the legal invoices, at the moment, and have them submitted at a later time.

THE COURT:  Okay.

MS. VOLKOV:  Because to the -- okay.  Thank you, Your Honor.

THE COURT:  All right.

MS. VOLKOV:  The only other thing that I would add is that nobody filed a timely objection to our motion.  Last night, Ms. Marianne Nestor filed -- I guess what she filed is an objection to this motion.  It didn't really raise any substantive -- excuse me?

THE COURT:  Right.  And one of --

MS. VOLKOV:  It didn't raise any substantive objection to the actual motion.  I think most of what is in this pleading

has just been stated on the record by Ms. Nestor, so I'm not sure --

MS. NESTOR:  I have a copy for your Honor.

MS. VOLKOV:  -- if you want me to address that or not.

THE COURT:  No, I've seen the objection.  Tell me what the Lynx position is on the applicability of sections -- the recited sections of the New York Banking Law, and whether this was a loan to individuals backed by real estate, and just what your position is.

MS. VOLKOV:  Sure, Your Honor.  Well, first of all, all of those kinds of arguments have already been addressed and rejected by the foreclosure court by entry of the foreclosure judgment.  All of these arguments that this was not a commercial loan, or that it's a multifamily property, or that any residential real property law should be applied to this situation, again, have all been rejected by the state court presiding over the foreclosure case.  And I would submit to Your Honor res judicata here.

And we would essentially raise the exact same arguments that we raised in the state court.  I mean, the loan documents are very clear that this was a commercial loan.  That was the only reason that this loan was actually extended by my client.  There are representations in the loan documents, by the two Nestor sisters, that this is a commercial loan.

And I hear Ms. Nestor say that nothing was signed, and

**PEGGY NESTOR**

41

this was purely a Gemeaux loan, but that is not the case, as reflected in the documents that we submitted in connection with Mr. Alfieri's declaration, and just otherwise previously in this court proceeding.

Yes, the loan originally was to Gemeaux, which was a commercial entity. At least it was represented to my client that it was a commercial entity, and the loan was extended as a commercial loan to a corporation or LTB, whatever that means. And it was personally guaranteed by the two owners of that entity. And the guarantees were evidenced by signatures of the debtor and her sister.

So when Ms. Nestor says that nothing was signed, nothing can be further from the truth. And so the loans were guaranteed. The guarantee was secured by a mortgage on the townhouse. And that is how we get to having evidence of the secured nature of our claim.

THE COURT: Okay. And I looked at the attachments to Mr. Alfieri's declaration, and it appears that Marianne Nestor was named as a party in the New York State court foreclosure proceeding, and that judgment was entered in that proceeding, directing a sale and determining the amount of the Lynx debt as of the date -- well, as of a certain date to be carried forward through the entry of judgment. Is that correct? Was Ms. Nestor, Ms. Marianne Nestor, a party to the foreclosure case?

MS. VOLKOV: She was.

MS. NESTOR:  I don't think so.  I never testified.

THE COURT:  Well, you may not have testified.  That doesn't mean you weren't a party if you were sued.

MS. NESTOR:  No, I don't believe so.  The statement I would like to make, Your Honor, is Gemeaux Ltd., if it's a commercial loan, was never served or even named in these papers.  If it's not a commercial -- if it was the -- this bankruptcy was misfiled by Anne Penachio.  It was supposed to be a reorganization of Gemeaux Ltd.  Peggy is owed a ton of money.  She's owed thirty-four million dollars for use and occupancy.  She's owed from taxes that she paid in Long Island, et cetera, et cetera.

Ms. Penachio promised that she was going to get all of the money back that's due Peggy, something like 106 million dollars, from Nassau County, between the taxes she paid, for the use and occupancy of the building, et cetera, et cetera.  She didn't do any of that.  She never advised us of any of the meetings with you or any -- you know that I would have shown up, of course.

She never advised us about anything, any things that were happening.  When you had that meeting on April 23rd of last year, we didn't even know anything about it.  And then when they came in and broke the door down, we didn't know anything that was even happening.

I came here, on the morning of April 25th, to file

**PEGGY NESTOR**

43

papers that Peggy had disengaged with Ms. Penachio, and the next morning the door was being broken down, and he's marching on top of us on the steps.  It was the most horrible thing in the world.  I don't think that, in the United States of America, stuff like this should happen.

THE COURT:  Ms. Nestor --

MS. NESTOR:  In any case, I wanted to just --

THE COURT:  Ms. Nestor --

MS. NESTOR:  I wanted to --

THE COURT:  You claim you didn't know about my order.

MS. NESTOR:  I didn't; nobody told us.

THE COURT:  Between the time it was entered and the time you were evicted --

MS. NESTOR:  We were -- she -- she didn't --

THE COURT:  You left a voice mail on our system --

MS. NESTOR:  She didn't -- no, I didn't know.

THE COURT:  -- complaining about it.

MS. NESTOR:  I did not, Your Honor.  It was a total surprise on Passover.  And we're next door to a shul.

THE COURT:  Okay.

MS. NESTOR:  I mean, that was really a shock.

Anyway, what I wanted to say here is this.  She didn't advise of anything.  She misfiled the papers, which we put something in front of you, which is also on appeal.  She misfiled the papers.  It was along with Gemeaux Ltd.

THE COURT: Let's focus -- let's focus --

MS. NESTOR: Otherwise, it's against the Banking Law of 590. You cannot lend to a --

THE COURT: But you can't --

MS. NESTOR: -- a natural person.

THE COURT: You can't, at the same time, tell me that this was a loan to a natural person at the same time that you're saying that it was a loan to Gemeaux.

MS. NESTOR: All the documents of Alfieri, his letter of intent, and even he had Michael Alfieri write a letter that cost a lot of money, 20,000 dollars, to write that it was okay to loan to Gemeaux. If you look, I put the mortgage schedule here. There were four mortgages done with Prime Plus, a New Jersey company, that was not licensed to lend in New York State, which is against 590. And then he took all of those mortgages and made it into a gap --

THE COURT: But your primary contention to me is that it was a loan to Gemeaux.

MS. NESTOR: Yes, it was.

THE COURT: Then you --

MS. NESTOR: Then why is Peggy in this situation?

THE COURT: Then you can't --

MS. NESTOR: She wants out. What we'd like to do --

THE COURT: -- say it was illegal on the ground that it wasn't a loan to Gemeaux, and that it was actually a loan to

45

individuals.

MS. NESTOR:  But there's no reason Peggy is in this situation.  She wants out of this bankruptcy.

THE COURT:  She --

MS. NESTOR:  She was never bankrupt.  This is --

THE COURT:  I've explained --

MS. NESTOR:  This was filed by Anne Penachio.

THE COURT:  I've explained this before.  Just because the loan was to Gemeaux does not answer --

MS. NESTOR:  I understand, Your Honor.

THE COURT:  -- does not answer the question of whether other people are obligated for it.  And you and Peggy signed a guarantee of the loan.

MS. NESTOR:  I understand that, Your Honor.

THE COURT:  And --

MS. NESTOR:  I've lived this nightmare.

THE COURT:  -- you and Peggy signed a mortgage --

MS. NESTOR:  Yes, but if you look at all of these papers --

THE COURT:  -- in support of your guarantee.

MS. NESTOR:  -- this was your Gemeaux.  It was not that Peggy needs to get out of this personal bankruptcy; it was supposed to be a business reorganization by Gemeaux because Gemeaux is the one that took the loan.

THE COURT:  You complained a minute --

MS. NESTOR: You can't --

THE COURT: You complained a minute ago that Lynx didn't suit Gemeaux.

MS. NESTOR: Pardon me?

THE COURT: You complained a minute ago that Lynx didn't suit Gemeaux. It didn't have to. It was entitled to go after the guarantors and to pursue the collateral.

MS. NESTOR: But she never even named anybody. She made so many mistakes. If you're going after the guarantors, who are natural people, then you're supposed to give them at least ninety days' notice. She didn't do anything according to the rules.

Listen, believe it or not, I almost have a degree in landlord-tenant in New York. She did the wrong thing. She didn't do it correctly, because she didn't understand, or whatever. But you're supposed to do that. It's the same thing with the illegal lockout. It's all in civil court. We'd like to get rid of this. We'd like to settle with Mr. Alfieri, with Gemeaux. We'd like to settle and get out of this. This is ridiculous. It's running up a lot of legal fees for no reason.

THE COURT: Ms. Volkov, was the foreclosure judgment appealed?

MS. VOLKOV: I don't believe so, Your Honor.

THE COURT: Okay.

MS. NESTOR:  I think everything was on appeal.

THE COURT:  And if I remember right, you were on the eve of actual foreclosure in 2023 --

MS. NESTOR:  Would you like to see --

THE COURT:  -- when the bankruptcy case was filed. Is that right, Ms. Volkov?

MS. VOLKOV:  That's correct, Judge.

MS. NESTOR:  Your Honor, would you like this for reference?

MS. VOLKOV:  We had the sale scheduled for the 9th.

MS. NESTOR:  You do?  Okay.

THE COURT:  All right.  Anything else?

MS. NESTOR:  Pardon me?

THE COURT:  Anything else?  Anything else on the Lynx motion?

MS. NESTOR:  Yes.  I'd like -- we'd like you to rule on this.  It was a loan to -- it was a business loan to Gemeaux.  We'd like you to rule on that.  Peggy wants out of this bankruptcy thing.  This has made her very, very ill and there's no reason for that.  She wants out of it.  She's not bankrupt in any way, shape, or form.  It's horrible what he's done.  He's your hired person, but he's lied all over the place.  He's a liar for hire; I understand.  He's lied this, that, and the other.  And he's created so many things, so much negative stuff.  It's just hard to deal with.  You can go to

sleep at night, and you wake up with all this junk in your head.  It's just wrong.

She needs to be out of this, because it's made her very sick, and she doesn't need to be involved in this.  It's a Gemeaux loan.  We'd be happy to pay off the Gemeaux loan, which we've told Mr. Alfieri one hundred times.  But if it's not a Gemeaux loan, he's guilty of usury, because this would be usury.  Because anything over sixteen percent, to a natural person, is usury.

THE COURT:  All right.

MS. NESTOR:  You know I'm right.

THE COURT:  No, I don't.

MS. NESTOR:  Well, I don't have a degree from St. John's, like all these other people, but I believe I am right.

THE COURT:  Okay.

MS. NESTOR:  So 590, I've mentioned it every time I've been in the courtroom.  And you asked me several times what is 590.  Now you have it.  It's explained here in detail.

THE COURT:  All right.  I'm ready to rule on the --

MS. NESTOR:  Your Honor, we like to finish with Mr. Alfieri.  Somehow, the thing from seventeen, when we started, the UST has gotten it now up to twenty-eight million dollars.  That's an impossibility.

THE COURT:  Well --

MS. NESTOR:  And I don't agree, even though I am co-

owner, that he should put a lien on my building for his legal fees at 3.4 million dollars. I think that's absolutely wrong and against the American way, the Constitution, and everything else.

He breached the Fourth Amendment by breaking into my house, and my undivided ownership, my apartments, and stealing property out of my house. And the plates probably are in his home. He did a lot of things incorrectly here. He moves forward. He went to the Court and said things that he couldn't go there, this, that, and the other. Then he puts in this Hassoumi without telling anybody. The only time I found out about it was, somebody called me out of the blue, another broker, and said, well, why did you give it to Sami? He's -- I won't even tell you what he said about him. It was bad.

He said, why are you giving it to him? I said, we didn't know anything about it. It is my fifty percent. It's on file on 66 John Street. And even Anne Penachio, who used to be her attorney, said only a filed deed counts, and that's New York State law, is what she said.

The deed filed is -- I wanted to give you a certified copy, but you didn't want it. It's the deed file, says Peggy Nestor, Marianne Nestor, 1984. Judge Verna Saunders threw out the stuff of Kenneth Mahon and Jeffrey DeLuca that was out there in Long Island. That was thrown out by her on September 29th, 2020. And the other deed came back. The only deed on

50

file is the one from 2/23/1984 to Peggy Nestor and Marianne Nestor from Katherine Browne.  That's a fact.

THE COURT:  Okay.  All right.

MS. NESTOR:  And Your Honor, you can't give away my property from the bench.  That would be wrong.  And you should admonish him for breaking in -- the Fourth amendment, the Eighth Amendment, the, I don't know, Thirteenth amendment. There's, like, every amendment in the book has been broken.

THE COURT:  I'm not going to admonish him for doing what I told him he could do.

MS. NESTOR:  What?

THE COURT:  I'm not going to admonish him for doing what I told him that he could do.

MS. NESTOR:  I can't believe -- you seem to be so nice, Your Honor.  I don't think you're capable of doing something so nasty as what happened to us.

THE COURT:  What --

MS. NESTOR:  I really don't.  Every time I think --  I couldn't believe it --

THE COURT:  You are in --

MS. NESTOR:  -- could happen from him.

THE COURT:  You are in denial of the following.  Your sister faced a foreclosure of the building, personally.

MS. NESTOR:  That was --

THE COURT:  She filed a --

MS. NESTOR:  -- filed by Ms. Penachio incorrectly.  It was supposed to be --

THE COURT:  -- a --

MS. NESTOR:  -- a business reorganization of Gemeaux.

THE COURT:  Do not interrupt me again.

MS. NESTOR:  Oh, I interrupted.

THE COURT:  Do not interrupt me.

MS. NESTOR:  I'm sorry.  I apologize.

THE COURT:  Do not interrupt me again.  A filing by Gemeaux would not have stopped the foreclosure case because the foreclosure case was against the guarantor and the guarantor's property.

The argument that was first made, after this case had already been pending for a year, that supposedly it was a mistake to have filed it on behalf of Peggy, makes no sense, because filing for Gemeaux would not have done what Peggy needed.  And surely Peggy realized, when she went to the 341 meeting and to other proceedings, that the case had been filed on behalf of her, and that she had been named a debtor, and she made no argument that this was a mistake.

MS. NESTOR:  Your Honor --

THE COURT:  Whether -- no, as to your --

MS. NESTOR:  -- the money to pay this off was there since day one.  Otherwise, she would have never done it.  And --

52

THE COURT: I am not --

MS. NESTOR: -- you got a copy of the letter.

THE COURT: I am not finished.

MS. NESTOR: Okay. I'm sorry.

THE COURT: I am not finished.

MS. NESTOR: But you had a copy of a letter saying that there was twenty-five million dollars available, sent to you directly, Your Honor.

THE COURT: I am not finished.

MS. NESTOR: I understand.

THE COURT: Peggy filed papers --

MS. NESTOR: This is passionate.

THE COURT: -- early in her bankruptcy case, saying that you had executed a deed transferring your one-half interest --

MS. NESTOR: Not true. I never did.

THE COURT: -- in the property to her. She said that you had done so. She said that they had the copy of the deed.

MS. NESTOR: Where is it?

THE COURT: I asked that you somehow confirm on the record that that was the case because I didn't want an issue to come up. Peggy filed suit against you, seeking a declaration that you did not own any part of the property, and that, even if you did, that the property could be sold. You filed an answer to that complaint, saying that you did not own any of

53

the property, and not opposing the entry of a judgment of sale, which I then entered.

When there were disputes about the appointment of a trustee, you filed a letter with the Court, in which you said that you did not own and never had owned any part of the property, that it was the sole property of Peggy Nestor, and that you had never resided there.  That was within no more than two weeks prior to the time when I authorized the trustee --

MS. NESTOR:  Well, Your Honor --

THE COURT:  -- to take control of the property.  You complained bitterly that you didn't know that you were about to be evicted, but you left a voice mail with us, on our chambers system, complaining about it --

MS. NESTOR:  I did not.

THE COURT:  -- over that prior weekend.

MS. NESTOR:  It would -- no, not -- Your Honor --

THE COURT:  So let me -- as to --

MS. NESTOR:  She --

THE COURT:  As to -- I am not finished.

MS. NESTOR:  Okay.

THE COURT:  As to what's happening with regard to the Lynx motion, you say that the New York State Court judgment was not entered as to you, but the papers submitted by Lynx show that you and Peggy Nestor jointly executed a guarantee in favor of Lynx, and jointly executed a mortgage, that you were named

as a defendant in the foreclosure case, and that a judgment was entered in that case that determined the amount of the debt owing to Lynx, and that directed that a foreclosure sale take place.

You argued, in your papers, about the separate surrogate court judgment.  That has nothing to do with the Lynx issue.  You say that the loan to Lynx should be treated as an illegal loan to an owner occupying property in violation of various provisions --

MS. NESTOR:  It's true.

THE COURT:  -- of New York law.  But you yourself say, in the same papers, that the loan was made to Gemeaux, and not to you and to your sister.  You and your sister are guarantors, not borrowers.

MS. NESTOR:  Okay.

THE COURT:  So all of your arguments about whether the loan was really to Gemeaux are contradicted by you yourself, in your own papers, where you yourself say that Gemeaux was the borrower, in which case all of your other arguments about whether it was a commercial loan, whether usury laws apply, really don't have anything to do with it.

And in any event, more importantly, those were all arguments that, if they were to be made, should have been made to the New York State Court and either were not made or were overruled.  I don't have the full record before me.

MS. NESTOR:  Okay.

THE COURT:  But either way, the state court judgment is determinative and conclusive and precludes those arguments here.  The only issue before me is carrying forward the state court judgment and getting the interest accruals proper, or if there's additional amounts, for example, legal fees that are claimed, I need support for that.

But otherwise they have a claim, they're entitled to a claim.  We determined, without objection, what the amount of that claim was, as of June 30th of 2024.  It's a really simple job to carry it further forward from then if the only thing being added is interest.  And so I'm going to grant their motion.

MS. NESTOR:  But Your Honor, I want to say something. Peggy needs to get out of this thing with you.  It's not good for her health.  She's very upset.  We'd like to pay off Lynx the proper amount.

THE COURT:  I denied her motion to dismiss the bankruptcy case --

MS. NESTOR:  But I think it would --

THE COURT:  -- quite a while ago.

MS. NESTOR:  I understand that, but I --

THE COURT:  It's not pending before me any longer.  I denied it.

MS. NESTOR:  Okay.  It's on appeal.  I understand

that.  But she needs to get out of this.  We would like to pay off the proper amount to Mike Alfieri, not these inflated amounts.  We'd like to stop with the bullshit -- excuse me -- of all this legal maneuvering by Mr. Togut's hired person.

But actually, no matter what you say, there was nothing sent to Gemeaux regarding this loan.  And if a loan -- he was not registered -- when he took these loans from Prime Plus, Mr. Alfieri, he was not registered as a lender in New York.  And that's the 590 thing.  And you have not ruled on that, because that's New York law.

Also, the ones that were made with Prime Plus were not -- they were -- he was not a lender either.  He's in New Jersey.

THE COURT:  Okay.

MS. NESTOR:  Neither one of them were registered in New York.

THE COURT:  Those were all --

MS. NESTOR:  Alfieri or Prime Plus.

THE COURT:  Those were all issues that should have been raised, if they weren't, in the state court.  And the state court judgment is conclusive.  They're all --

MS. NESTOR:  Well, that's why I --

THE COURT:  They're all efforts to undo the state --

MS. NESTOR:  That's the reason why they --

THE COURT:  They're all efforts to undo the --

MS. NESTOR:  Okay.

THE COURT:  -- state court judgment.

MS. NESTOR:  That's why they became a gap mortgage. They all became together as a gap mortgage is the reason that Prime Plus was not registered as a lender in New York State. And you have to be registered here.  There's very stringent rules in New York, including about the rent stabilization and everything else, that perhaps, since you're in a higher court, Your Honor, you're not aware of.  But they are very stringent. All you have to do is walk over there.  There's people there every day of the week going through the same routine.  They've been illegally locked out.  And they even prepare papers already telling them how to do it.  And it's treble damages, RPAPL 853.

And as the other people there that were in the apartment, anybody in the building -- it's a seven-unit apartment building -- you evicted -- you threw everybody on the street for ten months.  That's money.  We could have rented the place at least for probably 100,000 dollars a month, or certainly the apartments 10- or 15,000 dollars each, or 25,000 is what they go for in the area.  And we submitted papers on that.  There was no answer from Your Honor about that.  We could have done that.  Instead, Mr. Berger has got the keys. He puts a padlock on the door.  He locks everybody out, including that pretty little girl, my niece, that was here.

**PEGGY NESTOR**

58

She's thrown out on the street.  That's totally wrong.  That should never have happened.  And we were not notified by Anne Penachio --

THE COURT:  Okay.  Enough.

MS. NESTOR:  -- who misfiled everything.

THE COURT:  Really enough.  Really enough.

MS. NESTOR:  I'm telling you the truth.  I have to get --

THE COURT:  Enough.  Enough.

MS. NESTOR:  Well, I want you to --

THE COURT:  I've ruled on this issue.  I authorized the trustee to do what he did.  I have explained --

MS. NESTOR:  I think you made a mistake.

THE COURT:  -- until I'm blue in the face, why I did it.  I'm not revisiting those issues.

MS. NESTOR:  Well, I want --

THE COURT:  I think your appeals for some of this has been dismissed.

MS. NESTOR:  Your Honor, I wanted you to know that we knew nothing about it, nothing about it.  We knew nothing about your meeting on April 23rd.  And when Mr. Berger knocked on the door on Friday afternoon, on the 26th, I was not there.  So my niece said she's not here, she can't do it.  He said -- he called me on the phone, he said, do you want the hard way or the soft way?  And I said, it's Friday afternoon, go home and

**PEGGY NESTOR**

59

have a good weekend, and we'll talk next week. I wasn't there, so I couldn't accept anything. Then on Monday, I came down here, at 8 o'clock or 8:30 in the morning, because Penachio, Ms. Penachio, never gave anybody information. And then the next day, Tuesday morning, the doors are broken out. That's --

THE COURT: Well, wait a minute. You just said that somebody called you and said, do you want this the hard way or the soft way.

MS. NESTOR: Mr. Berger.

THE COURT: But you just told me, no more than five minutes ago, that you didn't know before Tuesday that he was going to seek to --

MS. NESTOR: He said he wanted to give me papers. He wanted to give me something. And he said do I want it the hard way or the soft way? I didn't know what he was going to give me. I said I'm not there, I can't accept any papers.

THE COURT: All right. Enough.

MS. NESTOR: I'm not there.

THE COURT: That's enough. That's enough. All right.

MS. NESTOR: Your Honor, I have a feeling that you --

THE COURT: Ms. Volkov, please submit --

MS. NESTOR: -- you have a preset ordained biased against me.

THE COURT: -- submit your order.

MS. NESTOR: And that's very uncomfortable.

MR. BERGER:  Your Honor, if I may.  I'm sure the surrogate --

THE COURT:  Just let me comment on that.  I have no bias against you, Ms. Nestor.  I may have a lack of patience because --

MS. NESTOR:  No, you don't.  You're pretty nice, actually.

THE COURT:  -- because you continue to raise issues on which I've already ruled.  And you continue to ignore your own prior statements regarding ownership of the property.

MS. NESTOR:  I --

THE COURT:  And I lose --

MS. NESTOR:  Your Honor, I've been the managing agent there since 1988.  Every document that comes through to be paid comes to me.  I'm the managing agent of a rent-stabilized building that's been rent-stabilized since when we bought it.  It was rent-stabilized when we bought it.  There were tenants there.  They were all wanted to -- they all moved out one at a time.  But I've been the manager since JH Taylor Management.

THE COURT:  You wish --

MS. NESTOR:  So --

THE COURT:  You wish to make the same points over and over, including --

MS. NESTOR:  Because I feel there's nobody listening to me.

**PEGGY NESTOR**

61

THE COURT: And you continue --

MS. NESTOR: I feel like I'm talking to the wall.

THE COURT: And you continue to interrupt me --

MS. NESTOR: Sorry.

THE COURT: -- which is really not something you're supposed to do. Okay? So I've heard enough. I'm not revisiting those prior orders. They were correct. And I know you don't like it. I'm sorry you don't like it. The truth is this property is going to be sold. Peggy Nestor is a debtor. She does have legitimate debts that she owes to Ms. Volkov. And you do too, as a guarantor.

If you really want the value of that property to be maximized, you'll cooperate and not fight. You'll not make any potential buyer think that they're buying into a hassle. But I can't tell you to do that, and --

MS. NESTOR: I understand.

THE COURT: And if you don't cooperate and if, as a result, the eventual sale price is lessened, you really won't have anybody but yourself to thank for that. I hope you understand that.

MS. NESTOR: Your Honor, I don't want to sell my property at this point. It needs to be done in a different way. The marketing by Mr. Berger is horrible. You go there and you see --

THE COURT: I think this --

MS. NESTOR: -- there's a chain around the door with leaves all over the place. It's disgusting and dirty like he is.

THE COURT: Just let me -- let me tell you, you may not want to. That's not going to get you anywhere. Your appeal from my orders appointing the trustee were, I think, dismissed because you didn't file your appeals on time.

MS. NESTOR: No, they were not dismissed.

THE COURT: You have -- the trustee clearly has authority --

MS. NESTOR: No, he doesn't have --

THE COURT: -- to sell the property under --

MS. NESTOR: He doesn't have authority over me, Your Honor.

THE COURT: -- Section 363(h) of the Bankruptcy Code. You should get yourself a bankruptcy lawyer and ask about Section 363(h).

MS. NESTOR: I can look it up on the internet. It's --

THE COURT: Okay.

MS. NESTOR: All the information they have is on the internet. The bottom line is this --

THE COURT: You don't want your property to be sold, but it is --

MS. NESTOR: The bottom --

63

THE COURT:  -- going to be sold.

MS. NESTOR:  The bottom line is this --

THE COURT:  I'm telling you, if you --

MS. NESTOR:  May I speak?

THE COURT:  No.

MS. NESTOR:  After you?

THE COURT:  If you'll let me finish.  I'm going --

MS. NESTOR:  Of course, Your Honor.

THE COURT:  -- to tell you, for your own good, this property is going to be sold.

MS. NESTOR:  No.

THE COURT:  It is going to be sold.

MS. NESTOR:  I can't accept that.

THE COURT:  And the best thing you can do is get the best value for it and cooperate.

MS. NESTOR:  He's not going to get it.  He doesn't know what he's doing.

THE COURT:  Well, then --

MS. NESTOR:  Peggy could sell that in two days.  He doesn't know what he's doing.  He's got -- it looks horrible. He's got it with chains around the door.  It has leaves.  It's dirty all over the place.  It's disgusting.  He's --

THE COURT:  Okay.

MS. NESTOR:  He's keeping it in a terrible state.

THE COURT:  All right.

MS. NESTOR:  Your Honor, what we wanted to do, I put in here, and you haven't answered that.  We'd like Peggy to get out of this.  We'd like to settle with Mr. Alfieri, at the proper number, not at these inflated prices.  And that's what we'd like to do.

THE COURT:  All right.

MS. NESTOR:  And it is 590, whether you believe it or not, or like it or not.  He didn't have a license to rent -- to sell -- to do it to the natural person.

THE COURT:  I just ruled on the --

MS. NESTOR:  I think you're wrong, Your Honor.

THE COURT:  -- on the Lynx motion.

MS. NESTOR:  I hate to say that, but I think you're wrong.

THE COURT:  Okay.  You're entitled to think that.  But I don't think I'm wrong.  And that's my ruling.

MS. NESTOR:  Okay.

THE COURT:  There is no motion in front of me to dismiss Peggy's case, except there was a prior motion --

MS. NESTOR:  Well, why don't we --

THE COURT:  -- and I already denied it.

MS. NESTOR:  Can we discuss how you want it written?  We'll write it up, because she needs to get out of this.  It's not good for her.

THE COURT:  I already --

MS. NESTOR:  And I need to get into my house.  I need to put my business back together.  I need to have my life back again.  This is horrible.

THE COURT:  All right.  I already --

MS. NESTOR:  I've been thrown on the street like a piece of shit.

THE COURT:  All right.  I already --

MS. NESTOR:  I mean really, it's terrible.

THE COURT:  I already denied the motion to dismiss.

MS. NESTOR:  Okay.

THE COURT:  Mr. Berger, did you say you --

MS. VOLKOV:  Your Honor?

THE COURT:  -- had something you wanted to be heard on?

MS. VOLKOV:  I'm sorry.

THE COURT:  I'm sorry?

MS. VOLKOV:  Your Honor, it's Ilana Volkov.  Can I just ask that the declaration of Mr. Alfieri be admitted into evidence for --

THE COURT:  Yes.

MS. VOLKOV:  -- today's hearing?

THE COURT:  Yes.

MS. VOLKOV:  Thank you very much, Your Honor.

THE COURT:  It's admitted.  Okay.

(Declaration of Michael Alfieri was hereby received as of

66

this date.)

MS. NESTOR:  I'll send you the papers, Ms. Volkov, that I filed.  Do you want a copy?  Hello?

MS. VOLKOV:  I'm sorry.  What?

MS. NESTOR:  The papers that were filed yesterday. Can you get them off the internet, or do you want them sent to you by Federal Express?

MS. VOLKOV:  What papers?

Your Honor, I'm not sure what papers --

MS. NESTOR:  Regarding the -- Mr. Alfieri cannot be licensed in New York State --

THE COURT:  At 4:30.

MS. NESTOR:  -- to be a lender, or Prime Plus.

THE COURT:  At 4:30, yesterday afternoon, Ms. Nestor filed an objection to your motion.

MS. NESTOR:  It was also emailed to you.

Is Mr. Alfieri licensed in New Jersey?  I don't think so -- in New York, rather in Your Honor.

MS. VOLKOV:  Your Honor, it's Ilana Volkov.

I do have the objection.  It made its way onto the ECF system.  And our position is that objection is late.  It is not in compliance with the notice of motion that was served, and frankly, shouldn't have even been considered.  But I understand the predicament that the Court is in.

THE COURT:  Okay.  Did you have something you wanted

**PEGGY NESTOR**

67

to report on the confidentiality stipulation, Mr. Berger?

MR. BERGER:  Your Honor, thank you.  Neil Berger for the Chapter 11 trustee.

You so ordered a confidentiality agreement really designed to protect privileged communication for dealing with individuals on both sides of the plaintiff and defendant side. And the parties are operating under the construct of that.

We have had a number of meet-and-confers with the defendant's attorneys, and there are disagreements.  More than that, I don't want to describe, other than that Your Honor should probably anticipate a request for a conference in the near term.

THE COURT:  A discovery conference?

MR. BERGER:  Yes, Judge.

THE COURT:  On privilege assertions or something else?

MR. BERGER:   Something else, Your Honor, compliance with discovery obligations.

THE COURT:  Okay.  Ms. Nestor, you didn't show up for your deposition.

MS. NESTOR:  I put an appeal on it.

THE COURT:  It doesn't matter.  I've explained to you before, an appeal does not stay --

MS. NESTOR:  Well, then --

THE COURT:  -- or negate an order.

MS. NESTOR:  -- it's 298 dollars every time you file

**PEGGY NESTOR**

68

one.  And then you have to put all the papers together.

THE COURT:  Yeah.

MS. NESTOR:  What's the point if the --

THE COURT:  The order is effective --

MS. NESTOR:  But Your Honor, respectfully --

THE COURT:  The order is --

MS. NESTOR:  -- you're not God.

THE COURT:  Just please.  Please.

MS. NESTOR:  Do you agree with me on that one point?

THE COURT:  No.

MS. NESTOR:  No?  I said you're not God.  Don't you agree with me on that?

THE COURT:  Well, I don't know which point.  Yes, I'll agree with you that I'm not God.

Look, my order is effective unless I issue a stay or the district court issues a stay.  Just appealing it doesn't stop the effectiveness --

MS. NESTOR:  Thank you for --

THE COURT:  -- of the order.

MS. NESTOR:  Thank you for telling me.

THE COURT:  I've told you that before, okay?  You should have been here for your deposition, and you weren't.  You don't have a valid excuse.

MS. NESTOR:  I do have a valid excuse.  All the papers I have I've given.  He stole all the other papers --

THE COURT:  That has nothing --

MS. NESTOR:  -- out of my house.

THE COURT:  That has nothing to do with whether you --

MS. NESTOR:  What about him?  He --

THE COURT:  That has nothing to do with whether you've complied with my order that you appear for a deposition.

MS. NESTOR:  I put an appeal on it, and I put all the papers in.  I can't do more than that.

THE COURT:  Are you ready to do it now?

MR. BERGER:  Happy to, Your Honor.

THE COURT:  We can do your deposition now.  Do you want to take the witness stand --

MS. NESTOR:  Not really.

THE COURT:  -- and we'll just do it now?

MS. NESTOR:  I don't have -- he took all the documents out of my house.

THE COURT:  The deposition is to find out who had custody of your documents, and what you have done to collect them all, and what you have turned over.

MS. NESTOR:  He took them out of the house on July 11th.  And you found out about after the visit with the -- when the New York Police Department went in on the 25th.  They went in on the 25th.  And then he finally admitted, on the 29th --

THE COURT:  The purpose of the deposition --

MS. NESTOR:  -- that he had taken a lot of stuff out

**PEGGY NESTOR**

70

of my house.

THE COURT:  The purpose of the deposition is to find out if there are any documents anywhere else held by you or by anybody else, and what you've done to collect them, including what, if anything, you've done to review your prior emails or information relevant on these subjects.

MS. NESTOR:  Your Honor, I sent -- the first time we sent 900 dollars' worth of documents to Al Togut.  That's 991 dollars' worth of documents.  Then we sent them on May -- what was it, May 8th, May 12th, May 18th, May 16th.  I don't have any more documents.  Do you want me to make some up for you?  I will.

THE COURT:  The purpose of the deposition is to --

MS. NESTOR:  I don't have anything else.

THE COURT:  The purpose of the --

MS. NESTOR:  I need to go into my house.  I need to have my house packed.  I need to have my businesses back.  I need to be a person again.  I've been treated like dirt here, and I just can't almost take it anymore.

THE COURT:  What do you want to do?

MS. NESTOR:  I'm supposed to be an American citizen. Every right under the Constitution has been breached.  The Thirteenth Amendment, the Fourteenth Amendment, the Eighth Amendment --

MR. BERGER:  Your Honor --

MS. NESTOR:  -- the Fifth, the Sixth, and the Fourth.

MR. BERGER:  Neil Berger for the trustee.

You may recall that Marianne Nestor was on the stand before.  I began questioning her.  It went nowhere.  I'm happy to try to start that again.  I don't know that we're going to get anywhere.  The trustee and his retained professionals are considering other forms of relief.  Certainly there are preclusive forms of relief as we travel further down.

I can ask Ms. Nestor to take -- or you can direct her to take the stand.  I can begin the deposition again now.  I don't have the subpoenas with me.  I didn't anticipate that.  But certainly I can begin the examination.  Perhaps it would be helpful for Your Honor to direct her to appear on a date certain.  And my litigation colleague will be back here in the courtroom prepared with documents.  We'll walk through the subpoenas, and see who has her documents, where bank accounts are located.

At one hearing, Ms. Nestor mentioned a Swiss bank account.  The trustee is investigating what happened to the millions of dollars that the debtor received on account of her loss of her Malibu property shortly before the petition. Perhaps Ms. Nestor has information about that.  I'll leave it to Your Honor's discretion.  We can try to begin the deposition now or --

THE COURT:  Let me ask --

MR. BERGER: -- speak with your chambers, speak with your law clerks.

THE COURT: Let me ask my law clerks what day we have next week --

MS. NESTOR: No, Your Honor, I'm sorry.

THE COURT: -- that we can do this.

MS. NESTOR: This is on appeal. I want my -- I want to get back into my house. I want my papers back. I can't answer any questions unless I have all my documents back. I need to be back in my fifty percent undivided ownership of the house. I told you this in one of the early meetings. There's three-and-a-half apartments that belong to me. And Peggy needs to get out of this. We're happy to pay off Gemeaux. We'll pay off Mr. Alfieri, and we want out of here. This is the worst experience I've ever had in my entire life.

MR. BERGER: Judge?

THE COURT: I'm sorry. Let me ask my law clerks what day next week we have.

MS. NESTOR: No, I can't make it.

THE COURT: Just stop.

MS. NESTOR: I'm not going without an attorney, and I'm interviewing them. In fact, I've got a guy that used to be a prosecutor.

THE CLERK: Your Honor, we have available February 19th at 11 a.m. or February 20th at 11 a.m. Also on the 27th,

it's another omnibus Peggy Nestor day, so she can come at 11 a.m. for those hearings and for the deposition.

THE COURT:  I'm not talking about a hearing.  I'm talking about a deposition that could take place that I would be available to supervise.  So the 19th or 20th?

THE CLERK:  Next week you have the 19th at 11 or the 20th at, probably, 1.

THE COURT:  Okay.  You're going to be here on the 19th at 11.

MS. NESTOR:  No, Your Honor.

THE COURT:  Yes, you are.

MS. NESTOR:  My civil rights have been abused, and I'm --

THE COURT:  I'm ordering you to be here.

MS. NESTOR:  -- going to take it to a Constitutional attorney.

THE COURT:  I'm ordering you to be here on the 19th.

MS. NESTOR:  I cannot.  I'm not doing a deposition on the 20th.

THE COURT:  You will be -- you will be here.

THE CLERK:  I'm sorry, Your Honor.  It would be at 1 p.m.  Either day it would be 1 p.m., 19th at 1 p.m., because you have a morning calendar, and the 20th at 1 p.m., because you have a morning calendar.

THE COURT:  Does that work, Mr. Berger?

**PEGGY NESTOR**

74

MS. NESTOR:  I don't know what I'm being deposed about.  What am I being deposed about?

THE COURT:  I told you before.  Stop pretending that you don't know.  Now, seriously, I issued an order.

MS. NESTOR:  I've told you I don't have --

THE COURT:  I issued an order as to what your deposition would be about.  I've told you right here --

MS. NESTOR:  I don't recall getting a --

THE COURT:  -- standing here today.  You just don't want to go under oath on any of these things.

MS. NESTOR:  Every time I'm here is under oath, Your Honor.

THE COURT:  You'll be here at February 19th at --

MS. NESTOR:  No, Your Honor.  I --

THE COURT:  -- 11 o'clock.

MS. NESTOR:  I have --

THE COURT:  Issue an order to that effect.

MS. NESTOR:  No, do not do that.

THE COURT:  At 1 o'clock.  Yes.

MS. NESTOR:  No, do not do that, Your Honor.

THE COURT:  Yes.  Issue an order, and I'm going to do it.

MS. NESTOR:  Do not -- then it's going to be appealed like --

THE COURT:  Anything else?

**PEGGY NESTOR**

75

MS. NESTOR: -- all the other ones.

MR. BERGER: Nothing else, Your Honor.

THE COURT: You can appeal it, but you will be here unless there's a stay. You will be here unless there's a stay --

MS. NESTOR: What do you want to depose me about?

THE COURT: -- or you will be in contempt.

MS. NESTOR: What are you deposing me about?

THE COURT: I've told you already.

MS. NESTOR: I don't know. I don't -- I can't remember. It's been too long here. It's been too tortuous.

MR. BERGER: Your Honor, the trustee is very curious to find out the custodian of Ms. Nestor's documents, information, bank accounts, properties, everything that's subject to the subpoena that was served on her some months ago.

MS. NESTOR: You went into my apartment and stole, you said, twenty-four boxes. It's probably more. I haven't gotten my plates back that Your Honor ordered him to return to me on the 20th of June. And also of an explanation of why he forged papers with my name on it two times, on June -- on May 10th, and on August 2nd, in defiance of your rules.

MR. BERGER: Your Honor --

MS. NESTOR: You told them not to do it anymore. On August 2nd, he did the same thing again with forged documents. Is that correct? I think that's -- I think that's a felony.

He's committed three felonies that I know of, probably more. And you don't admonish him or say anything to him because he's your hired hand.

MR. BERGER:  Judge?

THE COURT:  Now you're stepping over the line.  Be very careful.

MS. NESTOR:  You told me he's your hired hand.

THE COURT:  I never said he was my hired hand.

MS. NESTOR:  You said you hired him.

THE COURT:  You be very careful.  You be very careful.

MS. NESTOR:  You said you hired him, Your Honor.

THE COURT:  You be very careful.

MS. NESTOR:  Didn't you say you hired him?

THE COURT:  Of course I did not.  I never hired him.

MS. NESTOR:  You said --

THE COURT:  I appointed him.

MS. NESTOR:  I heard the word hired.

MR. BERGER:  Your Honor --

MS. NESTOR:  Then I misunderstood your word; I heard hired.

MR. BERGER:  -- the United States Trustee appointed Mr. Togut.  You approved --

THE COURT:  Right.

MR. BERGER:  -- the appointment.  You also approved Mr. Togut's application to retain my law firm --

**PEGGY NESTOR**

77

THE COURT:  Yes.

MR. BERGER:  -- as counsel.

THE COURT:  All right.  You will be here February 19th at 1 o'clock.

MS. NESTOR:  Your Honor, you said -- you said hired. I heard the word I hired him.  You said that.

THE COURT:  Stop, please.

MS. NESTOR:  You did say it.

THE COURT:  Please stop.

MS. NESTOR:  I have a very good memory, Your Honor. Maybe it's too good.

THE COURT:  You will --

MS. NESTOR:  Togut, too good.

THE COURT:  You will be here.

MS. NESTOR:  No, I --

THE COURT:  You should look at the subpoena.  You should look at --

MS. NESTOR:  I can't make the 19th.

THE COURT:  You should look at the subpoena.  You should look at my order.

MS. NESTOR:  Your Honor --

THE COURT:  I'm not hearing any more.

MS. NESTOR:  I have answered everything.

THE COURT:  You can't --

MS. NESTOR:  I have answered it.  I don't have any

**PEGGY NESTOR**

78

more documents.

THE COURT:  You'll be here on the 19th at 1 o'clock.

MS. NESTOR:  No, Your Honor --

THE COURT:  I'll enter an order to that effect.

MS. NESTOR:  I think you should change it.  I can't make --

THE COURT:  I'm not going to change it.

MS. NESTOR:  I cannot make the 19th.  I have other engagements.

THE COURT:  What?

MS. NESTOR:  Things that I have to do personally.

THE COURT:  Like what?

MS. NESTOR:  My personal business.  I have personal business.

THE COURT:  That's not good enough.  You cancel your personal business and you be here.

MS. NESTOR:  No, Your Honor.

THE COURT:  Unless you can justify something that warrants you continuing to flout my order.

MS. NESTOR:  I'm not flocking your order.  You're flocking your order.

THE COURT:  Flouting

MS. NESTOR:  I'm what?

THE COURT:  All right.  You'll be here.

MS. NESTOR:  Flouting?  Your Honor, I cannot make it.

**PEGGY NESTOR**

79

MR. BERGER:  Thank you, Judge.

MS. NESTOR:  Your Honor, I can't make it.

THE COURT:  That's it.  That's it.

MS. NESTOR:  I think, Your Honor --

THE COURT:  Unless there's something else, we are adjourned.

MS. NESTOR:  Your Honor, I think you're biased against me, and I don't know why.

MR. BERGER:  Would you please so order the record?

THE COURT:  No, no.  Submit an order.

MR. BERGER:  Thank you, Judge.  We'll do that.

MS. NESTOR:  Your Honor, look, I need a key to my house.  I need to get back into my house.

THE COURT:  That's it.  We're done.

MS. NESTOR:  Okay.  You are incredibly biased.

(Whereupon these proceedings were concluded at 12:21 PM)

80

I N D E X

E X H I B I T S

| LYNX | DESCRIPTION | MARKED | ADMITTED |
|------|-------------|--------|----------|
|      | Declaration of Michael Alfieri |  | 66 |

| RULINGS: | PAGE | LINE |
|----------|------|------|
| Motion to retain Brown Harris Stevens as broker for the Chapter 11 Trustee is granted. | 32 | 4 |
| Lynx Asset Services, LLCs Motion to allow the amount of its secured claim is granted. | 55 | 12 |

eScribers, LLC

81

C E R T I F I C A T I O N

I, Sharona Shapiro, certify that the foregoing transcript is a true and accurate record of the proceedings.

*Sharona Shapiro*

_____

Sharona Shapiro (CET-492)

AAERT Certified Electronic Transcriber

eScribers

7227 North 16th Street, Suite #207

Phoenix, AZ 85020

Date:   February 14, 2025

Peggy Nestor

February 13, 2025

**$**

**$22,222.50 (2)**
38:8;39:10

**A**

**ability (1)**
8:25
**able (1)**
28:8
**absolutely (2)**
35:3;49:2
**abused (2)**
24:13;73:12
**accept (4)**
17:3;59:2,16;63:13
**accident (1)**
23:14
**according (5)**
20:19;22:11;23:4;
39:9;46:11
**account (2)**
71:19,20
**accounts (2)**
71:16;75:14
**accruals (1)**
55:5
**acquired (1)**
23:3
**action (1)**
21:22
**actionable (2)**
30:25,25
**actions (1)**
19:1
**active (1)**
7:14
**actor (1)**
12:19
**actual (2)**
39:25;47:3
**Actually (6)**
14:20;31:1;40:22;
44:25;56:5;60:7
**add (2)**
38:18;39:18
**added (1)**
55:12
**additional (1)**
55:6
**Additionally (1)**
36:24
**address (3)**
10:7;11:1;40:4
**addressed (6)**
8:24,24;9:12;16:7,
8;40:11
**adjourned (1)**
79:6
**Administrator (3)**
4:19;7:7,7

**administrators (1)**
6:22
**admitted (3)**
65:18,24;69:23
**admonish (4)**
50:6,9,12;76:2
**adversary (1)**
9:3
**advice (1)**
18:25
**advise (2)**
13:21;43:23
**advised (8)**
14:14;15:12;23:5;
25:20,21;26:14;
42:17,20
**advising (1)**
22:21
**affairs (1)**
28:9
**affidavit (3)**
19:14,21;20:11
**afternoon (3)**
58:22,25;66:14
**again (16)**
20:24;28:11;30:20;
33:12;36:20;37:5,11;
38:13;40:16;51:5,9;
65:3;70:18;71:5,10;
75:24
**against (16)**
11:22;12:5;18:8;
24:6,7;28:16;33:6;
37:8;44:2,15;49:3;
51:11;52:22;59:23;
60:4;79:7
**age (1)**
21:3
**agencies (1)**
35:13
**agent (6)**
8:1;12:15,16,17;
60:13,15
**ago (8)**
20:6,8;32:12;46:2,
5;55:21;59:11;75:15
**agree (5)**
17:17;48:25;68:9,
12,14
**agreed (5)**
12:23;33:14,16,18;
36:21
**agreement (11)**
7:24;8:2,8,21;9:10,
11,13,14,14;38:16;
67:4
**ahead (4)**
6:18;14:3;18:11;
35:14
**Al (3)**
15:13;23:7;70:8
**Albany (1)**
31:2

**Albert (1)**
6:5
**Alexander (1)**
5:4
**Alexandre (2)**
4:11;6:20
**ALFIERI (22)**
5:14;7:3;8:4;22:25;
24:17,20;36:4,7;44:9,
10;46:18;48:6,21;
56:2,8,18;64:3;65:18,
25;66:10,17;72:14
**Alfieri's (4)**
36:6;37:12;41:3,18
**allow (2)**
26:1;35:24
**allowed (2)**
24:5;33:11
**allows (1)**
17:8
**almost (5)**
24:11;25:12;32:12;
46:13;70:19
**along (2)**
12:17;43:25
**Amendment (8)**
49:5;50:6,7,7,8;
70:23,23,24
**America (4)**
24:12;33:23;34:4;
43:5
**American (2)**
49:3;70:21
**among (1)**
36:14
**amount (12)**
36:18,21,23;37:10;
38:6,7;39:9;41:21;
54:2;55:9,17;56:2
**amounts (2)**
55:6;56:3
**Anne (9)**
19:22;22:4;24:22;
31:20;34:15;42:8;
45:7;49:17;58:2
**answered (3)**
64:2;77:23,25
**anticipate (2)**
67:11;71:11
**Anton (1)**
14:5
**anymore (5)**
17:19;24:11;35:2;
70:19;75:23
**apart (1)**
13:9
**apartment (10)**
12:10;13:12;14:6,9,
12;15:21;33:15;
57:16,17;75:16
**apartments (6)**
12:10;21:5;24:4;
49:6;57:20;72:12

**apologize (1)**
51:8
**Apology (1)**
31:8
**apparently (4)**
15:1;18:18;20:23;
22:19
**appeal (12)**
17:24;26:11;30:21;
43:24;47:1;55:25;
62:6;67:20,22;69:7;
72:7;75:3
**appealed (2)**
46:23;74:23
**appealing (1)**
68:16
**appeals (2)**
58:17;62:7
**appear (2)**
69:6;71:13
**appears (1)**
41:18
**applicability (1)**
40:6
**application (7)**
7:21;8:7,16,21;
19:6;27:17;76:25
**applied (1)**
40:15
**applies (2)**
20:16;21:3
**apply (1)**
54:20
**appoint (1)**
9:3
**appointed (5)**
27:25;29:20;33:24;
76:16,21
**appointing (1)**
62:6
**appointment (5)**
9:18;10:2;29:16;
53:3;76:24
**appraisal (3)**
22:2,3;23:9
**appraised (3)**
13:11;14:18;18:23
**appraiser (3)**
13:10;14:5,16
**appreciate (1)**
11:12
**appropriate (1)**
32:21
**approval (2)**
9:16;10:11
**approve (1)**
33:2
**approved (2)**
76:22,24
**approving (1)**
23:8
**April (3)**
42:21,25;58:21

**arbitrarily (1)**
21:6
**arbitrary (1)**
18:24
**area (1)**
57:21
**argued (1)**
54:5
**argument (2)**
51:13,20
**arguments (7)**
40:11,13,20;54:16,
19,23;55:3
**around (2)**
62:1;63:21
**art (3)**
12:20;13:11,25
**assert (1)**
28:13
**assertions (1)**
67:15
**Asset (5)**
5:14;7:2;23:18;
35:18,21
**attached (3)**
8:7;29:2;36:6
**attachments (2)**
34:17;41:17
**attention (1)**
37:2
**attorney (5)**
38:10,11;49:18;
72:21;73:16
**Attorneys (5)**
4:3,11,19;7:6;67:9
**attorney's (1)**
37:23
**August (3)**
22:16;75:21,24
**authority (7)**
9:6,7;17:12;32:8,
11;62:10,13
**authorize (2)**
31:9;32:4
**authorized (3)**
28:22;53:8;58:11
**authorizing (1)**
7:22
**available (5)**
33:7,8;52:7;72:24;
73:5
**aware (1)**
57:9
**away (3)**
23:13;31:18;50:4
**awful (3)**
25:18,22;26:6

**B**

**back (17)**
14:2;15:4,5;28:15,
17;42:14;49:25;65:2,

Peggy Nestor

February 13, 2025

2;70:17;71:14;72:8,8, 9,10;75:18;79:13
**backed (1)**
40:8
**background (2)**
11:8;21:18
**backup (1)**
37:24
**bad (1)**
49:14
**Baiamonte (2)**
4:3;6:15
**BALL (2)**
4:2;6:15
**baloney (1)**
22:14
**Bank (4)**
25:4;71:16,18;
75:14
**Banking (2)**
40:7;44:2
**bankrupt (2)**
45:5;47:21
**Bankruptcy (21)**
11:24;13:15,18,23;
16:22;17:7,12;20:21,
21;26:22;27:12;
29:18;42:8;45:3,22;
47:5,19;52:13;55:19;
62:15,16
**bar (1)**
28:25
**Barnosky (2)**
4:11;6:20
**Barton (1)**
28:24
**basically (1)**
21:6
**basis (1)**
8:12
**Bay (1)**
20:3
**became (2)**
57:3,4
**bedroom (1)**
14:2
**began (1)**
71:4
**begin (3)**
71:10,12,23
**behalf (5)**
6:20;7:2,10;51:15,
19
**belabor (1)**
36:11
**Belmont (2)**
4:11;6:21
**belong (3)**
18:12,15;72:12
**belongs (3)**
13:4;22:11;24:21
**bench (1)**
50:5

**beneficiary (2)**
15:13;19:5
**benefit (1)**
10:11
**Bensinger (2)**
7:2;35:21
**BERGER (60)**
6:4,4;7:12,12;14:7,
25;15:11,14,14,19;
17:25;18:17,25;19:2,
6,13;22:21;26:19,20;
27:6;28:5,7;29:13,15,
16,21;33:3;35:4,16,
16;37:25;57:23;
58:21;59:9;60:1;
61:23;65:11;67:1,2,2,
14,16;69:10;70:25;
71:2,2;72:1,16;73:25;
75:2,12,22;76:4,18,
21,24;77:2;79:1,9,11
**best (3)**
27:19;63:14,15
**better (1)**
11:4
**bias (1)**
60:4
**biased (4)**
33:6;59:22;79:7,15
**bidding (1)**
27:10
**bitterly (1)**
53:11
**blame (1)**
19:12
**blue (5)**
22:21;29:22;30:22;
49:12;58:14
**board (1)**
12:20
**book (1)**
50:8
**borrower (1)**
54:19
**borrowers (1)**
54:14
**both (5)**
23:22;26:25;32:8;
37:7;67:6
**bottom (3)**
62:22,25;63:2
**bought (3)**
13:8;60:16,17
**Boulevard (1)**
4:20
**Bowling (1)**
5:5
**boxed (1)**
15:17
**boxes (6)**
14:8;15:1,4;18:18,
21;75:17
**breached (2)**
49:5;70:22

**breaking (2)**
49:5;50:6
**Brenda (11)**
12:16,23;13:5,14,
17,17;24:3;27:22;
28:8;29:10,19
**Brian (1)**
23:2
**brief (1)**
7:16
**brilliant (1)**
14:21
**bring (2)**
8:3;15:18
**broke (1)**
42:23
**broken (3)**
43:2;50:8;59:5
**broker (8)**
7:23;8:5,13;12:16,
23,24;15:12;49:13
**brought (1)**
37:2
**Brown (20)**
7:22;8:6,9,10,19;
9:21;10:11;21:13,24;
25:15,17;27:15;
28:21;29:1,4,5;32:5,
17,23;35:7
**Browne (2)**
12:18;50:2
**building (20)**
12:7,9,11;13:12;
14:10;15:1,21;18:18,
23;21:2;25:1,1;33:15;
34:12;42:16;49:1;
50:23;57:16,17;60:16
**bullshit (1)**
56:3
**bunch (1)**
22:14
**business (18)**
9:20,25;10:10;17:1;
22:6,7;24:15;25:13,
25,25;32:16;45:23;
47:17;51:4;65:2;
78:13,14,16
**businesses (1)**
70:17
**buy (1)**
12:21
**buyer (2)**
32:19;61:14
**buying (1)**
61:14

---

**C**

**calculate (1)**
37:1
**calculated (1)**
37:3
**calculation (1)**

37:1
**calculations (2)**
37:12,17
**calendar (7)**
7:15,17;35:17;37:4,
4;73:23,24
**call (1)**
26:5
**CALLAGHAN (6)**
4:23;6:16,18,25;
7:5,6
**called (10)**
21:4;22:22;23:15;
26:1;29:22,23;30:23;
49:12;58:24;59:7
**came (8)**
15:11;18:1,2;30:1;
42:23,25;49:25;59:2
**can (31)**
10:7;15:18;16:20;
17:6,10;23:25;29:25;
30:15;35:18;38:22,
24,24,25;39:1;41:13;
47:25;62:18;63:14;
64:22;65:17;66:6;
69:11;71:9,9,10,12,
23;72:6;73:1;75:3;
78:18
**cancel (1)**
78:15
**candidates (1)**
8:5
**capable (1)**
50:15
**capped (1)**
8:15
**careful (5)**
9:20;76:6,10,10,12
**carefully (1)**
28:19
**carried (1)**
41:22
**carry (1)**
55:11
**carrying (1)**
55:4
**carved (2)**
14:22;18:13
**case (29)**
6:3;13:15,18,23;
16:24;17:1;22:6;
27:23,25;28:1,4,11;
36:15;40:17;41:1,24;
43:7;47:5;51:10,11,
13,18;52:13,21;54:1,
2,19;55:19;64:19
**cases (1)**
27:13
**Cassini (10)**
4:11;5:13;6:20,22,
23;7:8;10:16;11:2;
22:11,18
**century (2)**

14:23;18:13
**certain (4)**
19:13;21:3;41:22;
71:14
**certainly (7)**
9:5,6;27:11;38:22;
57:20;71:7,12
**certificate (1)**
36:10
**certified (1)**
49:20
**cetera (6)**
18:16,16;42:12,12,
16,16
**chain (1)**
62:1
**chains (1)**
63:21
**challenge (1)**
10:10
**challenges (3)**
8:18,23,25
**chambers (3)**
18:2;53:12;72:1
**change (2)**
78:5,7
**changed (1)**
19:5
**changing (1)**
11:20
**Chapter (7)**
6:5;7:13;27:23,24;
28:1;29:20;67:3
**Chinese (2)**
15:2;18:19
**Christina (1)**
6:21
**circa (1)**
15:2
**circle (1)**
28:14
**citizen (3)**
31:17;33:8;70:21
**City (4)**
4:21;14:20;15:23;
33:9
**civil (7)**
19:9;20:19,22,24;
33:6;46:17;73:12
**claim (13)**
30:15;35:24;36:19,
21;37:2,7,23;38:6;
41:16;43:10;55:8,9,
10
**claimed (1)**
55:7
**claiming (2)**
17:2;32:9
**claims (2)**
29:2;30:2
**clarifications (1)**
37:13
**clear (4)**

Peggy Nestor

February 13, 2025

9:4;26:21;27:7;
40:21
**clearly (3)**
26:10;27:8;62:9
**CLERK (3)**
72:24;73:6,21
**clerks (3)**
72:2,3,17
**client (4)**
7:4;37:1;40:23;
41:6
**client's (1)**
35:23
**closed (7)**
28:1,3,4,4,5,6,7
**closing (1)**
12:18
**co- (3)**
12:3;17:10;48:25
**Code (5)**
11:24;17:8,12;
26:22;62:15
**collateral (1)**
46:7
**colleague (2)**
6:6;71:14
**collect (2)**
69:18;70:4
**college (1)**
13:1
**COLLINS (4)**
4:15;6:17,19,19
**coming (2)**
21:16;25:11
**commenced (1)**
9:4
**comment (2)**
7:16;60:3
**commercial (10)**
24:16;40:14,21,24;
41:6,7,8;42:6,7;54:20
**commission (1)**
8:14
**commissions (1)**
12:23
**committed (2)**
19:3;76:1
**communication (1)**
67:5
**company (5)**
15:3;18:4,21;22:11;
44:14
**compensation (4)**
8:10,11,13,19
**competence (3)**
8:9,18;10:10
**competitive (1)**
27:10
**complain (1)**
34:5
**complained (4)**
45:25;46:2,5;53:11
**complaining (4)**

34:9,11;43:17;
53:13
**complains (2)**
9:9,17
**complaint (2)**
34:10;52:25
**completely (1)**
23:23
**compliance (2)**
66:22;67:16
**complied (1)**
69:6
**concerning (2)**
9:22;10:6
**concluded (1)**
79:16
**conclusive (2)**
55:3;56:21
**conference (2)**
67:11,13
**confidentiality (3)**
7:15;67:1,4
**confirm (1)**
52:20
**conflict (2)**
12:13;23:21
**connection (4)**
7:20;35:25;38:2;
41:2
**consider (2)**
10:5,8
**considerable (1)**
15:16
**considered (3)**
9:20;28:12;66:23
**considering (1)**
71:7
**Constitution (2)**
49:3;70:22
**Constitutional (1)**
73:15
**construct (1)**
67:7
**construction (1)**
18:4
**consulted (2)**
9:21,21
**consults (2)**
27:13,14
**contacted (1)**
29:1
**contemplated (1)**
36:17
**contempt (2)**
31:11;75:7
**contention (1)**
44:17
**continue (5)**
14:16;60:8,9;61:1,3
**continuing (1)**
78:19
**contract (1)**
22:15

**contradicted (1)**
54:17
**control (1)**
53:10
**conversation (3)**
29:21;30:22;35:4
**cooperate (3)**
61:13,17;63:15
**co-owner (4)**
11:21;17:9;18:6;
27:2
**copy (6)**
40:3;49:21;52:2,6,
18;66:3
**corporate (1)**
24:15
**corporation (1)**
41:8
**correctly (1)**
46:15
**cost (2)**
26:13;44:11
**costing (1)**
30:24
**counsel (5)**
27:25;29:17;36:20;
39:4;77:2
**count (1)**
16:20
**countersigned (1)**
8:21
**country (2)**
24:8;31:18
**counts (4)**
17:16;31:24;34:14;
49:18
**County (3)**
4:19;7:7;42:15
**course (3)**
42:19;63:8;76:14
**COURT (366)**
6:2,7,12;7:11;10:4,
14,19,23,25;11:6,12,
13,15,19;12:3;13:14,
17,20,22;14:3,8;15:5,
7,18,24;16:1,5,12,15,
19,23,25;17:2,4,14,
18,21,24;18:1,11,20;
19:6,9,14,19,21,23,
25;20:5,7,9,11,14,18,
19,21,22,23,24;21:8,
10,12,15,17,19,21,22,
23;22:4;25:6,8,10,14,
22;26:4,6,9,18;27:4;
28:3,6,17;29:18;30:3,
5,7,9,12,14,17,19;
31:3,7,9,14,16,19,21,
23,25;32:2,4,7;33:7,
10,16,19,21,24;34:2,
5,6,9,19,21,24;35:2,6,
9,11,14;36:7,12,20;
37:15,17,22;38:6,16,
20,25;39:5,8,14,17,

23;40:5,12,16,20;
41:4,17,19;42:2;43:6,
8,10,12,15,17,20;
44:1,4,6,17,20,22,24;
45:4,6,8,11,15,17,20,
25;46:2,5,17,22,25;
47:2,5,12,14;48:10,
12,15,19,24;49:9;
50:3,9,12,17,20,22,
25;51:3,5,7,9,22;52:1,
3,5,9,11,13,17,20;
53:4,10,15,17,19,21,
22;54:6,11,16,24;
55:2,2,5,18,21,23;
56:14,17,19,20,21,23,
25;57:2,2,8;58:4,6,9,
11,14,17;59:6,10,17,
19,21,24;60:3,8,12,
20,22;61:1,3,5,17,25;
62:4,9,12,15,20,23;
63:1,3,5,7,9,12,14,18,
23,25;64:6,10,12,15,
18,21,25;65:4,7,9,11,
13,16,20,22,24;66:12,
14,24,25;67:13,15,18,
21,24;68:2,4,6,8,10,
13,16,19,21;69:1,3,5,
9,11,14,17,24;70:2,
13,15,20;71:25;72:3,
6,17,20;73:3,8,11,14,
17,20,25;74:3,6,9,13,
15,17,19,21,25;75:3,
7,9;76:5,8,10,12,14,
16,23;77:1,3,7,9,12,
14,16,19,22,24;78:2,
4,7,10,12,15,18,22,24;
79:3,5,10,14
**courtroom (2)**
48:17;71:15
**Court's (1)**
8:24
**Cove (1)**
20:3
**Covington (1)**
22:12
**CPA (1)**
7:7
**crazy (2)**
20:24;25:3
**created (1)**
47:24
**credit (1)**
14:21
**curious (1)**
75:12
**custodian (1)**
75:13
**custody (1)**
69:18
**Custom (1)**
5:4

**D**

**damages (3)**
19:10;20:16;57:13
**DANIEL (2)**
5:9;7:9
**Daria (1)**
6:22
**Darren (1)**
12:19
**date (8)**
35:23;37:17;38:9,
11;41:22,22;66:1;
71:13
**daughter (1)**
14:1
**daughters (1)**
13:6
**day (8)**
9:1;51:24;57:11;
59:5;72:3,18;73:1,22
**days (3)**
14:15;19:15;63:19
**days' (1)**
46:11
**deal (1)**
47:25
**dealing (1)**
67:5
**dealt (2)**
27:18;32:24
**debt (3)**
38:17;41:21;54:2
**debtor (11)**
7:25;9:4;11:22;
17:9;27:23;29:7;37:8;
41:11;51:19;61:9;
71:20
**debtor's (1)**
11:25
**debts (1)**
61:10
**debut (1)**
13:2
**debutantes (1)**
13:2
**December (2)**
18:2;38:7
**decide (1)**
17:11
**decision (3)**
9:2;10:1;30:14
**declaration (11)**
8:8;11:22;36:3,6,9;
37:12;41:3,18;52:22;
65:18,25
**deed (13)**
15:22;30:1;31:24;
34:14,15,16;49:18,20,
21,25,25;52:14,18
**defamatory (1)**
29:10

**defamed (1)**
29:12
**defaming (1)**
29:9
**defend (1)**
27:18
**defendant (2)**
54:1;67:6
**defendant's (1)**
67:9
**defiance (1)**
75:21
**definitely (1)**
20:16
**degree (2)**
46:13;48:13
**DeLuca (1)**
49:23
**denial (1)**
50:22
**denied (4)**
55:18,24;64:21;
65:9
**deny (1)**
32:22
**DEPARTMENT (4)**
5:2;31:1,2;69:22
**depose (1)**
75:6
**deposed (2)**
74:1,2
**deposing (1)**
75:8
**deposition (14)**
67:19;68:22;69:6,
11,17,24;70:2,13;
71:10,23;73:2,4,18;
74:7
**describe (2)**
8:8;67:10
**designed (1)**
67:5
**detail (1)**
48:18
**determinative (1)**
55:3
**determined (3)**
8:6;54:2;55:9
**determining (1)**
41:21
**dialogue (1)**
9:22
**different (2)**
24:8;61:22
**DIP (3)**
36:18;38:2,3
**direct (2)**
71:9,13
**directed (3)**
9:5,18;54:3
**directing (3)**
9:2;10:1;41:21
**directly (1)**

52:8
**directors (1)**
12:21
**dirt (1)**
70:18
**dirty (2)**
62:2;63:22
**disagree (1)**
30:12
**disagreements (1)**
67:9
**discovery (2)**
67:13,17
**discretion (1)**
71:23
**discuss (2)**
17:19;64:22
**discussion (1)**
10:3
**discussions (1)**
36:19
**disengaged (1)**
43:1
**disgusting (2)**
62:2;63:22
**dishonest (1)**
27:24
**disinterested (1)**
8:19
**dismiss (3)**
55:18;64:19;65:9
**dismissed (4)**
21:23;58:18;62:7,8
**disposition (1)**
10:6
**disputes (1)**
53:3
**district (5)**
17:24;18:1;20:18,
23;68:16
**divide (1)**
17:11
**docket (4)**
7:21;36:2,4,9
**Doctrine (1)**
28:24
**document (1)**
60:14
**documents (22)**
14:6,9;15:11;29:14;
36:5,8;40:21,23;41:2;
44:9;69:15,18;70:3,8,
9,11;71:15,16;72:9;
75:13,24;78:1
**dollars (22)**
18:4,24;20:4;21:25;
22:8;23:8,9,10,16;
26:13;30:25;37:11;
42:10,15;44:11;
48:22;49:2;52:7;
57:19,20;67:25;71:20
**dollars' (2)**
70:8,9

**done (26)**
14:15;17:21,24,25;
18:21;19:1,8;20:20,
20,21,25;24:17,18;
26:17;35:6;44:13;
47:22;51:16,24;
52:18;57:23;61:22;
69:18;70:4,5;79:14
**door (8)**
14:24;42:23;43:2,
19;57:24;58:22;62:1;
63:21
**doors (5)**
14:23,24;18:14,15;
59:5
**down (8)**
13:25;29:25;32:2,2;
42:23;43:2;59:2;71:8
**downtown (1)**
20:13
**drawer (2)**
36:16,18
**drop (3)**
18:24;23:8,16
**due (1)**
42:14

**E**

**early (2)**
52:13;72:11
**ECF (1)**
66:20
**Echevarria (1)**
36:13
**EDERER (1)**
4:2
**effect (4)**
32:13;38:24;74:17;
78:4
**effective (2)**
68:4,15
**effectiveness (1)**
68:17
**effort (1)**
15:16
**efforts (3)**
7:19;56:23,25
**eighteen (1)**
14:15
**Eighth (2)**
50:7;70:23
**either (6)**
34:8;38:25;54:24;
55:2;56:12;73:22
**else (21)**
18:3;21:5;23:6,11;
24:4;26:11;29:7;
37:25;47:12,14,14;
49:4;57:8;67:15,16;
70:3,4,14;74:25;75:2;
79:5
**email (2)**

29:3,3
**emailed (2)**
36:13;66:16
**emailing (1)**
36:25
**emails (2)**
36:19;70:5
**Emigrant (1)**
25:4
**end (1)**
7:17
**engagements (1)**
78:9
**Enough (13)**
20:14;25:8,10;58:4,
6,6,9,9;59:17,19,19;
61:6;78:15
**enter (3)**
28:18;36:12;78:4
**entered (15)**
9:1,2;12:4,5;16:8;
17:6,14;32:12;36:1;
39:12;41:20;43:12;
53:2,23;54:2
**enters (2)**
9:14;28:23
**entire (3)**
11:25;12:3;72:15
**entitled (3)**
46:6;55:8;64:15
**entity (3)**
41:6,7,10
**entrance (2)**
14:23;18:14
**entry (4)**
7:21;40:12;41:23;
53:1
**Esq (5)**
4:3,7,15,23;5:9
**essentially (2)**
32:25;40:19
**estate (10)**
6:21,22;7:8,23;
10:11;25:25;27:12,
20;29:19;40:8
**estates (1)**
22:13
**estate's (1)**
26:25
**estimates (2)**
13:12;14:18
**estopped (3)**
11:20;17:2;32:9
**et (6)**
18:15,16;42:12,12,
16,16
**eve (1)**
47:3
**even (27)**
11:21;12:3,11;
14:13;16:12,12;17:5;
18:1;22:2,23;23:25;
25:19;26:2;31:20,24;

34:15;42:6,22,24;
44:10;46:8;48:25;
49:14,17;52:23;
57:12;66:23
**event (2)**
11:21;54:22
**eventual (1)**
61:18
**everybody (4)**
7:11;25:1;57:17,24
**evict (2)**
21:3;24:5
**evicted (6)**
19:12;24:3;34:12;
43:13;53:12;57:17
**eviction (3)**
19:7,15;24:2
**evidence (5)**
26:6;38:21;39:1;
41:15;65:19
**evidenced (1)**
41:10
**exact (1)**
40:19
**examination (1)**
71:12
**Examiner (1)**
23:20
**Examiners (2)**
12:11,14
**example (1)**
55:6
**except (2)**
26:3;64:19
**exchange (1)**
29:3
**exclude (1)**
38:25
**exclusive (4)**
7:24;8:1;17:10;
26:23
**Excuse (5)**
37:2;39:22;56:3;
68:23,24
**executed (3)**
52:14;53:24,25
**executors (1)**
6:21
**exercising (1)**
9:20
**expenses (3)**
38:7,20;39:8
**experience (3)**
8:9;27:12;72:15
**expert (1)**
21:1
**explained (5)**
45:6,8;48:18;58:12;
67:21
**explanation (1)**
75:19
**export (1)**
15:2

| | | | | |
|---|---|---|---|---|
| **express (3)** | 16:14;19:11;21:7; | **flocking (2)** | 18:14,15;43:24;64:18 | 41:9,14 |
| 9:6,6;66:7 | 29:24;30:13;34:12; | 78:20,21 | **full (1)** | **guarantees (1)** |
| **expressly (1)** | 49:16;72:10 | **floor (3)** | 54:25 | 41:10 |
| 9:15 | **fifty-five (2)** | 13:4,5;14:1 | **fully-paid (1)** | **guarantor (2)** |
| **extend (1)** | 18:23;23:8 | **floors (1)** | 19:4 | 51:11;61:11 |
| 9:13 | **fifty-percent (2)** | 13:23 | **funny (1)** | **guarantors (3)** |
| **extended (5)** | 11:9;14:9 | **Floss (1)** | 12:22 | 46:7,9;54:13 |
| 8:2;36:1;37:10; | **fight (1)** | 23:2 | **furniture (2)** | **guarantor's (1)** |
| 40:22;41:7 | 61:13 | **flout (1)** | 13:5,24 | 51:11 |
| **extensive (1)** | **file (13)** | 78:19 | **further (4)** | **guess (1)** |
| 8:8 | 7:18;10:5;13:18; | **Flouting (2)** | 38:24;41:13;55:11; | 39:20 |
| **extent (1)** | 38:21;39:1,3,5;42:25; | 78:22,25 | 71:8 | **guilty (1)** |
| 36:7 | 49:17,21;50:1;62:7; | **focus (2)** | | 48:7 |
| **extraordinary (1)** | 67:25 | 44:1,1 | **G** | **guy (1)** |
| 27:12 | **filed (47)** | **follow (1)** | | 72:22 |
| | 7:21;8:17;9:13; | 35:12 | **gallery (1)** | |
| **F** | 10:9;11:15,22;12:12, | **following (2)** | 12:20 | **H** |
| | 13;15:22;16:22,24; | 36:19;50:22 | **gap (3)** | |
| **face (1)** | 19:14,19,20;20:9,11; | **foreclosure (13)** | 44:16;57:3,4 | **half (3)** |
| 58:14 | 23:18,20;26:10;28:9; | 37:8;40:12,12,17; | **Garden (1)** | 17:5;30:15;32:9 |
| **faced (1)** | 31:24;34:14,15,16,22; | 41:19,24;46:22;47:3; | 4:21 | **Hamilton (1)** |
| 50:23 | 35:25;36:2,3,9;39:19, | 50:23;51:10,11;54:1, | **gave (1)** | 5:4 |
| **fact (5)** | 20,20;45:7;47:5; | 3 | 59:4 | **hand (3)** |
| 17:24;25:4;26:14; | 49:18,20;50:25;51:1, | **forego (1)** | **Gemeaux (30)** | 76:3,7,8 |
| 50:2;72:22 | 15,18;52:11,22,24; | 12:23 | 24:18,21;41:1,5; | **happen (4)** |
| **facts (1)** | 53:4;66:3,5,15 | **forged (4)** | 42:5,9;43:25;44:8,12, | 17:15;26:2;43:5; |
| 36:8 | **files (2)** | 15:10,11;75:19,24 | 18,25;45:9,21,23,24; | 50:21 |
| **fall (1)** | 14:6;23:19 | **forging (1)** | 46:3,6,19;47:18;48:5, | **happened (4)** |
| 29:5 | **filing (4)** | 19:4 | 5,7;51:4,10,16;54:12, | 14:13;50:16;58:2; |
| **famously (1)** | 24:23;33:4;51:9,16 | **form (4)** | 17,18;56:6;72:13 | 71:19 |
| 12:19 | **filled (1)** | 36:23;37:6,16; | **girl (1)** | **happening (4)** |
| **FARRELL (2)** | 33:7 | 47:21 | 57:25 | 28:18;42:21,24; |
| 4:10;6:19 | **final (2)** | **forms (2)** | **girls (1)** | 53:21 |
| **favor (1)** | 12:5;16:9 | 71:7,8 | 13:1 | **happy (4)** |
| 53:24 | **finally (1)** | **forth (3)** | **given (3)** | 48:5;69:10;71:4; |
| **favorable (1)** | 69:23 | 10:1;13:25;36:9 | 14:25;22:20;68:25 | 72:13 |
| 8:11 | **financial (1)** | **forward (5)** | **gives (1)** | **hard (5)** |
| **February (4)** | 28:9 | 28:13;41:22;49:9; | 10:17 | 12:1;47:25;58:24; |
| 72:24,25;74:13; | **financing (3)** | 55:4,11 | **giving (1)** | 59:7,14 |
| 77:3 | 37:10;38:13;39:7 | **found (7)** | 49:15 | **Harris (20)** |
| **Federal (1)** | **find (3)** | 12:21;15:16;22:16; | **God (3)** | 7:22;8:6,9,10,19; |
| 66:7 | 69:17;70:2;75:13 | 23:14;29:18;49:11; | 68:7,11,14 | 9:21;10:11;21:13,24; |
| **feel (4)** | **fine (3)** | 69:21 | **Good (25)** | 25:15,17;27:15; |
| 24:12;33:5;60:24; | 10:17;17:18,20 | **four (3)** | 6:4,7,8,14,16,17,19, | 28:21;29:1,4,5;32:5, |
| 61:2 | **finish (9)** | 8:15;23:3;44:13 | 24,25;7:1,5,9,11,12; | 17,23;35:7 |
| **feeling (1)** | 15:25;18:10;20:15; | **fourteen (3)** | 18:8;22:3;35:20; | **hassle (1)** |
| 59:20 | 22:15;24:20,23;31:7; | 14:22;18:13,15 | 55:15;59:1;63:9; | 61:14 |
| **fees (12)** | 48:20;63:7 | **Fourteenth (1)** | 64:24;77:10,11,13; | **Hassoumi (10)** |
| 25:3,7;37:23;38:5, | **finished (4)** | 70:23 | 78:15 | 22:23;23:23;24:9; |
| 6,10,11,18;39:1; | 52:3,5,9;53:19 | **Fourth (3)** | **Google (2)** | 25:18;27:18;28:21; |
| 46:20;49:2;55:6 | **fireplaces (3)** | 49:5;50:6;71:1 | 25:2,2 | 29:2,5,23;49:11 |
| **felonies (2)** | 14:22;18:13,15 | **frankly (1)** | **grant (1)** | **hate (1)** |
| 19:3;76:1 | **firm (2)** | 66:23 | 55:12 | 64:13 |
| **felony (3)** | 28:17;76:25 | **free (1)** | **Green (1)** | **head (1)** |
| 14:11;15:13;75:25 | **First (6)** | 9:4 | 5:5 | 48:2 |
| **fifteen (5)** | 7:18;11:8,8;40:10; | **French (1)** | **gripes (1)** | **health (1)** |
| 21:25;23:9,10; | 51:13;70:7 | 13:1 | 16:7 | 55:16 |
| 26:13;30:25 | **five (1)** | **Friday (2)** | **ground (1)** | **hear (8)** |
| **fifteenth (2)** | 59:10 | 58:22,25 | 44:24 | 12:1;13:8;16:2,4; |
| 14:22;18:13 | **fix (1)** | **FRITZ (2)** | **guarantee (4)** | 26:14;30:8,9;40:25 |
| **fifth (3)** | 35:24 | 4:10;6:20 | 41:14;45:13,20; | **heard (7)** |
| 13:4,22;71:1 | **fixtures (1)** | **front (7)** | 53:24 | 9:8;25:24;61:6; |
| **fifty (8)** | 10:4 | 10:24;14:23,24; | **guaranteed (2)** | 65:13;76:17,19;77:6 |

**hearing (7)**
10:15;33:4;35:23;
65:21;71:18;73:3;
77:22
**hearings (6)**
11:14;16:2,6,8;
22:4;73:2
**hearsay (1)**
26:7
**HEATHER (2)**
4:23;7:5
**heck (1)**
25:2
**held (1)**
70:3
**Hello (2)**
7:1;66:3
**help (1)**
27:19
**helpful (1)**
71:13
**hereby (1)**
65:25
**here's (2)**
25:9;35:4
**herself (1)**
27:24
**HEUER (3)**
4:7;6:14,14
**Hi (2)**
6:8;7:1
**higher (2)**
38:10;57:8
**highest (1)**
27:9
**hip (1)**
25:12
**hire (1)**
47:23
**hired (13)**
47:22;56:4;76:3,7,
8,9,11,13,14,17,20;
77:5,6
**hires (1)**
22:22
**hiring (1)**
18:3
**hold (1)**
31:11
**home (2)**
49:8;58:25
**Honor (129)**
6:8,14,16,24,25;7:5,
9,18;9:1,11,17;10:1,5,
8,13,22;11:3,18;12:2;
14:14;15:4,6,21;16:4,
11,22;17:20,23;18:9;
19:12;20:15;21:1;
24:1;25:21;26:17,20;
27:2,8,21;28:11,14,
17,22;29:8,9,13;30:8,
21;31:5,15;33:5;34:8;
35:1,16,19,20;36:1,

11,22,24;37:21;
38:23;39:11,16;40:3,
10,18;42:5;43:18;
45:10,14;46:24;47:8;
48:20;50:4,15;51:21;
52:8;53:9,16;55:14;
57:9,22;58:19;59:20;
60:1,13;61:21;62:14;
63:8;64:1,11;65:12,
17,23;66:9,18,19;
67:2,10,16;68:5;
69:10;70:7,25;71:13;
72:5,24;73:10,21;
74:12,14,20;75:2,12,
18,22;76:11,18;77:5,
10,21;78:3,17,25;
79:2,4,7,12
**Honor's (6)**
9:3,15;11:11;28:22,
25;71:23
**hope (2)**
29:6;61:19
**hopefully (1)**
36:22
**hoping (1)**
27:10
**horrible (6)**
24:22;43:3;47:21;
61:23;63:20;65:3
**hours (1)**
25:3
**House (24)**
5:4;20:3;22:17;
23:15,24;24:1,10,10;
25:17;30:17;32:10;
49:6,7;65:1;69:2,16,
20;70:1,16,17;72:8,
11;79:13,13
**hundred (2)**
26:3;48:6
**husband (1)**
22:18

**I**

**idea (1)**
14:21
**identity (1)**
24:16
**ignore (1)**
60:9
**Ilana (4)**
7:1;35:21;65:17;
66:19
**ill (1)**
47:19
**illegal (6)**
19:7;24:2;25:13;
44:24;46:17;54:8
**illegally (3)**
19:11;34:11;57:12
**immune (1)**
31:10

**importantly (1)**
54:22
**impossibility (1)**
48:23
**incentive (1)**
27:9
**include (1)**
36:16
**included (4)**
36:21;37:12;38:11;
39:8
**includes (1)**
38:6
**including (9)**
14:24;15:2;18:14,
19;25:2;57:7,25;
60:23;70:4
**inclusive (1)**
26:24
**incorrect (1)**
19:1
**incorrectly (3)**
24:23;49:8;51:1
**incredibly (1)**
79:15
**independent (1)**
29:20
**individuals (3)**
40:8;45:1;67:6
**inflated (2)**
56:2;64:4
**information (5)**
59:4;62:21;70:6;
71:22;75:14
**Initially (1)**
36:16
**inner (2)**
14:24;18:14
**inquiries (1)**
27:21
**inside (2)**
15:19;23:25
**inside- (1)**
15:17
**Instead (1)**
57:23
**Institute (1)**
13:1
**insurance (2)**
15:12;19:4
**intent (1)**
44:10
**interest (19)**
11:16,25;12:14;
23:21;27:1,2;28:10;
30:15;32:9;34:25;
36:14,25;37:3,15,17,
18;52:15;55:5,12
**interested (1)**
35:4
**interests (2)**
17:10;28:13
**Internal (1)**

22:12
**internet (7)**
22:23;23:13,15;
25:20;62:18,22;66:6
**interrupt (5)**
11:19;51:5,7,9;61:3
**interrupted (1)**
51:6
**interrupting (1)**
31:7
**interview (1)**
22:19
**interviewed (1)**
8:4
**interviewing (1)**
72:22
**into (12)**
9:14;14:12;24:1;
44:16;49:5;61:14;
65:1,18;70:16;72:8;
75:16;79:13
**introduced (1)**
10:14
**invalid (2)**
24:17,18
**investigating (1)**
71:19
**invoices (6)**
37:25;38:1,4,12;
39:3,12
**involved (3)**
13:19;24:22;48:4
**IRS (4)**
13:11,13;14:17,18
**Irvine (1)**
12:12
**Island (5)**
19:18;22:14;23:21;
42:11;49:24
**issue (10)**
11:15;16:19;17:19;
52:21;54:7;55:4;
58:11;68:15;74:17,21
**issued (2)**
74:4,6
**issues (7)**
9:8;32:24;33:1;
56:19;58:15;60:8;
68:16
**items (5)**
13:11;14:4,18,22;
18:12

**J**

**jail (1)**
31:11
**January (2)**
29:22;36:2
**Jeffrey (1)**
49:23
**Jersey (4)**
23:1;44:14;56:13;

66:17
**JH (2)**
12:16;60:19
**job (1)**
55:11
**John (5)**
4:11;6:20;15:23;
29:25;49:17
**John's (1)**
48:14
**joined (1)**
25:12
**joint (1)**
13:2
**jointly (2)**
53:24,25
**Jordan (1)**
12:17
**Judge (13)**
6:4;7:12;15:14;
30:6;33:3;34:16;47:7;
49:22;67:14;72:16;
76:4;79:1,11
**judgment (28)**
9:20,25;10:10;12:4,
5;16:8;17:6,14;27:5;
32:12,17;37:7,18,21;
38:11,12;40:13;
41:20,23;46:22;53:1,
22;54:1,6;55:2,5;
56:21;57:2
**judicata (1)**
40:18
**July (3)**
14:7,15;69:20
**June (8)**
15:5,10;18:20;
38:17;39:6;55:10;
75:19,20
**junk (1)**
48:1
**jurisdiction (8)**
6:10;8:24;11:11;
16:13,17,22;33:14;
34:7
**JUSTICE (1)**
5:2
**justify (1)**
78:18

**K**

**Katherine (2)**
12:18;50:2
**keep (1)**
14:19
**keeping (1)**
63:24
**Kenneth (2)**
34:17;49:23
**Kentucky (1)**
22:12
**KERINS (2)**

4:18;7:6
**key (1)**
79:12
**keys (3)**
23:24;24:10;57:23
**kind (6)**
10:21;12:1,22;
14:21;18:3;25:12
**kinds (2)**
16:9;40:11
**knew (3)**
15:7;58:20,20
**knocked (1)**
58:21
**knowledge (1)**
18:25
**known (1)**
26:2

**L**

**lack (1)**
60:4
**lady (1)**
23:17
**landlord (1)**
20:20
**landlord-tenant (3)**
19:9;20:25;46:14
**large (2)**
14:23;18:14
**last (3)**
28:14;39:19;42:22
**late (1)**
66:21
**later (4)**
10:5,7;17:11;39:13
**Law (16)**
12:9;19:5;21:4;
24:7,7;33:25;40:7,15;
44:2;49:19;54:11;
56:10;72:2,3,17;
76:25
**laws (1)**
54:20
**lawsuit (2)**
11:22;28:16
**lawyer (2)**
25:4;62:16
**LBK (1)**
12:17
**LE (1)**
12:17
**least (4)**
11:15;41:6;46:11;
57:19
**leave (2)**
29:3;71:22
**leaves (2)**
62:2;63:21
**left (2)**
43:15;53:12
**legal (12)**

25:3,7;38:5,6,18;
39:1,8,12;46:20;49:1;
55:6;56:4
**legitimate (1)**
61:10
**Lehman (1)**
34:17
**lend (3)**
23:4;44:3,14
**lender (5)**
23:1;56:8,12;57:5;
66:13
**less (1)**
22:1
**lessened (1)**
61:18
**letter (5)**
44:9,10;52:2,6;53:4
**liar (2)**
29:15;47:23
**license (1)**
64:8
**licensed (6)**
23:1,3,4;44:14;
66:11,17
**licensing (1)**
31:2
**lied (3)**
34:19;47:22,23
**lien (1)**
49:1
**liens (1)**
18:6
**life (2)**
65:2;72:15
**line (4)**
14:19;62:22;63:2;
76:5
**listed (3)**
12:11;15:22;37:22
**listen (2)**
35:2;46:13
**listening (2)**
11:12;60:24
**listing (9)**
7:24;8:1,2,8,21;
9:10,14,17;32:17
**litigation (2)**
28:25;71:14
**little (1)**
57:25
**lived (3)**
12:25;13:2;45:16
**living (2)**
20:2;24:4
**LLC (2)**
7:3;35:22
**LLP (3)**
4:2;7:2;35:21
**loan (40)**
23:2;24:15,16,17,
21;38:2,3;40:8,14,20,
21,22,23,24;41:1,5,7,

8;42:6;44:7,8,12,18,
25,25;45:9,13,24;
47:17,17;48:5,5,7;
54:7,8,12,17,20;56:6,
6
**loans (2)**
41:13;56:7
**located (1)**
71:17
**locked (1)**
57:12
**lockout (1)**
46:17
**locks (1)**
57:24
**Long (6)**
19:18;22:14;23:21;
42:11;49:24;75:11
**longer (1)**
55:23
**look (11)**
15:15;29:25;44:12;
45:18;62:18;68:15;
77:16,17,19,20;79:12
**looked (1)**
41:17
**looking (1)**
15:16
**looks (3)**
22:24;25:19;63:20
**lose (2)**
23:10;60:12
**loss (1)**
71:21
**lot (6)**
22:7;24:25;44:11;
46:20;49:8;69:25
**lower (1)**
26:12
**LT (1)**
19:6
**LTB (1)**
41:8
**Ltd (4)**
24:18;42:5,9;43:25
**Lynx (25)**
5:14;7:2;8:7;9:22,
22;22:25;23:18;
25:15;27:13;35:18,
21;36:4;40:6;41:21;
46:2,5;47:14;53:22,
23,25;54:3,6,7;55:16;
64:12

**M**

**MAHON (5)**
4:18,18;7:6,6;49:23
**mail (2)**
43:15;53:12
**main (2)**
14:23;18:14
**makes (2)**

23:10;51:15
**making (1)**
13:2
**Malibu (1)**
71:21
**Management (2)**
12:16;60:19
**manager (2)**
12:15;60:19
**managing (2)**
60:13,15
**maneuvering (1)**
56:4
**manner (1)**
22:19
**many (11)**
6:10,10;11:14;15:2;
16:9;18:18;32:10,25;
33:1;46:9;47:24
**marching (1)**
43:2
**MARIANNE (17)**
5:13;6:9;8:17;
10:15;11:1,4,5;27:16,
22;30:1;37:9;39:20;
41:18,24;49:22;50:1;
71:3
**market (3)**
9:24;27:11;32:15
**marketing (1)**
61:23
**Martha (1)**
6:6
**Martir (1)**
6:6
**matter (5)**
7:15;22:13;35:17;
56:5;67:21
**matters (1)**
7:14
**maximized (1)**
61:13
**may (18)**
7:25;17:4,7;18:10;
26:25;30:13;42:2;
60:1,4;62:4;63:4;
70:9,10,10,10,10;
71:3;75:20
**Maybe (3)**
20:24;26:23;77:11
**McGavin (1)**
12:19
**McGrail (2)**
7:2;35:21
**mean (6)**
25:3;38:22;40:20;
42:3;43:21;65:8
**meaning (1)**
9:23
**meaningful (1)**
8:13
**means (1)**
41:8

**meant (1)**
26:23
**media (1)**
26:12
**meet-and-confers (1)**
67:8
**meeting (4)**
18:2;42:21;51:18;
58:21
**meetings (3)**
23:5;42:18;72:11
**Mellon's (1)**
22:17
**memory (1)**
77:10
**mention (1)**
28:10
**mentioned (5)**
27:22;28:15;30:22;
48:16;71:18
**merit (2)**
32:7,14
**Metropolitan (2)**
13:10;14:17
**Miami (2)**
27:23;29:18
**MICHAEL (6)**
5:14;7:3;22:25;
36:4;44:10;65:25
**Mike (1)**
56:2
**milestones (2)**
9:23,23
**MILLER (1)**
4:2
**million (16)**
18:23;20:4;21:25;
22:8;23:8,9,10,16;
26:3,13;30:25;42:10,
14;48:22;49:2;52:7
**millions (1)**
71:20
**minute (4)**
45:25;46:2,5;59:6
**minutes (1)**
59:11
**misfiled (6)**
22:6;23:17;42:8;
43:23,25;58:5
**mistake (4)**
23:12;51:15,20;
58:13
**mistakes (1)**
46:9
**misunderstood (4)**
26:21,23;27:6;
76:19
**moment (5)**
10:13;25:15;28:20;
39:1,13
**Monday (1)**
59:2
**money (9)**

Peggy Nestor

February 13, 2025

11:11;18:5;22:8;
24:25;42:10,14;
44:11;51:23;57:18
**month (2)**
10:6;57:19
**months (2)**
57:18;75:15
**more (13)**
8:10;16:19;32:15;
53:7;54:22;59:10;
67:9;69:8;70:11;
75:17;76:1;77:22;
78:1
**morning (24)**
6:4,7,8,14,16,17,19,
24,25;7:1,5,9,11,12;
10:15;35:20;36:13;
37:6;42:25;43:2;59:3,
5;73:23,24
**morning's (2)**
7:14,17
**mortgage (6)**
41:14;44:12;45:17;
53:25;57:3,4
**mortgages (3)**
23:3;44:13,16
**most (3)**
17:25;39:25;43:3
**motion (27)**
9:13;10:5;25:15;
28:11;29:16;35:11,
17,24,24;36:2,3,5,10;
39:9,19,21,25;47:15;
53:22;55:13,18;
64:12,18,19;65:9;
66:15,22
**move (1)**
35:6
**moved (5)**
13:5,25;15:2;18:18;
60:18
**moves (2)**
20:23;49:8
**moving (4)**
15:3;18:21;19:6;
35:9
**Mrs (4)**
10:16;11:1;22:17;
23:5
**much (3)**
24:11;47:24;65:23
**multifamily (1)**
40:14
**Museum (3)**
13:11;14:5,17
**myself (2)**
12:8;19:1

### N

**name (8)**
11:5;15:3,11,13;
18:21;19:4;22:18;

75:20
**named (6)**
14:5;41:19;42:6;
46:8;51:19;53:25
**names (1)**
11:10
**Nassau (4)**
4:19,20;7:7;42:15
**nasty (1)**
50:16
**natural (5)**
44:5,7;46:10;48:8;
64:9
**nature (1)**
41:16
**near (2)**
25:19;67:12
**need (13)**
30:9;48:4;55:7;
65:1,1,2;70:16,16,17,
18;72:10;79:12,13
**needed (1)**
51:17
**needs (8)**
22:10;45:22;48:3;
55:15;56:1;61:22;
64:23;72:12
**negate (1)**
67:24
**negative (1)**
47:25
**negotiated (1)**
36:14
**Neil (7)**
6:4;7:12;15:14;
19:12;35:16;67:2;
71:2
**neither (3)**
23:2;29:6;56:15
**NESTOR (357)**
5:13;6:3,8,9,13;
7:25;8:17,23;9:9;
10:9,15,17,21,24;
11:1,3,4,4,5,7,17;
12:1,7,17;13:5,14,16,
17,17,19,21,24;14:4;
15:9,18,21,25;16:4,
11,13,17,21,24;17:1,
3,13,17,20,23;18:12;
19:17,20,22,24;20:2,
6,8,10,12,15;21:9,10,
11,12,14,16,18,20,24;
22:16;25:7,9,11,17,
24;26:5,8,10;27:16,
22,22;28:15,19;29:1,
6,9,10,15,19,21;30:1,
4,6,8,11,13,16,18,21;
31:5,8,13,15,17,20,22,
24;32:1,3,6;33:5,13,
18,20,22;34:1,3,7,11,
20,23;35:1,3,8,10,12,
15;37:9;39:20;40:1,3,
24,25;41:12,18,24,24;

42:1,4;43:6,7,8,9,11,
14,16,18,21;44:2,5,9,
19,21,23;45:2,5,7,10,
14,16,18,21;46:1,4,8;
47:1,4,8,11,13,16;
48:11,13,16,20,25;
49:22,22;50:1,2,4,11,
14,18,21,24;51:1,4,6,
8,21,23;52:2,4,6,10,
12,16,19;53:6,9,14,
16,18,20,24;54:10,15;
55:1,14,20,22,25;
56:15,18,22,24;57:1,
3;58:5,7,10,13,16,19;
59:9,13,18,20,22,25;
60:4,6,11,13,21,24;
61:2,4,9,16,21;62:1,8,
11,13,18,21,25;63:2,
4,6,8,11,13,16,19,24;
64:1,7,11,13,17,20,
22;65:1,5,8,10;66:2,5,
10,13,14,16;67:18,20,
23,25;68:3,5,7,9,11,
18,20,24;69:2,4,7,13,
15,20,25;70:7,14,16,
21;71:1,3,9,18,22;
72:5,7,19,21;73:1,10,
12,15,18;74:1,5,8,11,
14,16,18,20,23;75:1,
6,8,10,16,23;76:7,9,
11,13,15,17,19;77:5,
8,10,13,15,18,21,23,
25;78:3,5,8,11,13,17,
20,23,25;79:2,4,7,12,
15
**Nestor's (2)**
28:8;75:13
**New (36)**
5:7;7:23;14:19;
15:22;19:8;21:5;
22:20;23:1,2,4;24:6,
7;28:16,17;33:8,9;
34:14;40:7;41:19;
44:13,14;46:14;
49:18;53:22;54:11,
24;56:8,10,12,16;
57:5,7;66:11,17,18;
69:22
**next (9)**
35:11,17;43:2,19;
59:1,5;72:4,18;73:6
**Nice (3)**
6:8;50:15;60:6
**niece (2)**
57:25;58:23
**night (2)**
39:20;48:1
**nightmare (1)**
45:16
**nine (2)**
20:4;37:18
**nineteen (1)**
22:9

**ninety (1)**
46:11
**nobody (8)**
13:8;18:3;22:5;
24:18;38:4;39:19;
43:11;60:24
**non-DIP (1)**
39:7
**None (2)**
8:3;21:12
**nonpost-petition (1)**
38:12
**nor (1)**
16:13
**note (1)**
11:13
**notice (2)**
46:11;66:22
**notified (1)**
58:2
**notion (1)**
9:12
**Notwithstanding (1)**
26:24
**nowhere (1)**
71:4
**number (7)**
8:5;29:2;36:3,4,9;
64:4;67:8
**numbers (1)**
37:5
**NY (4)**
4:5,13,21;5:7
**NYPD (2)**
14:25;18:17

### O

**oath (2)**
74:10,11
**object (3)**
23:23;24:9;26:10
**objection (11)**
32:19,21;37:23;
39:19,21,24;40:5;
55:9;66:15,20,21
**objections (2)**
32:7,14
**objector (1)**
32:9
**obligated (1)**
45:12
**obligations (1)**
67:17
**O'BRIEN (2)**
4:18;7:6
**obtained (1)**
37:8
**obviously (1)**
17:4
**occasions (2)**
32:10,25
**occupancy (3)**

22:8;42:11,16
**occupying (1)**
54:8
**o'clock (5)**
59:3;74:15,19;77:4;
78:2
**off (7)**
48:5;51:23;55:16;
56:2;66:6;72:13,14
**offer (3)**
8:3;21:25;29:24
**offered (1)**
21:6
**offers (3)**
31:3,10;32:16
**Office (1)**
5:3
**offices (1)**
22:9
**Oleg (3)**
7:8;22:11,18
**omnibus (1)**
73:1
**once (1)**
29:4
**One (19)**
5:5;8:16;22:4;
26:20;27:21;28:14;
34:16;38:14;39:23;
45:24;48:6;50:1;
51:24;56:15;60:18;
68:1,9;71:18;72:11
**one-half (1)**
52:14
**ones (2)**
56:11;75:1
**only (16)**
8:16,23;11:24;19:8;
22:5;23:14;31:22;
34:14,15;39:18;
40:22;49:11,18,25;
55:4,11
**onto (1)**
66:20
**opened (1)**
9:22
**operating (2)**
9:12;67:7
**opinion (3)**
19:3,11;26:8
**opportunity (1)**
8:2
**oppose (3)**
8:7;12:4;17:15
**opposed (1)**
37:4
**opposing (1)**
53:1
**ordained (1)**
59:22
**order (39)**
7:21;8:22;9:1,3;
10:1;28:18,19,22,22;

33:3;35:25;36:12,23;
37:1,6,16;38:16,24;
39:2,12;43:10;59:24;
67:24;68:4,6,15,19;
69:6;74:4,6,17,21;
77:20;78:4,19,20,21;
79:9,10
**ordered (5)**
7:16;29:8;33:11;
67:4;75:18
**ordering (2)**
73:14,17
**orders (3)**
16:9;61:7;62:6
**originally (1)**
41:5
**otherwise (5)**
36:15;41:3;44:2;
51:24;55:8
**ought (1)**
28:19
**out (41)**
14:8,12;22:21;
23:14,20;24:21;
29:22;30:22;34:12;
44:23;45:3,22;46:19;
47:18,20;48:3;49:7,
11,12,22,23,24;55:15;
56:1;57:12,24;58:1;
59:5;60:18;64:3,23;
69:2,16,17,20,21,25;
70:3;72:13,14;75:13
**oval (2)**
14:23;18:13
**over (14)**
17:21;21:3;40:17;
47:22;48:8;53:15;
57:10;60:22,23;62:2,
13;63:22;69:19;76:5
**overruled (1)**
54:25
**owed (5)**
22:7,7;42:9,10,11
**owes (2)**
24:18;61:10
**owing (1)**
54:3
**own (14)**
11:10,11;13:14,18;
16:14;19:11;24:1;
31:6;52:23,25;53:5;
54:18;60:9;63:9
**owned (3)**
12:4;34:12;53:5
**owner (8)**
11:9;12:20;17:5,11;
29:25;34:21;49:1;
54:8
**owners (1)**
41:9
**owner's (1)**
11:5
**ownership (10)**

11:16,17;14:9;21:9;
30:15;32:9;34:25;
49:6;60:10;72:10
**Oyster (1)**
20:3

---

**P**

**packed (1)**
70:17
**padlock (1)**
57:24
**paid (5)**
18:7;22:10;42:11,
15;60:14
**painting (1)**
14:1
**papers (36)**
11:15;12:12,13;
14:12;23:7,18,19,19,
20;24:23;33:7;34:24;
42:7;43:1,23,25;
45:19;52:11;53:23;
54:5,12,18;57:12,21;
59:13,16;66:2,5,8,9;
68:1,24,25;69:8;72:8;
75:20
**paperwork (1)**
20:19
**paralegal (1)**
22:13
**parameters (1)**
9:25
**Pardon (3)**
13:16;46:4;47:13
**part (6)**
22:25;24:8;29:5;
37:22;52:23;53:5
**participating (2)**
6:6;8:4
**particular (1)**
32:8
**particularly (1)**
8:12
**parties (3)**
28:12;36:14;67:7
**partner (1)**
19:5
**party (4)**
6:9;41:19,24;42:3
**passionate (1)**
52:12
**Passover (1)**
43:19
**past (1)**
36:24
**Pat (1)**
6:18
**patience (1)**
60:4
**PATRICK (2)**
4:15;6:19
**pause (1)**

10:13
**pay (6)**
48:5;51:23;55:16;
56:1;72:13,13
**PC (1)**
4:10
**Peggy (33)**
6:2;11:4,10;22:10,
16,22;24:21;25:21;
30:1;42:9,14;43:1;
44:21;45:2,12,17,22;
47:18;49:21;50:1;
51:15,16,17;52:11,22;
53:6,24;55:15;61:9;
63:19;64:2;72:12;
73:1
**Peggy's (3)**
16:24;22:7;64:19
**Penachio (15)**
19:22;22:4;23:5;
24:23;31:20;34:15;
42:8,13;43:1;45:7;
49:17;51:1;58:3;59:3,
4
**pending (2)**
51:14;55:23
**people (12)**
14:20;19:18;22:13;
23:20;24:5;25:24;
26:1;45:12;46:10;
48:14;57:10,15
**per (3)**
14:25;18:17;32:12
**percent (11)**
8:15,15;16:14;
19:11;21:7;29:24;
34:12;37:18;48:8;
49:16;72:10
**perhaps (6)**
26:21;28:16,17;
57:8;71:12,22
**permission (2)**
33:25;34:1
**permits (1)**
11:24
**person (12)**
22:22;23:24;25:18,
22;26:7;44:5,7;47:22;
48:9;56:4;64:9;70:18
**personal (7)**
10:6;24:16;25:13;
45:22;78:13,13,16
**personally (3)**
41:9;50:23;78:11
**personalty (1)**
13:8
**petition (3)**
28:2;38:9;71:21
**ph (6)**
12:12,17;14:5;
22:17;23:2;34:18
**phone (5)**
6:6;7:3;8:4;27:18;

58:24
**picture (3)**
22:23;25:19,23
**piece (1)**
65:6
**pieces (1)**
13:25
**place (12)**
8:11;19:8,9;20:18;
25:18;26:12;47:23;
54:4;57:19;62:2;
63:22;73:4
**plaintiff (1)**
67:6
**plastic-wrapped (1)**
15:17
**plates (7)**
15:3,6,8,15;18:19;
49:7;75:18
**Plaza (2)**
4:4,12
**pleading (1)**
39:25
**pleadings (1)**
28:9
**Please (10)**
6:2;11:19;15:25;
20:15;59:21;68:8,8;
77:7,9;79:9
**pleasure (1)**
10:17
**Plus (6)**
44:13;56:8,11,18;
57:5;66:13
**pm (5)**
73:22,22,22,23;
79:16
**point (6)**
8:12;13:18;61:22;
68:3,9,13
**points (1)**
60:22
**Police (1)**
69:22
**policy (1)**
19:5
**porcelain (2)**
15:3;18:19
**position (4)**
11:20;40:6,9;66:21
**possible (1)**
27:9
**possibly (1)**
26:1
**Post (1)**
22:20
**post-judgment (2)**
36:25;37:3
**post-petition (1)**
37:9
**potential (1)**
61:14
**potentially (1)**

28:16
**precludes (1)**
55:3
**preclusive (1)**
71:8
**predicament (1)**
66:24
**prefer (3)**
10:19,19;39:11
**preference (2)**
10:23,25
**prepare (1)**
57:12
**prepared (1)**
71:15
**pre-petition (1)**
37:7
**PRESENT (2)**
5:12;35:18
**preset (1)**
59:22
**presiding (1)**
40:17
**presuming (1)**
28:20
**presumptuous (1)**
28:21
**pretending (1)**
74:3
**pretty (2)**
57:25;60:6
**previously (6)**
11:19;15:19;27:14;
32:10;36:1;41:3
**price (14)**
9:17;14:20;18:24;
23:8,9,16;26:13;27:9;
30:24;32:14,18,20,20;
61:18
**prices (1)**
64:4
**primarily (1)**
9:18
**primary (1)**
44:17
**Prime (6)**
44:13;56:7,11,18;
57:5;66:13
**principal (2)**
7:4;36:4
**prior (16)**
10:15;11:14;13:6;
16:7;19:15,23;29:18;
30:14;32:25;38:16;
53:8,15;60:10;61:7;
64:19;70:5
**privilege (1)**
67:15
**privileged (1)**
67:5
**probably (8)**
13:21;18:22;49:7;
57:19;67:11;73:7;

Peggy Nestor                                                                                    February 13, 2025

75:17;76:1
**problem (1)**
  38:23
**procedures (4)**
  9:12,23;28:12;
  35:25
**proceeding (4)**
  9:4;41:4,20,20
**proceedings (2)**
  51:18;79:16
**proceeds (2)**
  17:11;38:3
**process (2)**
  27:13;29:7
**professional (1)**
  28:23
**professionals (1)**
  71:6
**prohibits (1)**
  28:18
**promised (1)**
  42:13
**proper (4)**
  55:5,17;56:2;64:4
**properties (1)**
  75:14
**property (54)**
  10:6;11:3,5,16,23,
  25;12:3,18,24;13:7,
  22;16:10;17:6,9,10;
  18:7;19:16,17,18;
  20:1,3,12;21:25;
  23:24;27:9;28:10;
  29:24;30:24;31:3,10;
  32:15;33:9;36:15;
  40:14,15;49:7;50:5;
  51:12;52:17,23,24;
  53:1,6,6,10;54:8;
  60:10;61:9,12,22;
  62:12,23;63:10;71:21
**proposed (4)**
  7:15;8:10,20,22
**prosecutor (1)**
  72:23
**protect (1)**
  67:5
**protected (1)**
  28:24
**proved (1)**
  27:24
**provides (2)**
  17:12;26:24
**provisions (1)**
  54:9
**Public (2)**
  4:19;7:7
**purchase (2)**
  11:9;13:6
**purchased (5)**
  11:3,10;12:8,18;
  14:4
**pure (1)**
  26:7

**purely (1)**
  41:1
**purpose (4)**
  69:24;70:2,13,15
**pursue (1)**
  46:7
**put (15)**
  15:12;18:6;23:13;
  24:6;32:1;34:17;
  43:23;44:12;49:1;
  64:1;65:2;67:20;68:1;
  69:7,7
**puts (2)**
  49:10;57:24

**Q**

**Quickly (1)**
  26:20
**quite (1)**
  55:21
**quoting (1)**
  9:10

**R**

**raise (4)**
  39:21,24;40:19;
  60:8
**raised (3)**
  32:24;40:20;56:20
**raises (1)**
  8:23
**Rapid (3)**
  12:11,14;23:19
**rate (1)**
  37:21
**rather (2)**
  19:6;66:18
**read (6)**
  28:1,19;29:13,13,
  16;30:18
**reading (1)**
  35:5
**ready (2)**
  48:19;69:9
**real (7)**
  7:23;13:7;18:8;
  25:25;27:12;40:8,15
**realized (1)**
  51:17
**really (19)**
  21:20;24:1,12,13;
  38:20;39:21;43:21;
  50:18;54:17,21;
  55:10;58:6,6;61:5,12,
  18;65:8;67:4;69:13
**reason (7)**
  32:22;40:22;45:2;
  46:21;47:20;56:24;
  57:4
**reasons (1)**
  6:11

**recall (3)**
  7:25;71:3;74:8
**received (3)**
  8:16;65:25;71:20
**receiver (2)**
  4:3;6:15
**recently (1)**
  27:23
**recited (1)**
  40:7
**record (12)**
  9:9;11:13;26:21;
  27:7;29:13;35:21;
  36:11;37:14;40:1;
  52:21;54:25;79:9
**records (1)**
  30:1
**reducing (2)**
  23:9;30:24
**reduction (2)**
  8:13,14
**refer (1)**
  10:16
**reference (1)**
  47:9
**referring (1)**
  26:22
**refile (3)**
  20:17,17,24
**reflect (1)**
  38:24
**reflected (3)**
  37:5,14;41:2
**reflects (1)**
  33:4
**regard (3)**
  10:20;11:21;53:21
**regarding (9)**
  7:19;11:7;13:13;
  14:19;36:8,25;56:6;
  60:10;66:10
**registered (6)**
  12:15;56:7,8,15;
  57:5,6
**regularly (2)**
  27:13,14
**rehash (1)**
  32:25
**reimbursed (1)**
  38:3
**reiterate (1)**
  16:6
**reiteration (1)**
  16:2
**rejected (2)**
  40:12,16
**relate (1)**
  39:6
**relevant (2)**
  33:1;70:6
**reliable (1)**
  29:19
**relief (4)**

12:5;17:15;71:7,8
**relitigate (2)**
  11:14;21:21
**rely (1)**
  32:16
**remember (2)**
  47:2;75:11
**removal (1)**
  19:23
**removed (2)**
  21:22;34:17
**rendered (1)**
  38:13
**Rent (7)**
  12:9;21:4,6;24:5,7;
  57:7;64:8
**rental (1)**
  21:5
**rented (1)**
  57:18
**rent-stabilized (4)**
  21:2;60:15,16,17
**reorganization (4)**
  22:7;42:9;45:23;
  51:4
**repainted (1)**
  13:6
**report (1)**
  67:1
**reported (2)**
  14:7;15:20
**representations (1)**
  40:23
**represented (1)**
  41:6
**reputation (1)**
  29:12
**request (1)**
  67:11
**requires (1)**
  19:10
**res (1)**
  40:18
**resell (1)**
  20:6
**reselling (1)**
  20:10
**reside (1)**
  19:25
**resided (2)**
  19:15;53:7
**Residential (2)**
  7:23;40:15
**respect (1)**
  36:10
**respectfully (1)**
  68:5
**respects (1)**
  33:1
**response (8)**
  8:16,18;10:3,9;
  26:18;27:21;29:3;
  33:4

**responsible (1)**
  9:19
**result (1)**
  61:18
**retain (3)**
  7:22;8:6;76:25
**retained (4)**
  7:25;28:23;29:4;
  71:6
**retention (6)**
  10:12;31:3,9;32:4,
  22;33:2
**retract (1)**
  29:17
**return (3)**
  18:20;35:23;75:18
**returned (1)**
  14:13
**Revenue (1)**
  22:12
**review (3)**
  9:16;28:8;70:5
**reviewed (1)**
  8:20
**revise (1)**
  38:24
**revised (5)**
  36:12,22,23;37:6,
  16
**revisiting (2)**
  58:15;61:7
**rid (1)**
  46:18
**ridiculous (2)**
  18:5;46:20
**right (31)**
  6:2;10:14;16:9;
  21:24;23:13;25:11;
  26:18;29:11;30:23;
  38:21;39:17,23;47:2,
  6,12;48:10,11,14,19;
  50:3;59:17,19;63:25;
  64:6;65:4,7;70:22;
  74:7;76:23;77:3;
  78:24
**rights (2)**
  31:18;73:12
**room (3)**
  14:1,23;18:14
**Rosalia (2)**
  4:3;6:15
**routine (1)**
  57:11
**RPAPL (3)**
  19:10;20:16;57:14
**Ruderd (1)**
  14:5
**RUDEWICZ (3)**
  5:9;7:9,10
**rule (3)**
  47:16,18;48:19
**ruled (12)**
  11:20;16:3,7,15,19;

Peggy Nestor

February 13, 2025

21:22;30:19;32:10;
56:9;58:11;60:9;
64:10
**rules (3)**
46:12;57:7;75:21
**ruling (2)**
17:5;64:16
**run (1)**
25:3
**running (1)**
46:20
**RXR (2)**
4:4,12

## S

**safe (1)**
15:17
**sale (15)**
7:19,20;9:5,19,24;
23:16;27:13;29:7,24;
35:25;41:21;47:10;
53:1;54:3;61:18
**Sales (1)**
7:23
**same (9)**
9:1;40:19;44:6,7;
46:16;54:12;57:11;
60:22;75:24
**Sami (6)**
22:22;23:23;25:18;
29:23;30:23;49:13
**sanction (1)**
29:11
**Saunders (3)**
30:6;34:16;49:22
**Savings (1)**
25:4
**saying (12)**
11:16;17:6,14;
19:15,25;34:14,24;
39:3;44:8;52:6,13,25
**schedule (2)**
28:2;44:12
**scheduled (2)**
28:11;47:10
**schedules (1)**
28:8
**scope (1)**
28:25
**seated (1)**
6:2
**second (2)**
36:16,18
**secret (3)**
9:11,11,16
**secretly (1)**
23:7
**Section (8)**
9:5;11:23;17:6;
26:22;27:1;32:11;
62:15,17
**sections (2)**

40:6,7
**secured (3)**
35:24;41:14,16
**securing (2)**
15:1;18:17
**seek (2)**
39:9;59:12
**seeking (2)**
11:22;52:22
**seeks (1)**
29:7
**seem (2)**
34:13;50:14
**seemed (1)**
13:8
**Segal (2)**
6:5,5
**sell (17)**
8:25;11:24;12:24;
16:9;17:10;21:25;
23:11;26:25;27:9;
30:23;31:5;32:8,11;
61:21;62:12;63:19;
64:9
**selling (2)**
22:17;27:12
**send (3)**
18:22;38:1;66:2
**senior (1)**
22:13
**sense (1)**
51:15
**sent (7)**
38:4;52:7;56:6;
66:6;70:7,8,9
**separate (2)**
13:8;54:5
**September (4)**
18:24;22:1,3;49:24
**seriously (3)**
10:9;24:9;74:4
**served (3)**
42:6;66:22;75:15
**Service (2)**
22:12;36:10
**Services (5)**
5:14;7:3;35:18,22;
38:13
**set (2)**
10:1;36:9
**settle (3)**
46:18,19;64:3
**seven (2)**
12:10;24:4
**seventeen (1)**
48:21
**seventy-five (1)**
8:12
**seven-unit (1)**
57:16
**several (3)**
13:7;25:25;48:17
**shape (1)**

47:21
**SHARFSTEIN (1)**
4:2
**shipping (2)**
15:1;18:18
**shit (1)**
65:6
**shock (1)**
43:21
**shooter (1)**
27:19
**shortly (1)**
71:21
**show (2)**
53:23;67:18
**showed (1)**
18:3
**shown (1)**
42:18
**showroom (1)**
22:9
**shul (1)**
43:19
**sick (1)**
48:4
**side (1)**
67:6
**sides (1)**
67:6
**signatures (1)**
41:10
**signed (6)**
19:14;23:7;40:25;
41:12;45:12,17
**similar (1)**
19:1
**simple (2)**
37:18;55:10
**simply (3)**
9:24;10:4;28:15
**single (1)**
28:10
**sister (11)**
12:8;18:25;19:1;
24:3;29:9;34:19;37:9;
41:11;50:23;54:13,13
**sisters (1)**
40:24
**Sit (3)**
31:25;32:2,2
**situation (3)**
40:16;44:21;45:3
**sixteen (1)**
48:8
**sixth (3)**
13:4,23;71:1
**sleep (1)**
48:1
**social (1)**
26:12
**soft (3)**
58:25;59:8,15
**sold (10)**

11:23;17:6;19:17;
20:4;52:24;61:9;
62:23;63:1,10,12
**sole (4)**
8:13;14:9;34:21;
53:6
**Somebody (5)**
23:15;26:5,15;
49:12;59:7
**Somehow (2)**
48:21;52:20
**sons (2)**
12:25,25
**sorry (11)**
27:6;51:8;52:4;
61:4,8;65:15,16;66:4;
72:5,17;73:21
**sort (1)**
9:10
**Sotheby's (7)**
8:1,12,14;9:13;
22:15,16;27:14
**sought (1)**
36:16
**South (1)**
4:21
**speak (6)**
9:24;12:7;27:11;
63:4;72:1,1
**specifically (1)**
9:15
**spent (1)**
15:15
**spoke (1)**
29:17
**spoken (2)**
9:9;27:25
**St (1)**
48:13
**Stabilization (5)**
12:9;21:4,6;24:7;
57:7
**stabilized (1)**
24:5
**stand (3)**
69:12;71:3,10
**standard (1)**
9:12
**standing (1)**
74:9
**start (1)**
71:5
**started (1)**
48:21
**state (23)**
8:20;21:22;23:2,4;
24:6;28:17;34:14;
40:16,20;41:19;
44:15;49:19;53:22;
54:24;55:2,4;56:20,
21,23;57:2,5;63:24;
66:11
**stated (1)**

40:1
**statement (4)**
7:18;28:8;29:18;
42:4
**statements (1)**
60:10
**STATES (9)**
5:2,3;7:10;9:2;
24:12;33:22;34:4;
43:4;76:21
**stationery (2)**
15:12;19:4
**status (2)**
7:19;8:19
**statutory (1)**
37:20
**stay (5)**
67:22;68:15,16;
75:4,5
**stealing (1)**
49:6
**stems (1)**
37:7
**stepping (1)**
76:5
**steps (1)**
43:3
**Stevens (10)**
7:22;8:6,9,19;9:21;
21:24;27:15;29:1,4,5
**steward (1)**
29:19
**stipulation (2)**
7:16;67:1
**stole (2)**
68:25;75:16
**stolen (1)**
14:6
**Stop (16)**
30:3,5,7,7,7,7,9,9;
31:7;35:6;56:3;68:17;
72:20;74:3;77:7,9
**stopped (1)**
51:10
**straight (1)**
27:19
**Street (11)**
14:7;15:23;22:10,
17;24:6;26:15;29:25;
49:17;57:18;58:1;
65:5
**stringent (2)**
57:6,9
**strongest (1)**
27:8
**stuff (5)**
21:21;43:5;47:25;
49:23;69:25
**subject (5)**
9:15;13:14,23;
37:13;75:15
**subjects (1)**
70:6

eScribers, LLC

**submit (7)**
33:3;37:24;39:4;
40:17;59:21,24;79:10
**submitted (6)**
37:6;38:14;39:13;
41:2;53:23;57:21
**subpoena (4)**
18:22;75:15;77:16,
19
**subpoenaing (1)**
25:1
**subpoenas (2)**
71:11,16
**subsection (2)**
26:25;27:1
**substantive (2)**
39:22,24
**successor (1)**
6:22
**suckers (1)**
12:21
**sue (7)**
31:11,19,23;33:17,
21,22;34:3
**sued (2)**
33:10;42:3
**sufficiency (1)**
32:20
**suing (1)**
25:1
**suit (4)**
31:10;46:3,6;52:22
**Suite (1)**
5:6
**sum (1)**
10:8
**sun (1)**
26:12
**supervise (1)**
73:5
**support (5)**
36:3,5;38:8;45:20;
55:7
**supporting (1)**
37:11
**supposed (9)**
18:1;24:12;42:8;
45:23;46:10,16;51:2;
61:6;70:21
**supposedly (1)**
51:14
**sure (4)**
40:2,10;60:1;66:9
**surely (1)**
51:17
**surprise (1)**
43:19
**surrogate (2)**
54:6;60:2
**Swiss (1)**
71:18
**sworn (1)**
34:24

**system (3)**
43:15;53:13;66:21

**T**

**talk (3)**
22:5;25:14;59:1
**talking (4)**
25:15;61:2;73:3,4
**taxes (5)**
13:13;14:19,19;
42:11,15
**Taylor (2)**
12:16;60:19
**telephone (1)**
22:5
**Telephonically (1)**
5:14
**telling (6)**
29:23;49:11;57:13;
58:7;63:3;68:20
**ten (2)**
19:14;57:18
**tenant (1)**
20:20
**tenants (1)**
60:17
**term (1)**
67:12
**terrible (3)**
24:14;63:24;65:8
**terribly (1)**
24:13
**testified (2)**
42:1,2
**theft (1)**
14:10
**third (3)**
7:15;13:5;14:1
**Thirteenth (2)**
50:7;70:23
**thirty-four (2)**
22:8;42:10
**thirty-nine (2)**
23:12,16
**though (1)**
48:25
**thought (3)**
10:15;12:21;27:4
**three (5)**
12:25;14:24;19:3;
20:8;76:1
**three-and-a-half (1)**
72:12
**three-million-dollar (2)**
36:17,18
**threw (2)**
49:22;57:17
**thrown (3)**
49:24;58:1;65:5
**tie (1)**
23:22
**timely (1)**

39:19
**times (6)**
6:11;13:7;16:19;
48:6,17;75:20
**title (1)**
9:4
**today (7)**
8:4,17;23:18;33:2;
36:7,20;74:9
**today's (2)**
33:4;65:21
**together (4)**
23:22;57:4;65:2;
68:1
**Togut (10)**
6:4,5;12:13;15:13;
19:6;23:7,19;70:8;
76:22;77:13
**Togut's (2)**
56:4;76:25
**told (17)**
17:23;18:19;20:17;
33:10;43:11;48:6;
50:10,13;59:10;
68:21;72:11;74:3,5,7;
75:9,23;76:7
**ton (1)**
42:9
**took (7)**
14:8,12;44:15;
45:24;56:7;69:15,20
**top (1)**
43:3
**tortuous (1)**
75:11
**total (2)**
8:14;43:18
**totally (2)**
18:7;58:1
**town (1)**
13:12
**townhouse (10)**
7:19,20;9:1,19,24;
10:7;12:10;15:19;
28:10;41:15
**transferring (1)**
52:14
**travel (1)**
71:8
**treated (2)**
54:7;70:18
**treble (3)**
19:10;20:16;57:13
**true (5)**
34:20,23;35:1;
52:16;54:10
**trust (1)**
22:12
**Trustee (52)**
5:3;6:5;7:10,13,20,
22;8:1,3,6,20;9:2,3,
14,18,19;10:2,5,8;
15:14;26:25;27:8,11,

19,24;28:1,16,23;
29:6,17,20;31:21;
32:8,11,17;33:10,24;
34:9,10;35:17;37:10;
38:2;53:4,8;58:12;
62:6,9;67:3;71:2,6,
19;75:12;76:21
**trustee's (7)**
7:18;8:25;9:25;
10:10;16:9;27:17;
29:17
**truth (3)**
41:13;58:7;61:8
**try (3)**
8:3;71:5,23
**trying (3)**
25:3,7;29:23
**Tuesday (2)**
59:5,11
**turned (1)**
69:19
**twenty-eight (1)**
48:22
**twenty-five (1)**
52:7
**twenty-four (2)**
14:8;75:17
**twice (1)**
11:15
**twin (1)**
13:1
**two (13)**
7:14;12:21,25;
14:23;17:16;18:14;
20:6;37:13;40:24;
41:9;53:8;63:19;
75:20

**U**

**umbrella (1)**
29:6
**uncomfortable (1)**
59:25
**under (25)**
6:10;7:23;8:14;9:5,
7,23;11:11,23;12:9;
16:13,17,21;17:6;
26:12;27:1;29:5;
32:11;33:14;34:7;
36:18;62:12;67:7;
70:22;74:10,11
**undermine (1)**
29:7
**undermines (1)**
27:17
**undivided (5)**
11:9;21:7;29:24;
49:6;72:10
**undo (2)**
56:23,25
**unfounded (1)**
29:2

**Uniondale (2)**
4:5,13
**UNITED (9)**
5:2,3;7:10;9:2;
24:12;33:22;34:3;
43:4;76:21
**unknown (2)**
22:22;23:24
**unless (7)**
33:25;68:15;72:9;
75:4,4;78:18;79:5
**up (20)**
10:24;14:20;15:11;
17:11;18:3;25:1,1,11;
29:25;30:2;35:12;
42:19;46:20;48:1,22;
52:22;62:18;64:23;
67:18;70:11
**updated (1)**
37:5
**upon (2)**
21:22;31:3
**upset (1)**
55:16
**use (5)**
11:5;22:8,18;42:10,
16
**used (7)**
13:10,12;14:16,18;
26:22;49:17;72:22
**using (1)**
37:1
**UST (1)**
48:22
**usury (4)**
48:7,8,9;54:20

**V**

**valid (2)**
68:23,24
**value (5)**
22:1;23:10;26:13;
61:12;63:15
**valued (1)**
22:2
**various (2)**
36:20;54:9
**Verna (2)**
34:16;49:22
**Veronique (1)**
12:12
**version (1)**
36:13
**violation (1)**
54:8
**visit (1)**
69:21
**voice (2)**
43:15;53:12
**VOLKOV (39)**
6:24;7:1,2;35:18,
20,21;37:16,20;38:1,

Peggy Nestor

February 13, 2025

9,19,22;39:3,6,11,15,
18,24;40:4,10;41:25;
46:22,24;47:6,7,10;
59:21;61:10;65:12,
15,17,17,21,23;66:2,
4,8,19,19

**W**

**wait (1)**
59:6
**wake (1)**
48:1
**walk (2)**
57:10;71:15
**wall (1)**
61:2
**wants (5)**
23:25;44:23;45:3;
47:18,20
**warrants (1)**
78:19
**waste (1)**
18:5
**wasting (1)**
24:25
**way (16)**
12:11;15:22;19:13;
23:14;26:16;47:21;
49:3;55:2;58:24,25;
59:7,8,15,15;61:23;
66:20
**week (6)**
36:24;57:11;59:1;
72:4,18;73:6
**weekend (2)**
53:15;59:1
**weeks (1)**
53:8
**weren't (3)**
42:3;56:20;68:22
**WESTERMAN (2)**
4:2;6:15
**what's (4)**
17:15;33:1;53:21;
68:3
**Whereupon (1)**
79:16
**who's (2)**
8:17;23:1
**whose (1)**
13:12
**wife (1)**
12:19
**WILLIAM (2)**
4:7;6:14
**wish (3)**
12:24;60:20,22
**wishes (1)**
18:8
**within (4)**
9:25;19:14;28:24;
53:7

**without (8)**
18:25;22:21;32:7,
14;39:12;49:11;55:9;
72:21
**witness (1)**
69:12
**wood (2)**
14:22;18:13
**word (4)**
26:22;76:17,19;
77:6
**work (2)**
13:10;73:25
**worked (1)**
14:17
**world (1)**
43:4
**worst (1)**
72:14
**worth (4)**
18:5;23:11;70:8,9
**write (3)**
44:10,11;64:23
**written (2)**
9:8;64:22
**wrong (19)**
14:14;17:16;18:8;
23:13;24:1,13;26:16;
32:6;35:3,3,10;46:14;
48:2;49:2;50:5;58:1;
64:11,14,16
**wrote (1)**
22:18

**Y**

**year (6)**
32:12,15;37:4,4;
42:22;51:14
**years (4)**
20:6,8;22:9;26:3
**yesterday (2)**
66:5,14
**York (30)**
5:7;14:20;15:22;
19:8;21:5;22:20;23:2,
4;24:6,7;28:17;33:8,
9;34:14;40:7;41:19;
44:14;46:14;49:19;
53:22;54:11,24;56:9,
10,16;57:5,7;66:11,
18;69:22

**Z**

**ZUCKER (1)**
4:2

**1**

**1 (8)**
73:7,21,22,22,23;
74:19;77:4;78:2

**10- (1)**
57:20
**10,000th (2)**
30:10,11
**100,000 (1)**
57:19
**10004 (1)**
5:7
**106 (1)**
42:14
**10th (1)**
75:20
**11 (13)**
6:5;7:13;27:23,24;
28:1;29:20;67:3;
72:25,25;73:1,6,9;
74:15
**11530 (1)**
4:21
**11556 (2)**
4:5,13
**11th (2)**
14:7;69:21
**12:21 (1)**
79:16
**1201 (1)**
4:4
**12th (1)**
70:10
**15 (2)**
14:6;22:9
**15,000 (1)**
57:20
**16th (1)**
70:10
**1760 (1)**
15:2
**18th (1)**
70:10
**1969 (3)**
12:9;21:4,6
**1984 (6)**
11:10,17;12:8;
34:13,16;49:22
**1988 (2)**
12:15;60:14
**19th (11)**
72:25;73:5,6,8,17,
22;74:13;77:3,18;
78:2,8

**2**

**2/23/ (1)**
11:10
**2/23/1984 (2)**
12:8;50:1
**20,000 (2)**
18:4;44:11
**2020 (1)**
49:25
**2022 (2)**
18:24;22:1

**2023 (1)**
47:3
**2024 (5)**
22:16;38:7,17;39:6;
55:10
**2025 (1)**
36:2
**20th (9)**
15:5,10;18:20;
72:25;73:5,7,19,23;
75:19
**22nd (1)**
22:3
**23rd (3)**
36:2;42:21;58:21
**24th (1)**
29:22
**25,000 (1)**
57:20
**254 (1)**
4:20
**25th (3)**
42:25;69:22,23
**26th (2)**
18:2;58:22
**27th (2)**
28:12;72:25
**298 (1)**
67:25
**29th (3)**
14:15;49:25;69:23
**2nd (2)**
75:21,24

**3**

**3.4 (1)**
49:2
**30th (3)**
38:17;39:6;55:10
**31 (1)**
38:7
**341 (1)**
51:17
**360-day (1)**
37:3
**363f4 (1)**
9:7
**363h (9)**
9:5;11:23;17:7;
26:22,24;27:3;32:12;
62:15,17
**365 (1)**
37:4
**366 (1)**
37:4

**4**

**4.25 (1)**
8:15
**4:30 (2)**
66:12,14

**400 (1)**
4:12
**400,000 (1)**
37:11
**491 (1)**
36:3
**492 (1)**
36:5
**493 (1)**
7:21
**494 (1)**
36:9

**5**

**590 (8)**
23:4;25:12;44:3,15;
48:16,18;56:9;64:7

**6**

**63rd (2)**
14:6;22:9
**66 (3)**
15:23;29:25;49:17

**7**

**7/24/2024 (2)**
14:25;18:17
**70th (1)**
22:17
**739 (1)**
5:6

**8**

**8 (1)**
59:3
**8:30 (1)**
59:3
**853 (2)**
19:10;57:14
**8th (1)**
70:10

**9**

**900 (1)**
70:8
**991 (1)**
70:8
**9th (2)**
18:24;47:10